

1  Neal R. Marder (SBN: 126879)
   nmarder@winston.com
2  Drew A. Robertson (SBN: 266317)
   darobertson@winston.com
3  WINSTON & STRAWN LLP
   333 S. Grand Avenue
4  Los Angeles, CA 90071-1543
   Telephone:    (213) 615-1700
5  Facsimile:    (213) 615-1750

6  T. Thomas Cottingham, III*
   Stacie C. Knight*
7  WINSTON & STRAWN LLP
   214 N. Tryon Street, Suite 2200
8  Charlotte, NC 28202
   Telephone:    (704) 350-7700
9  Facsimile:    (704) 370-7800

10 *Pro Hac Vice applications to be submitted

11 ATTORNEYS FOR DEFENDANTS
   WELLS FARGO BANK, N.A.;
12 WELLS FARGO HOME MORTGAGE;
   AMERICA'S SERVICING COMPANY;
13 and WACHOVIA BANK, FSB, f/k/a
   WORLD SAVINGS BANK, FSB (Texas) and
14 n/k/a WELLS FARGO BANK SOUTH
   CENTRAL, N.A.
15

16            UNITED STATES DISTRICT COURT

17            CENTRAL DISTRICT OF CALIFORNIA

18

19 | LUIS MIRELES, an individual; GEORGIA | **Case No.**
   | MIRELES, an individual; PAULA L.
20 | KAZMIERZAK, an individual; RAMON
   | ALVAREZ, an individual; RUE ANN
21 | BARROW, an individual; KENNETH W.      **CV11- 07720** MMM (FMOx)
   | BASE, an individual; KATJA K. BASE, an
22 | individual; JOHN BERRIOS, an             **NOTICE OF REMOVAL**
   | individual; NORA BERRIOS, an individual; ALLEN
23 | BICKERSTAFF, an individual; ROSE
   | BICKERSTAFF, an individual; NASRIN
24 | CHADORBAF, an individual; ROSA
   | COURTNEY, an individual; JEFFREY J.
25 | DAIGLE, an individual; LAURA DANLASKY,
   | an individual; DAVID CECIL, an individual;   Complaint Filed:  August 16, 2011
26 | LINDA L. FOSTER, an individual; TERRY S.
   | KEEFER, an individual; VERONICA
27 | PADILLA, an individual; MARIA LOPEZ, an
   | individual; CHAUNTEE MATHIS, an
28

---

**NOTICE OF REMOVAL**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

FILED
CLERK, U.S. DISTRICT COURT

SEP 1 6 2011

CENTRAL DISTRICT OF CALIFORNIA
BY                      DEPUTY

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   individual; ZOILA DELCIA MELGAR, an
individual; THU HA NONG, an individual;
2   ELVIRA R. P ALAC, an individual; WILLIAM
R. SCHRANER, JR., an individual; JANET
3   SCHRANER, an individual; MARIA C.
TAMAYO, an individual; JOAN WADDELL,
4   an individual; STEVEN M. WEISS, an
individual; GARY R. WOOLEVER, an
5   individual; RICHARD WU, an individual; IVY
WU, an individual; REBECCA SIERRA, an
6   individual; SAMMIE NOEL, an individual;
7   CRISTINA MAGANA, an individual; AARON
M. DOSS, an individual; JOSE MARTIN
8   VALDOVINOS, an individual; MELANIE
VALDOVINOS, an individual; LORELI
9   WAHL, an individual; MAGDALENA LUNA,
10   an individual; OLGA ORGOUNOVA, an
individual; FAUSTO CALLEGARINI, an
11   individual; THOMAS BURNS, an individual;
ROBIN BURNS, an individual; DAVID
12   NYQUIST, an individual; CORINNA
NYQUIST, an individual; JAMES SALO, an
13   individual; CLAIRE SALO, an individual;
MARCY F. KAPLAN, an individual; SHERYL
14   E. BREAULT, an individual; ALLISON J.
HERBERT, an individual; STIRLING HALE,
15   an individual; MICHELLE HALE, an
individual; MAMIE Y. THOMAS, an
16   individual; ROBERT HARRICK, an individual;
17   GERALDINE HARRICK, an individual;
KATHERINE WARD, an individual;
18   PATRICIA LOPEZ, an individual; ROGER
HOUSGARD, an individual; LENA
19   HOUSGARD, an individual; CHRISTOPHER
BITNER, an individual; MARIOLA BITNER,
20   an individual; JOSEPH LABATE, an
individual; CHERYL LABATE, an individual;
21   RICHARD ELAM, an individual;
22   ESTHER MERKI, an individual; JOE
CHAVEZ, an individual; DAVID ZAMORA,
23   an individual; GAVIELA ZAMORA, an
individual; DANIEL SPATACEAN, an
24   individual; COSMINA R. SPATACEAN, an
individual; PAMELA MEIER, an individual;
25   PATRICIA MEIER, an individual;
26   KATHERINE WARD, an individual; SVEN
WALKER, an individual; RICHARD
27   COUTURE, an individual; MARCELLA
28

**NOTICE OF REMOVAL**

VILLALPANDO, an individual; RICHARD
VILLALPANDO, an individual; CHOR CHUN
NGAN, an individual; PATRICE THOMPSON,
an individual; FAUSTO CALLEGARINI,
an individual; PAUL PEASE, an individual;
CYNTHIA M. PEASE, an individual; NORMA
GARCIA, an individual; TE VAN NGUYEN,
an individual; NATIVIDAD TERRAZAS, an
individual; ALEX CALDER, an individual;
DAVID OXLEY, an individual; RAMIRO
RODRIGUEZ, an individual; ROSELIA
RODRIGUEZ, an individual; TONY
BEIZAEE, an individual; ALICE GANZON, an
individual; YASUHARU KUROIWA, an
individual; KAYAKO KUROIWA, an
individual; JOHN CALDERONE, an individual;
VIRGINIA VILLASENOR, an individual;
FELIX VILLASENOR, JR. , an individual;
LINDA TRAN, an individual; WAYNE
WILLIAMS, an individual; SUZANNE
WILLIAMS, an individual; TEERI A.
PENKERT, an individual; RHONDA K.
PENKERT, an individual; DOUGLAS
FERNANDES, an individual; RENAN
PULECIO, an individual; JEANNETTE
PULECIO, an individual; ADRIAN FLORES,
an individual; GABRIELA FLORES, an
individual; SHELAH SPEIGEL, and individual;
RUDY MORGAN, an individual,

              Plaintiffs,

      v.

WELLS FARGO BANK, N.A., a national
banking association; WELLS FARGO HOME
MORTGAGE, a national banking association;
AMERICA'S SERVICING COMPANY, a
national banking association; WACHOVIA
MORTGAGE, FSB, a national banking
association; WACHOVIA BANK, FSB, f/k/a
WORLD SAVINGS BANK, FSB-TX, a
national banking association; GOLDEN WEST
FINANCIAL CORPORATION; WORLD
SAVINGS BANK, FSB, a Delaware
corporation; WORLD SAVINGS, INC., a
California Corporation; CAL-WESTERN
RECONVEYANCE CORPORATION, a
California corporation; and DOES 1 through
100, inclusive,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

3

**NOTICE OF REMOVAL**

| 1 | Defendants. |

Defendant Wells Fargo Bank, N.A ("Wells Fargo") hereby notices removal of this action from the Los Angeles County Superior Court to the United States District Court for the Central District of California, Los Angeles Division. As grounds for removal, Wells Fargo states:

1.      Plaintiffs commenced this action on August 16, 2011 by filing a Complaint against Wells Fargo and others in the Superior Court for the State of California, County of Los Angeles. Plaintiffs' Complaint was assigned Case No. BC467652.

2.      Wells Fargo was served with the Summons and Complaint via its registered agent for service of process on August 19, 2011.

3.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons, Complaint, and other documents served on Wells Fargo are attached as **Exhibit A**. These documents constitute the only process, pleadings, or other orders served upon Wells Fargo in this action.

4.      This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) and Rule 6 of the Federal Rules of Civil Procedure in that it is filed within thirty (30) days of Wells Fargo's receipt of the Summons and Complaint.

5.      The Central District of California, Los Angeles Division, is the United States District Court embracing the place where Plaintiffs' state court action is pending. Therefore, Plaintiffs' state court action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

6.      As indicated by the attached Consents to Removal, Defendants Wells Fargo Home Mortgage, America's Servicing Company, Wachovia Bank FSB, formerly known as World Savings Bank, FSB (Texas) and now known as Wells Fargo Bank South Central, N.A., and Cal-Western Reconveyance Corporation consent to removal. Wachovia Mortgage, FSB, World Savings Bank, FSB, Golden West Financial Corporation, and World Savings, Inc. no longer exist. *See* Declaration of Michael J. Dolan ("Dolan Dec."), ¶¶ 6, 8-9. Because "a company that has ceased to exist as a separate legal entity … [can]not be properly joined as a party to [an] action," *Kolker v. VNUS Med. Techs., Inc.*, No. CV 10-00900-JF-PVT, 2010 WL 3059220, at *3 (N.D. Cal. Aug. 2,

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

4

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

2010), the consent of Wachovia Mortgage, FSB, World Savings Bank, FSB, Golden West Financial Corporation, and World Savings, Inc. is not required. *See Emrich v. Touche Ross & Co.,*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988) ("[A]ll defendants in a state action must join in the petition for removal … ***This general rule applies, however, only to defendants properly joined and served in the action.***") (citation omitted and emphasis added). Moreover, under the Class Action Fairness Act of 2005, the consent of all defendants is not required. *See* 28 U.S.C. § 1453(b).

7.        As required by 28 U.S.C. § 1446(d), Wells Fargo will provide written notice of the filing of this Notice of Removal to Vito Torchia, Jr. and Joshua Shelton, counsel of record for Plaintiffs, 4000 MacArthur Boulevard, Suite 1110, Newport Beach, California, 92660, and a copy of this Notice of Removal is being filed with the Clerk of the Los Angeles County Superior Court. A copy of the Notice of Filing of Notice of Removal is attached as **Exhibit B**.

## THE PARTIES

8.        The 108 plaintiffs[1] in this action are citizens of the State of California. Complaint, ¶¶ 43-151.

9.        Wells Fargo is a national bank. Dolan Dec., ¶ 3. Its articles of association designate Sioux Falls, South Dakota as the location of its home office. *Id.* Thus, Wells Fargo is a citizen of the State of South Dakota. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006); *Taguinod v. World Savings Bank, FSB*, 755 F. Supp. 2d 1064 (C.D. Cal. 2010) (Wells Fargo is a citizen of South Dakota); *Silva v. Wells Fargo Bank, N.A.*, No. CV 11-3200 GAF (JCGx), 2011 WL 2437514 (C.D. Cal. June 16, 2011) (same); *Albarran v. Wells Fargo Bank, N.A.*, 8:11-cv-00548-JVS-MLG, 2011 U.S. Dist. LEXIS 59635 (C.D. Cal. May 26, 2011) (same); *Kasramehr v. Wells Fargo Bank, N.A.*, Case No. CV 11-0551 GAF (OPx), 2011 U.S. Dist. LEXIS 52930 (C.D. Cal. May 17, 2011) (same); *Cochran v. Wells Fargo Bank, N.A.*, Case No. CV 10-018 CAS (AGRx), 2010 U.S. Dist. LEXIS 38379 (C.D. Cal. March 9, 2010) (same).[2]

---

[1] Plaintiff Katherine Ward is listed twice. Complaint, ¶¶ 99, 116.
[2] Numerous other cases have affirmed that Wells Fargo is a citizen of South Dakota for purposes of diversity. *See Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota, not California"); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010) ("Wells Fargo is a citizen of the state in which its main office, as specified in its articles of association, is located"); *Tse v. Wells Fargo Bank, N.A.*, No. C10-4441 TEH, 2011 WL 175520, at *2-3 (N.D. Cal. Jan. 19, 2011) ("the test for a national bank's

5

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   10.  Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A.  Dolan

2 Dec., ¶ 4.  Thus, it also is a citizen of the State of South Dakota.

3   11.  America's Servicing Company is a division of Wells Fargo Home Mortgage.

4 Dolan Dec., ¶ 5.  Accordingly, it also is a citizen of the State of South Dakota.

5   12.  Wachovia Mortgage, FSB formerly was known as World Savings Bank, FSB.

6 Dolan Dec., ¶ 6.  World Savings Bank, FSB was chartered under the laws of the United States to

7 transact business as a federal savings bank.  *Id.*  In 2007, World Savings Bank, FSB amended its

8 charter and bylaws to change its name to Wachovia Mortgage, FSB.  *Id.*  In 2009, Wachovia

9 Mortgage, FSB converted to a national bank known as Wells Fargo Bank Southwest, N.A. and

10 immediately merged into Wells Fargo Bank, N.A.  *Id.*  Thus, Wachovia Mortgage, FSB and World

11 Savings Bank, FSB no longer exist.  *See id.*

12   13.  In 2008, Wachovia Corporation merged into Wells Fargo & Company.  *Id.*, ¶ 7.

13 After the merger, World Savings Bank, FSB (Texas) changed its name to Wachovia Bank, FSB and

14 citizenship … is determined solely by the location of its main office designated in its articles of
association," thus, "Wells Fargo is a citizen of South Dakota"); *Atienza v. Wells Fargo Bank, N.A.*,
15 No. C 10-03457 RS, 2011 WL 11507, at *2 (N.D. Cal. Jan. 4, 2011) ("Wells Fargo is a citizen of
South Dakota for purposes of diversity jurisdiction"); *Giordano v. Wachovia Mortgage, FSB*, No.
16 5:10-cv-04661-JF, 2010 WL 5148428, at *2 (N.D. Cal. Dec. 14, 2010) ("Wells Fargo is not a citizen
of California"); *California ex rel. Bates v. Mortg. Elec. Regis. Sys., Inc.*, No. 2:10-cv-01429-GEB-
17 CMK, 2010 WL 2889061, at *1 (E.D. Cal. July 21, 2010) ("Wells Fargo is a citizen of South
Dakota, and Wells Fargo is not a citizen of California"); *In re Wells Fargo Bank, N.A. and WMR e-
18 Pin, LLC*, Civil No. 08-5472 (JNE/FLN), 2008 WL 5429134, at *1 (D. Minn. Dec. 29, 2008)
("Wells Fargo Bank is a citizen of South Dakota … [it] is not a citizen of California").  Wells Fargo
19 acknowledges that this Court previously has held that Wells Fargo is a citizen of California and
South Dakota.  *See Mount v. Wells Fargo Bank, N.A.*, No. CV 08-6298 GAF (MANx), 2008 WL
20 5046286, at *1-2 (C.D. Cal. Nov. 24, 2008) (J. Feess); *Gutterman v. Wachovia Mortgage*, No. CV
11-1611 GAF (CWx), 2011 WL 2633167, at *1 (C.D. Cal. Mar. 31, 2011) (J. Feess); *Goodman v.
21 Wells Fargo Bank, N.A.*, Case No. CV 11-2685-JFW (RZx), 2011 U.S. Dist. LEXIS 63165, at *6-7
(C.D. Cal. June 1, 2011) (J. Walter); and *Stewart v. Wachovia Mortgage Corp.*, No. CV 11-06108
22 MMM (AGRx), 2011 WL 3323115, at *4-6 (C.D. Cal. Aug. 2, 2011) (J. Morrow).  However, in
*Kasramehr v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 52930 (J. Feess), this Court re-
23 examined the issue of Wells Fargo's citizenship, explaining that it had **"reconsidered its position
24 and … reache[d] a different conclusion."**  *Id.* at *5 (emphasis added).  Relying on 28 U.S.C. §
25 1348, this Court in *Kasramehr* held that "a national banking association is a citizen of the state of its
main office as designated in its articles of association, and **not** also a citizen of the state of its
26 principal place of business.  Thus, **Wells Fargo is a citizen of South Dakota**."  *Id.* at *6 (emphasis
added).  Therefore, *Kasramehr* effectively vacated *Mount*, and, by implication, all decisions
27 following *Mount* and its "principal place of business" test, including *Gutterman*, *Goodman*, and
28 *Stewart.*

6

**NOTICE OF REMOVAL**

1 | then to Wells Fargo Bank South Central, N.A.  *Id.*  Wells Fargo Bank South Central, N.A. is a

2 | national bank.  *Id.*  Its articles of association designate Houston, Texas as the location of its home

3 | office.  *Id.*  Thus, Wells Fargo Bank South Central, N.A., f/k/a Wachovia Bank, FSB and World

4 | Savings Bank, FSB (Texas), is a citizen of the State Texas.  *See Schmidt*, 546 U.S. 303.

5 |       14.      Golden West Financial Corporation formerly was a subsidiary of Wachovia

6 | Corporation.  Dolan Dec., ¶ 8.  Golden West Financial Corporation no longer exists.  *Id.*

7 |       15.      World Savings, Inc. formerly was a subsidiary of Golden West Financial

8 | Corporation.  *Id.*, ¶ 9.  World Savings, Inc. no longer exists.  *Id.*

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

10 |       16.      This action constitutes a "mass action" as defined by 28 U.S.C. §

11 | 1332(d)(11)(B)(i), thus, this Court has original jurisdiction over this action pursuant to CAFA,

12 | codified in relevant part at 28 U.S.C. §§ 1332(d) and 1453.

13 |       17.      Specifically, 108 plaintiffs have joined monetary relief claims and have proposed

14 | that said claims be tried jointly on the ground that their claims involve common questions of law or

15 | fact.  According to Plaintiffs, they have suffered damages as a result of the "common" practices of

16 | Wells Fargo and the other Defendants in connection with the origination and servicing of their

17 | mortgage loans.  *See, e.g.*, Complaint, ¶¶ 163-64.  Plaintiffs allege that "[t]his lawsuit arises from,

18 | among other things, Defendants doing the following to Plaintiffs and other homeowners":[3]

19 | 
20 |     (a)     Deceiving Plaintiffs to induce them to enter into loans and deeds of trust;

21 |     (b)     Fraudulently and in violation of the California Commercial

22 | Code using Mortgage Electronic Registration Systems, Inc. a/k/a MERSCORP, Inc. to hide the true ownership of these mortgages;

23 | 
24 |     (c)     Failing to perform their obligations in connection with the acceptance of TARP funds;

25 |     (d)     Breaching Plaintiffs' statutorily protected rights, including,

26 | consumer and homeowner protection statutes by, among other things, processing money from unknown offshore sources, in

27 | contravention of the Patriot Act and fail[ed] to disclose the foregoing in violation of the Truth in Lending Act;

28 | 

---

[3] As explained more fully below, although it is named as a defendant in this action, Plaintiffs do not make any allegations with respect to Cal-Western Reconveyance Corporation.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

7

(e)   Accepting money and purportedly transferring and foreclosing on assets as to which Defendants have no right, title, interest, or authority to act;

(f)   Unjustly enriching themselves to the detriment of borrowers, including Plaintiffs herein, by accepting money and offering trial modifications only to pocket modification payments and never apply these payments to mortgage balance;

(g)   Wrongfully foreclosing without first giving notice that a loan modification had been rejected and an opportunity to cure the default; and

(h)   Continuing tortious conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts.

Complaint, ¶ 1.

18.     Plaintiffs also repeatedly allege that Wells Fargo and the other Defendants are not legally entitled to enforce Plaintiffs' mortgage loans and that they should forfeit the loans and any interest due thereon:

(a)   Defendants continue to demand payment and to threaten foreclosure and foreclose on Plaintiffs, despite the facts that (1) Defendants have no proof that they own or hold the notes and deeds of trust they seek to enforce; (2) *there is considerable evidence that Defendants do not own or hold the notes and deeds of trust they enforce and seek to enforce and based thereon, Plaintiffs allege that they do not*; and (3) whether or not they can demonstrate the ownership of the requisite notes and deeds of trust, *Defendants lack the legal right to enforce the foregoing* because they have not complied with disclosure requirements intended to assure that mortgages are funded with monies obtained lawfully;

(b)   Plaintiffs believe and thereon allege that Defendants have made demand for payment on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants were incapable of establishing (and did not have any credible knowledge regarding) who owns the promissory notes Defendants were purportedly servicing, and that these acts are continuing. Defendants were not, and were not at the relevant times, the holders of Plaintiffs' notes and deeds of trust, and were not, and were not at the relevant times, operating under a valid power from the current holders of the notes and deeds of trust. Accordingly, *Defendants are not and were not at the relevant times allowed legally to enforce the notes or deeds of trust. Defendants' attempts to enforce Plaintiffs' notes were nothing but a sham and a fraud upon Plaintiffs, the public, and the courts.*

(c)   Plaintiffs have read the extensive press, litigation, and

8

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

government releases and based thereon Plaintiffs believe and therefore allege that Defendants do not have in their possession, custody, or control documents demonstrating that they have an unbroken chain of title proving ownership of Plaintiffs' notes and deeds of trust—or a valid power to enforce Plaintiffs' notes and deeds of trust. Based thereon, Plaintiffs hereby allege that *Defendants have made demand for payment on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants are incapable of establishing (and do not have any credible knowledge regarding) who owns the promissory notes Defendants are purportedly are servicing*.

(d)    Plaintiffs believe and thereon allege that because Defendants are not the holders of Plaintiffs' notes and deeds of trust and are not operating under a valid power from the current holders of the notes and deeds of trust, *Defendants may not enforce the notes or deeds of trust*.

(e)    *As a consequence of the foregoing, Defendants may be liable for a forfeiture of any loans or interests in Plaintiffs' homes, and/or other appropriate relief*.

(f)    Defendants seek to enforce the loans and mortgages irrespective of this massive fraud.

Complaint, ¶ 27, 29, 202, 250, 251, 280, 321 (emphasis added). Based on these allegations, Plaintiffs purport to bring claims for fraudulent concealment, intentional misrepresentation, negligent misrepresentation, violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, wrongful foreclosure, and breach of contract. Complaint, ¶¶ 302-03, 324-35, 335-36, 360-61, 374-75, 384. Plaintiffs seek compensatory damages, "restitution for all sums received by Defendants with respect [to their mortgage loans], including without limitation interest payments made by Plaintiffs [and any] fees paid to Defendants," exemplary damages, and temporary, preliminary, and permanent injunctive relief. *See* Complaint, ¶¶ 360-61 and Prayer For Relief. Eleven of the plaintiffs also seek a determination that the Defendants wrongfully foreclosed on the properties securing their mortgage loans and that those sales are void. Complaint, ¶ 374. Finally, Plaintiffs seek pre- and post-judgment interest, costs, and attorneys' fees. *See* Complaint, Prayer For Relief.

19.    Although Plaintiffs have attempted to plead around CAFA by alleging that "fewer than 100 plaintiffs are alleging claims or amounts in controversy that would, as to them, equal or exceed the jurisdictional amount for federal jurisdiction under 28 U.S.C. § 1332(a)," Complaint, ¶

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

9

1  153, upon close examination of the Complaint, it is clear that Plaintiffs' claims do exceed

2  $5,000,000 in the aggregate, exclusive of interest and costs, and that each Plaintiff's claim exceeds

3  $75,000, exclusive of interest and costs.  *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), (d)(6), and

4  (d)(11).

5        20.      First, Plaintiffs' claims exceed $5,000,000 in the aggregate, exclusive of interest

6  and costs.  Plaintiffs seek damages, but they also seek "restitution for all sums received by

7  Defendants with respect [to their mortgage loans], *including without limitation interest payments*

8  *made by Plaintiffs [and any] fees paid to Defendants*."  Complaint, ¶ 360 (emphasis added).

9  According to Plaintiffs, this sum exceeds $1,000,000,000: "Wells Fargo and the other Defendants

10  "took from Plaintiffs and other borrowers *billions of dollars in interest payments and fees*."

11  Complaint, ¶ 25 (emphasis added).  *See also id.*, ¶ 207 ("Defendants took from Plaintiffs and other

12  borrowers billions of dollars in interest payments and fees").

13        21.      Moreover, Plaintiffs repeatedly allege that (1) Wells Fargo and the other

14  Defendants are not entitled to enforce their notes and mortgages; and (2) Wells Fargo and the other

15  Defendants are "*liable for a forfeiture of any loans or interests in Plaintiffs' homes, and/or other*

16  *appropriate relief*."  Complaint, ¶¶ 27, 29, 202, 250, 251, 280, 321 (emphasis added).

17        22.      The value of injunctive or similar relief is properly measured by the potential

18  damage to the defendant.  *See Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398 (9th Cir. 1996).

19  Thus, the jurisdictional requirement is satisfied if either party can gain or lose the jurisdictional

20  amount.  *See Ridder v. Blethen*, 142 F.2d 395, 399 (9th Cir. 1944).  *See also Gov't Employees Ins.*

21  *Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964) ("the amount in controversy is the pecuniary result to

22  either party that the judgment would produce").

23        23.      As explained in the Declaration of Michael J. Dolan, the total unpaid principal on

24  the outstanding mortgage loans at issue in this litigation is well in excess of $5,000,000.  Dolan Dec.,

25  ¶ 11.  Thus, if Plaintiffs are correct that Defendants cannot enforce those mortgage loans and must

26  forfeit the loans and any interests in Plaintiffs' homes, it is without question that Wells Fargo and the

27  other Defendants will forfeit a sum well in excess of $5,000,000.

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**NOTICE OF REMOVAL**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

24.      Finally, Plaintiffs allege that Wells Fargo and the other Defendants have settled similar lawsuits for $2,735,000,000. Complaint, ¶¶ 230-31 (alleging that "Wells Fargo settled a lawsuit with the Attorney General of the State of California over predatory lending violations stemming from [the] 'Pick-a-Pay' loan product. The bank agreed to $2 billion of loan modifications" and "In early 2011, Wells Fargo agreed to make $600 million of loan modifications and fund a $50 million settlement fund to end a lawsuit against Wachovia Corp's mortgage unit WSB that alleged misleading practices regarding the bank's adjustable-rate mortgages."); ¶ 247 ("Wells Fargo … agreed to pay $85 million to settle civil claims"). Settlement agreements are evidence that the amount in controversy exceeds the jurisdictional minimum. *See, e.g., Babasa v. Lenscrafters, Inc.*, 498 F.3d 972 (9th Cir. 2007).

25.      As the foregoing demonstrates, it is clear that Plaintiffs' claims exceed $5,000,000 in the aggregate, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(6), and (d)(11).

26.      It also is clear that each Plaintiff's[4] claim exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d)(2)(A), (d)(6), and (d)(11).[5] As explained in the Declaration of Michael J. Dolan, each of the Plaintiffs has, or at one time had, a mortgage loan with an outstanding principal balance in excess of $75,000.[6] Dolan Dec., ¶ 12. Moreover, with respect to the Plaintiffs who claim that the Defendants wrongfully foreclosed on their properties (Cristina Magana, Ramon Alvarez, Thomas and Robin Burns, Sammie Noel, Chor Chun Ngan,[7] Alex Calder, and Ramiro and

---

[4] This does not include Plaintiffs Rosa Courtney, Rebecca Sierra, Katherine Ward, David and Gaviela Zamora, Daniel and Cosmina Spatacean, Paul and Cynthia Pease, Renan and Jeannette Pulicio, and Terri A. and Rhonda K. Penkert because Wells Fargo was not able to locate any loans in the names of those Plaintiffs. Dolan Dec., n.1.

[5] As explained more fully below, Plaintiffs cannot in good faith dispute that *at least one Plaintiff* meets the amount-in-controversy requirement. According to Plaintiffs, "fewer than 100 plaintiffs are alleging claims in amounts that would, as to them, equal or exceed the amount for federal jurisdiction under 28 U.S.C. § 1332(a)." Complaint, ¶ 153. This is an explicit acknowledgement that at least one Plaintiff meets the amount-in-controversy requirement. Moreover, as the Declaration of Michael J. Dolan makes clear, an order setting aside *just one* of the foreclosure sales Plaintiffs seek to attack through this action would involve a sum in excess of $75,000. *See* Dolan Dec., ¶ 12.

[6] This excludes Plaintiffs Rosa Courtney, Rebecca Sierra, Katherine Ward, David and Gaviela Zamora, Daniel and Cosmina Spatacean, Paul and Cynthia Pease, Renan and Jeannette Pulicio, and Terri A. and Rhonda K. Penkert because Wells Fargo was not able to locate any loans in the names of those Plaintiffs. Dolan Dec., n.1.

[7] According to Wells Fargo's records, Plaintiff "Chor Chun Ngan" is actually "Chor Chun Hgan." Dolan Dec., n.2.

**NOTICE OF REMOVAL**

1   Roselia Rodriguez),[8] at the time of those foreclosures, each loan had an unpaid principal balance in

2   excess of $75,000. *Id.* Thus, if Plaintiffs are correct that Defendants cannot enforce Plaintiffs'

3   mortgage loans, must forfeit the loans and any interests in Plaintiffs' homes, and wrongfully

4   foreclosed, it is without question that Wells Fargo and the other Defendants will forfeit a sum well in

5   excess of $75,000 with respect to each Plaintiff.[9]

6         27.       Finally, minimal diversity is satisfied because at least one plaintiff is a citizen of

7   the State of California, Wells Fargo is a citizen of the State of South Dakota, and Wachovia Bank,

8   FSB, formerly known as World Savings Bank, FSB (Texas) and now known as Wells Fargo Bank

9   South Central, N.A. is a citizen of the State of Texas. *See* paragraphs 8, 9, and 13, *supra*.

## TRADITIONAL DIVERSITY JURISDICTION

11         28.       This court also has original jurisdiction over this action under 28 U.S.C. § 1332

12   because (1) there is complete diversity of citizenship between Plaintiffs and Defendants; and (2) the

13   matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14         29.       Paragraphs 8 through 15, alleging the citizenship of the parties, are incorporated

15   herein by reference.

16         30.       The citizenship of Golden West Financial Corporation and World Savings, Inc.

17   should be disregarded for purposes of determining diversity jurisdiction because those entities no

18   longer exist, as stated in Paragraphs 14 and 15 above. *See Kolker*, 2010 WL 3059220, at *3 ("a

19   company that has ceased to exist as a separate legal entity … [can]not be properly joined as a party

20   to [an] action" and should be disregarded for purposes of determining diversity).

21         31.       The citizenship of Cal-Western Reconveyance Corp. ("Cal-Western") also should

22   be disregarded for purposes of determining diversity jurisdiction.  Where no cause of action can be

23   stated as a matter of law against a particular defendant, joinder of that defendant is deemed

24   "fraudulent" and the defendant's presence in the lawsuit is ignored for purposes of determining

---

[8] Again, although Plaintiffs Rosa Courtney and Katherine Ward allege that Defendants wrongfully foreclosed, Wells Fargo was unable to locate any loans for Plaintiffs Rosa Courtney and Katherine Ward.  Dolan Dec., n.3.

[9] Again, "Plaintiffs" excludes Rosa Courtney, Rebecca Sierra, Katherine Ward, David and Gaviela Zamora, Daniel and Cosmina Spatacean, Paul and Cynthia Pease, Renan and Jeannette Pulicio, and Terri A. and Rhonda K. Penkert because Wells Fargo was not able to locate any loans in the names of those Plaintiffs. Dolan Dec., n.1.

**NOTICE OF REMOVAL**

*(left margin)* Winston & Strawn LLP / 333 S. Grand Avenue / Los Angeles, CA 90071-1543

1   diversity. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *McCabe v.*

2   *Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). A defendant "is entitled to present facts

3   showing the joinder to be fraudulent." *Morris*, 236 F.3d at 1067 (*quoting McCabe*, 811 F.2d at

4   1339). Therefore, in determining whether the party has been fraudulently joined, the Court is not

5   limited to reviewing the four corners of the complaint. *W. Am. Corp. v. Vaughan-Bassett Furniture*

6   *Co.*, 765 F.2d 932, 936 (9th Cir. 1985).

7       32.       Under California law, a common agent or trustee "cannot be held individually

8   liable as a defendant unless … [it] acts for … [its] own personal advantage." *Mercado v. Allstate*

9   *Ins. Co.*, 340 F.3d 824, 826 (2003). "In California, the trustee's duties are limited to those imposed

10  by statute and by the contract, namely to foreclose upon default and to reconvey the deed of trust

11  upon satisfaction of the secured debt; the trustee does not act as a fiduciary, but rather as a common

12  agent for the trustor and beneficiary of the deed of trust." *Sherman v. Wells Fargo Bank, N.A.*, 2011

13  WL 1833090 at *2 (E.D. Cal. May 12, 2011) (citation omitted); *Vournas v. Fid. Nat'l Title Ins. Co.*,

14  73 Cal. App. 4th 668, 677 (1999); *Hatch v. Collins*, 225 Cal. App. 3d 1104, 1112 (1990). In

15  *Sherman*, plaintiffs' causes of action for breach of contract, breach of the implied covenant of good

16  faith and fair dealing, and fraudulent misrepresentation were premised on Wells Fargo's alleged

17  foreclosure on plaintiffs' house. *Id.* at *1. For purposes of defining diversity jurisdiction, the court

18  held that Cal-Western had been fraudulently joined as a defendant in the action "[i]n light of a

19  trustee's limited contractual duties under state law and the trustee's limited involvement as alleged in

20  the complaint." *Id.* at *3.

21      33.       Cal-Western Reconveyance is merely the trustee of the deeds of trust, with its

22  contractual duties limited by state law. *Id.* at *2; Declaration of Non-Monetary Status by Defendant

23  Cal-Western Reconveyance ("Dec. of Non-Monetary Status"), ¶¶ 3-5 (attached to the Declaration of

24  Drew A. Robertson). Moreover, as demonstrated by the Declaration of Non-Monetary Status filed

25  by Cal Western in the state court action, Cal-Western has not directly entered into a contract with

26  any of the Plaintiffs, nor was Cal-Western involved with any of the wrongdoing alleged by

27  Plaintiffs. *See* Dec. of Non-Monetary Status, ¶¶ 3-5. In fact, Plaintiffs refer to Cal-Western by

28  name only a single time in the entire Complaint, solely to allege citizenship, and do not allege any

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

13

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   wrongdoing or other acts by Cal Western to support any cause of action against it.  *See* Complaint ¶

2   162.

3        34.     Accordingly, because Plaintiffs cannot state any cause of action against Cal-

4   Western, it was fraudulently joined in this action and Cal Western's citizenship must be ignored for

5   the purpose of determining diversity jurisdiction.

6        35.     When the citizenship of Golden West Financial Corporation, World Savings, Inc.,

7   and Cal-Western are ignored, complete diversity of citizenship exists among Plaintiffs and

8   Defendants.  All Plaintiffs are residents of the State of California; Wells Fargo, Wells Fargo Home

9   Mortgage, and America's Servicing Company are citizens of the State of South Dakota; and

10  Wachovia Bank, FSB, formerly known as World Savings Bank, FSB (Texas) and now known as

11  Wells Fargo Bank South Central, N.A. is a citizen of the State of Texas.  *See* paragraphs 8 through

12  15, *supra*.  As explained above, Wachovia Mortgage, FSB, formerly known as World Savings Bank,

13  FSB and Wells Fargo Bank Southwest, N.A., no longer exists.  *See* paragraph 12, *supra*.

14       36.     Diversity jurisdiction exists "where the matter in controversy exceeds the sum or

15  value of $75,000, exclusive of interest and costs ... ."  28 U.S.C. § 28 U.S.C. 1332(a).  Again, the

16  jurisdictional requirement is satisfied if either party can gain or lose the jurisdictional amount.  *See*

17  *Ridder*, 142 F.2d at 399.  Paragraphs 19-26, alleging the amount in controversy, are incorporated by

18  reference.

19       37.     Moreover, Plaintiffs' Complaint explicitly acknowledges that at least some

20  Plaintiffs allege damages exceeding $75,000: "Based on information now available to them, fewer

21  than 100 plaintiffs are alleging claims in amounts that would, as to them, equal or exceed the amount

22  for federal jurisdiction under 28 U.S.C. § 1332(a)."  Complaint, ¶ 153.  Therefore, on its face, the

23  Complaint states that at least one Plaintiff is alleging damages that exceed $75,000.  Further, as

24  explained above and in the Declaration of Michael J. Dolan, each Plaintiff has, in fact, alleged more

25  than $75,000 in controversy.  *See* Dolan Dec., ¶ 12.

26       38.     In any event, an order setting aside ***just one*** of the foreclosure sales Plaintiffs seek

27  to attack through this action would involve a sum in excess of $75,000.  *See id.*  Thus, even if the

28  amount in controversy with respect to each Plaintiff were not more than $75,000, the Court can

14

**NOTICE OF REMOVAL**

exercise supplemental jurisdiction over claims of $75,000 or less.  Supplemental jurisdiction extends to those claims that are "so related as to the [plaintiff's] claims … that they form part of the same case or controversy under Article III of the U.S. Constitution." 28 U.S.C. § 1367(a).  The Court may exercise supplemental jurisdiction over claims that "arise from a common nucleus of operative facts" so that "considerations of judicial economy, convenience and fairness to litigants" supports a single adjudication. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).  Thus, if, in a multi-plaintiff action like this one, a single plaintiff's claim satisfies the $75,000 threshold, the district court may exercise supplemental jurisdiction over claims by other plaintiffs in lesser amounts, provided all claims arise out of the same Article III case or controversy. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549, 566-67 (2005).

39.     As explained above, Plaintiffs allege that, *inter alia*, their claims arise from a "***common plan and scheme*** designed to conceal the material facts set forth herein from Plaintiffs, from the California public and from regulators" and that "each Defendant performed or has sought to benefit from the tortious acts set forth herein for its own monetary gain and as part of a ***common plan*** developed and carried out with the other Defendants."  Complaint, ¶¶ 163-64 (emphasis added). Thus, to the extent that any individual Plaintiff does not meet the $75,000 amount-in-controversy requirement, the Court can and should exercise supplemental jurisdiction over those claims.

WHEREFORE, Wells Fargo Bank, N.A. prays that this Court assume jurisdiction over this action from the Superior Court of Los Angeles, California, and that this action shall proceed as removed under this Court's jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

Plaintiffs are notified to proceed no further in state court.

Dated:  September 16, 2011

WINSTON & STRAWN LLP

By:  _____
Neal R. Marder
Drew A. Robertson
Attorneys for Defendant
WELLS FARGO BANK, N.A.

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

15

# EXHIBIT A

COPY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 16 2011

John A. Clarke, Executive Officer/Clerk

BY_____, Deputy
Mary Flores

Vito Torchia, Jr. (SBN 244687)
Joshua Shelton (SBN 256177)
**BROOKSTONE LAW, PC**
4000 MacArthur Blvd., Suite 1110
Newport Beach, California 92660
Telephone: (800) 946-8655
Facsimile: (866) 257-6172
E-mail: MirelesvWellsFargo@BrookstoneLaw.com

Attorneys for Plaintiffs

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE**

| | |
|---|---|
| LUIS MIRELES, an individual; GEORGIA MIRELES, an individual; PAULA L. KAZMIERZAK, an individual; RAMON ALVAREZ, an individual; RUE ANN BARROW, an individual; KENNETH W. BASE, an individual; KATJA K. BASE, an individual; JOHN BERRIOS, an individual; NORA BERRIOS, an individual; ALLEN BICKERSTAFF, an individual; ROSE BICKERSTAFF, an individual; NASRIN CHADORBAF, an individual; ROSA COURTNEY, an individual; JEFFREY J. DAIGLE, an individual;  LAURA DANLASKY, an individual; DAVID CECIL, an individual; LINDA L. FOSTER, an individual; TERRY S. KEEFER, an individual; VERONICA PADILLA, an individual; MARIA LOPEZ, an individual; CHAUNTEE MATHIS, an individual;  ZOILA DELCIA MELGAR, an individual; THU HA NONG, an individual; ELVIRA R. PALAC, an individual; WILLIAM R. SCHRANER, JR., an individual; JANET SCHRANER, an individual; MARIA C. TAMAYO, an individual; JOAN WADDELL, an individual; STEVEN M. WEISS, an individual; GARY R. WOOLEVER, an individual; RICHARD WU, an individual;  IVY WU, an individual; REBECCA SIERRA, an individual; SAMMIE NOEL, an individual; | Case No.:   BC 467652 <br><br> **COMPLAINT FOR:** <br><br> 1. **FRAUDULENT CONCEALMENT** [Violation of Civ. Code §§ 1572, 1709 and 1710] <br><br> 2. **INTENTIONAL MISREPRESENTATION** [Violation of Civ. Code §§ 1572, 1709 and 1710] <br><br> 3. **NEGLIGENT MISREPRESENTATION** [Violation of Civ. Code §§ 1572, 1709 and 1710] <br><br> 4. **UNFAIR COMPETITION** [Violation of Bus. & Prof. Code § 17200 *et seq.*] <br><br> 5. **WRONGFUL FORECLOSURE** [Violation of Civ. Code § 2924] <br><br> 6. **BREACH OF CONTRACT –** Mortgage Loans (Pick-A-Pay) <br><br> **[JURY TRIAL DEMANDED]** |

- 1 -

**COMPLAINT**

CRISTINA MAGANA, an individual; AARON
M. DOSS, an individual; JOSE MARTIN
VALDOVINOS, an individual; MELANIE
VALDOVINOS, an individual; LORELI
WAHL, an individual; MAGDALENA LUNA,
an individual; OLGA ORGOUNOVA, an
individual; FAUSTO CALLEGARINI, an
individual; THOMAS BURNS, an individual;
ROBIN BURNS, an individual; DAVID
NYQUIST, an individual; CORINNA
NYQUIST, an individual; JAMES SALO, an
individual; CLAIRE SALO, an individual;
MARCY F. KAPLAN, an individual; SHERYL
E. BREAULT, an individual; ALLISON J.
HERBERT, an individual; STIRLING HALE, an
individual; MICHELLE HALE, an individual;
MAMIE Y. THOMAS, an individual; ROBERT
HARRICK, an individual; GERALDINE
HARRICK, an individual; KATHERINE
WARD, an individual; PATRICIA LOPEZ, an
individual; ROGER HOUSGARD, an individual;
LENA HOUSGARD, an individual;
CHRISTOPHER BITNER, an individual;
MARIOLA BITNER, an individual; JOSEPH
LABATE, an individual; CHERYL LABATE,
an individual; RICHARD ELAM, an individual;
ESTHER MERKI, an individual; JOE CHAVEZ,
an individual; DAVID ZAMORA, an individual;
GAVIELA ZAMORA, an individual; DANIEL
SPATACEAN, an individual; COSMINA R.
SPATACEAN, an individual; PAMELA
MEIER, an individual; PATRICIA MEIER, an
individual; KATHERINE WARD, an individual;
SVEN WALKER, an individual; RICHARD
COUTURE, an individual; MARCELLA
VILLALPANDO, an individual; RICHARD
VILLALPANDO, an individual; CHOR CHUN
NGAN, an individual; PATRICE THOMPSON,
an individual; FAUSTO CALLEGARINI, an
individual; PAUL PEASE, an individual;
CYNTHIA M. PEASE, an individual; NORMA
GARCIA, an individual; TE VAN NGUYEN, an
individual; NATIVIDAD TERRAZAS, an
individual; ALEX CALDER, an individual;
DAVID OXLEY, an individual; RAMIRO
RODRIGUEZ, an individual; ROSELIA

- 2 -

**COMPLAINT**

1    RODRIGUEZ, an individual; TONY BEIZAEE, an individual; ALICE GANZON, an individual;
2    YASUHARU KUROIWA, an individual; KAYAKO KUROIWA, an individual; JOHN
3    CALDERONE, an individual; VIRGINIA VILLASENOR, an individual; FELIX
4    VILLASENOR, JR. , an individual; LINDA TRAN, an individual; WAYNE WILLIAMS, an
5    individual; SUZANNE WILLIAMS, an individual; TEERI A. PENKERT, an individual;
6    RHONDA K. PENKERT, an individual; DOUGLAS FERNANDES, an individual;
7    RENAN PULECIO, an individual; JEANNETTE PULECIO, an individual; ADRIAN FLORES, an
8    individual; GABRIELA FLORES, an individual; SHELAH SPEIGEL, and individual; RUDY
9    MORGAN, an individual,
10
11               Plaintiffs,
12
13      vs.
14    WELLS FARGO BANK, N.A., a national banking association; WELLS FARGO HOME
15    MORTGAGE, a national banking association; AMERICA'S SERVICING COMPANY, a
16    national banking association; WACHOVIA MORTGAGE, FSB, a national banking
17    association; WACHOVIA BANK, FSB, f/k/a WORLD SAVINGS BANK, FSB-TX, a national
18    banking association; GOLDEN WEST FINANCIAL CORPORATION, a Delaware
19    corporation; WORLD SAVINGS BANK, FSB, a national banking association; WORLD
20    SAVINGS, INC., a California corporation; CAL-WESTERN RECONVEYANCE
21    CORPORATION, a California corporation; and DOES 1 through 1000, inclusive,
22
23
24               Defendants.
25
26
27
28

- 3 -

**COMPLAINT**

1    Plaintiffs, and each of them, hereby demand a jury trial and allege as follows:

2                                    **INTRODUCTION**

3        1.      This lawsuit arises from, among other things, Defendants doing the following to Plaintiffs

4    and other homeowners:

5        a.      Deceiving Plaintiffs to induce them to enter into loans and deeds of trust[1] from

6                approximately 2003 through 2008 and which were originated or acquired by

7                Defendants and are purportedly serviced by Defendants;

8        b.      Fraudulently and in violation of the California Commercial Code using Mortgage

9                Electronic Registration Systems Inc., a/k/a MERSCORP, Inc. ("MERS") to hide the

10               true ownership of these mortgages;

11       c.      Failing to perform their obligations in connection with their acceptance of TARP

12               funds;

13       d.      Breaching Plaintiffs' statutorily protected rights, including, consumer and

14               homeowner protection statutes by, among other things, processing money from

15               unknown offshore sources, in contravention of the Patriot Act and failing to

16               disclose the foregoing in violation of the Truth in Lending Act[2];

17       e.      Accepting money and purportedly transferring and foreclosing on assets as to which

18               Defendants have no right, title, interest or authority to act;

19       f.      Unjustly enriching themselves to the detriment of borrowers, including Plaintiffs

20               herein, by accepting money and offering trial modifications only to pocket

21               modification payments and never apply these payments to mortgage balance;

22       g.      Wrongfully foreclosing without first giving (1) notice that a loan modification had

23               been rejected and (2) an opportunity to cure the default; and

24

25   [1]  This Complaint uses "mortgage" and "deed of trust" interchangeably.  Depending upon the state and
26   other factors, a loan may be secured by either form of security instrument, the deed of trust being the
     customary instrument in California.

27   [2]  Except as a predicate violation for California's Unfair Competition statute, this Complaint does not
28   allege a violation of federal law and there are no causes of action herein pertaining to federal law.

                                        - 4 -
                                    **COMPLAINT**

h.    Continuing tortuous conduct intended to deprive Plaintiffs of their rights and remedies for the foregoing acts.

2.    Defendants, among other things, violated numerous California laws, breached various contracts, and repeatedly and intentionally failed to honor their agreements with the Plaintiffs as borrowers, or to fulfill their promises, negligently or intentionally, to Plaintiffs.

3.    As the result of an aggressive and relentlessly pursued growth strategy between 2003 and 2009, Defendant Wells Fargo Bank, N.A. ("Wells Fargo") grew to be the fourth largest banking institution in the nation, one of the leading providers and servicers of mortgages in California, and is or was the master servicer for the loans and mortgages complained of in this Complaint.  The other Defendants acted at Wells Fargo's direction to assist Wells Fargo in carrying out the scheme described herein.  In its 2010 Annual Report, Wells Fargo touts the following information:

> At December 31, 2010, we had assets of $1.3 trillion, loans of $757 billion, deposits of $848 billion and stockholders' equity of $126 billion.  Based on assets, we were the fourth largest bank holding company in the United States.  At December 31, 2010, Wells Fargo Bank, N.A. was the Company's principal subsidiary with assets of $1.1 trillion, or 88% of the Company's assets.

4.    During the period of 2003 to 2009, Defendant Wachovia Mortgage, FSB ("Wachovia") grew to be one of the largest loan originators in the nation.  Wachovia was among the leading providers and servicers of mortgages in California during all times relevant to this Complaint, and is or was the master servicer for the loans and mortgages complained of in this Complaint.  Wachovia acted at the direction, and as an agent of Wells Fargo in carrying out the scheme described herein.

5.    Defendant World Savings Bank, FSB ("WSB"), a wholly owned subsidiary of Wachovia, is an Oakland, California based mortgage lender and was among the leading providers and servicers of mortgages in California during all times relevant to this Complaint and is or was the master servicer for the loans and mortgages complained of in this Complaint.

6.    Defendant Golden West Financial Corp. ("Golden West"), a wholly owned subsidiary of Wachovia, is an Oakland, California based mortgage lender and was among the leading providers and servicers of mortgages in California during all times relevant to this Complaint and is or was the master servicer for the loans and mortgages complained of in this Complaint.

- 5 -

**COMPLAINT**

7.     Defendant America's Servicing Company ("ASC") is a wholly owned subsidiary of Wells Fargo Bank, N.A.  It is among the leading providers of securitized loans and servicers of mortgages in California.  During all times relevant to this Complaint, ASC is or was the master servicer for the loans and mortgages complained of in this Complaint.  At all times relevant to this Complaint, ASC acted and continues to act as an agent, and at the direction of Wells Fargo in carrying out the scheme described herein.

8.     In or about October of 2006 Wachovia announced its purchase of Golden West for more than $24 billion dollars.  Golden West's main mortgage product was the Pick-A-Payment ("Pick-A-Pay") mortgage.

9.     Defendants pooled their mortgages and knowingly sold securities in those pools at prices containing "secret excessive markups" or at valuations with representations of "fair market value" based on "stale" prices, as described by the Director of the SEC enforcement unit while failing to disclose that the underlying mortgage assets had already been marked down by Defendants.  To obtain sufficient product for its investor fraud, Defendants perpetrated a related fraud on homeowners and Plaintiffs – inflating the appraisals of property values, disregarding underwriting standards selling predatory loan products and promising refinancing, all while repeatedly and falsely advising the public that they were doing the opposite:  prudently lending to qualified homeowners while withholding the truth from borrowers and Plaintiffs about material facts not known to Plaintiffs but known exclusively by Defendants during the mortgage loan transactions involving Plaintiffs.

10.    Defendants' sale of mortgage products to borrowers who could not otherwise meet traditional underwriting standards for such loans, created and contributed to a massive housing price bubble that was inflated by the large number of unqualified buyers financed by Defendants.  As housing prices soared, Defendants were able to find new pawns in their fraud in those owners, including Plaintiffs herein, who were induced to refinance based upon the rapid increase in their home equity by selling them outlandish and abusive mortgage products, without disclosing the truth about Defendants' conduct, which materially differed from the partial and distorted representations made by Defendants to the public, including Plaintiffs.  The result devastated the home value, net worth, and credit rating of each Plaintiff.

- 6 -
**COMPLAINT**

11.     At the very least, at the time of entering into the notes and deeds of trust referenced herein with respect to each Plaintiff, Defendants were bound and obligated and had a duty to fully and accurately disclose to each borrower, including each Plaintiff herein, the material fact that the loan and mortgage being offered to the Plaintiff was part of a massive fraud that Defendants exclusively knew would result in the loss of the equity invested by each Plaintiff in his or her home, the severe impairment of each Plaintiff's credit rating, and the other damages described in this Complaint.

12.     Defendants, and each of them, wrongfully acted and continue to act as if they are either the owner, beneficiary, successor, assignee or servicer, or have some other right, title, or interest in Plaintiffs' notes and deeds of trust, when, in reality, they have no basis to assert any such right, title or interest.

13.     It is now all too clear that this was the ultimate high-stakes fraudulent investment scheme of the last decade.  Couched in banking and securities jargon, and advertised as a means to achieve the American dream, the deceptive gamble with consumers' primary assets – their homes – was nothing more than a financial fraud perpetrated by Defendants on a scale never before seen.

14.     This action seeks remedies for the foregoing improper activities, including a massive fraud perpetrated upon Plaintiffs and other borrowers by Defendants' business that devastated the values of their residences, in most cases resulting in Plaintiffs' loss of all or substantially all of their net worth.

15.     This scheme proximately and directly led to a mortgage meltdown in California that was substantially worse than any economic problems facing the rest of the United States.

16.     From 2008 to the present, Californians' home values decreased by considerably more than most other areas in the United States as a direct and proximate result of Defendants' scheme set forth herein.  Defendants knowingly and systematically destroyed California home values, and/or acted with callous or reckless disregard for whether their actions would cause California home prices to plummet.

17.     Defendants hired "kids" and permitted them to sell the most exotic mortgage products available; yet these kids knew nothing about mortgages.  These employees were incentivized in a high sales environment, and profited by pushing these risky loans to unsuspecting homeowners, who in many instances qualified for a more conventional loan.

**COMPLAINT**

18.     Defendants purported to sell exotic interests in the ownership of their notes and mortgages to manipulate rating agencies and consumers alike.  Ownership was sold so often and in so many different ways, that Defendants had no idea who owns the notes or deeds of trust, yet they insist they have the power to foreclose and to steal Plaintiffs' homes.

19.     Defendants attracted pension funds and unwitting investors throughout the world to invest in their increasingly risky mortgage pools.

20.     Wells Fargo created and serviced a large private label mortgage portfolio.  Since it knew the quality of the loans that it was securitizing, it was easy for Wells Fargo to determine the past performance of such mortgage pools.

21.     Defendants managed risk through leverage and derivatives trading. They had the tool they needed to push these loans like a drug which required even higher doses.  Since they planned on securitizing all or substantially all of their loans rather than keeping these loans, Defendants were indifferent about the quality of their loans or who they hurt.

22.     Since the Defendants created these pools, they were fully aware of the lack of quality and lack of due diligence that went into setting up these pools.  Defendants **knew** that the loans that were being written were dangerous and would likely default.  The Defendants' own reports pursuant to the Home Mortgage Disclosure Act ("HMDA") which requires financial institutions to maintain and annually disclose data about home purchases, and refinance applications revealed that their high cost lending and, in particular, their high-priced refinance loans were a significant percentage of their lending to financially unsophisticated subprime borrowers, including many of the Plaintiffs.  More than 50% of Defendants' lending was in adjustable rate products that trapped Plaintiffs in expensive loan products shoving Plaintiffs into the inevitability of extremely high default rates when the interest rates were reset. The HDMA data reveals that Defendants knew that their predatory lending practices were resulting in and would continue to result in significant percentages of default among their borrowers in general and Plaintiffs in particular and that they would "handcuff" Plaintiffs into these dangerous products by financial force, placing substantial early payment penalties if the borrowers tried to get out of these toxic loans into more stable fixed rate products.

- 8 -
**COMPLAINT**

23.   Even if the Plaintiffs believed that the real estate market would crash, they had no way out since they would be heavily penalized for trying to exit these loans.

24.   This massive fraudulent scheme was a disaster both foreseen by Defendants' business and waiting to happen.  Defendants knew it, and yet still intentionally induced the Plaintiffs into their scheme without disclosing to material facts known exclusively by Defendants. In fact, had the Plaintiffs been aware of the true facts which Defendants concealed and failed to disclose, they would not have entered into these transactions.

25.   As a result of Defendants' improper, misleading, and fraudulent scheme, Plaintiffs lost equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs incurred material other costs and expenses, described herein.  At the same time, Defendants took from Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of dollars in profits by selling their loans at inflated values and receiving servicing fees.

26.   With the proceeds of TARP funds and a voraciousness that has been chastised by numerous courts, Defendants then sought to obliterate the last vestiges of value held by Plaintiffs, and proceeded to flip distressed assets for a profit.  Defendants' other improper acts since 2008 are numerous, including but not limited to: (1) issuing Notices of Default in violation of Cal. Civil Code § 2923.5; (2) misrepresenting their intention to arrange loan modifications for Plaintiffs, while in fact creating abusive roadblocks to deprive Plaintiffs of their rights; and (3) and failing to respond to Plaintiffs' communications.

27.   Defendants continue to demand payment and to threaten to foreclose and foreclose on Plaintiffs, despite the facts that: (1) Defendants have no proof that they own or hold the notes and deeds of trust they seek to enforce; (2) there is considerable evidence that Defendants do not own or hold the notes and deeds of trust they enforce and seek to enforce and based thereon, Plaintiffs allege that they do not; and (3) whether or not they can demonstrate ownership of the requisite notes and deeds of trust, Defendants lack the legal right to enforce the foregoing because they have not complied with disclosure requirements intended to assure that mortgages are funded with monies obtained lawfully.

28.   As a proximate and foreseeable result of Defendants' sale of the notes and deeds of trust regarding Plaintiffs' properties and others similarly situated for more than the actual value of such

- 9 -

**COMPLAINT**

1   instruments, securitization pools lacked the cash flow necessary to maintain them in accordance with

2   their indentures.  Pressure then grew among restive investors in the securities and the trustees of the

3   mortgage pools to begin the liquidation of the defaulting loans.  Selling ever-increasing volumes of

4   foreclosed homes began the deflation of the price bubble created by Defendants.  As a result, the

5   unraveling of Defendants' fraudulent scheme has materially depressed the price of real estate throughout

6   California, including the real estate owned by Plaintiffs.

7        29.     Plaintiffs believe and thereon allege that Defendants have made demand for payment on

8   the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants were incapable of

9   establishing (and did not have any credible knowledge regarding) who owns the promissory notes

10  Defendants were purportedly servicing, and that these acts are continuing.  Defendants are not, and were

11  not at the relevant times, the holders of Plaintiffs' notes and deeds of trust and are not, and were not at

12  the relevant times, operating under a valid power from the current holders of the notes and deeds of

13  trust.  Accordingly, Defendants are not and were not at the relevant times allowed legally to enforce the

14  notes or deeds of trust.  Defendants' attempts to enforce Plaintiffs' notes were nothing but a sham and a

15  fraud upon the Plaintiffs, the public, and the courts.

16       30.     MERS operates an electronic registry designed to track servicing rights and the

17  ownership of mortgages.  MERS is sometimes named as the "nominee" for lenders, and at other times

18  MERS is named as the "beneficiary" of the deed of trust on behalf of unknown persons.  When a loan is

19  transferred among MERS members, MERS purports to simplify the process by avoiding the requirement

20  to re-record liens and pay county recorder filing fees.

21       31.     Plaintiffs believe and herein allege that Defendants, and each of them, are members

22  MERS, subscribed to use their electronic registry system.

23       32.     For most of the Plaintiffs herein, MERS claims to be the owner of the security interest

24  indicated by the mortgages transferred by lenders, investors and their loan servicers in the county land

25  records.  MERS claims its process eliminates the need to file assignments in the county land records

26  which lowers costs for lenders and consumers by reducing county recording revenues from real estate

27  transfers and provides a central source of information and tracking for mortgage loans.

28

- 10 -
**COMPLAINT**

33.   Based upon published reports, including MERS' website, Plaintiffs believe and hereon allege, MERS does not: (1) take applications for, underwrite or negotiate mortgage loans; (2) make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service mortgage loans; or (5) invest in mortgage loans.

34.   MERS is used by Defendants to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of unsourced (i.e., unknown) funds, including, without limitation, improper off-shore funds.  Plaintiffs are informed and thereon believe and allege that MERS has been listed as beneficial owner of more than half the mortgages in the United States.  MERS is improperly listed as beneficial owner of many Plaintiffs' mortgages.

35.   Despite being used by Defendants in California, MERS' status in California was suspended on May 31, 2002 and its agent for service of process resigned on March 25, 2009.  No action taken by MERS in or with respect to the State of California, property in the State of California, individuals in the State of California or legal persons in the State of California since May 21, 2002 is a valid or enforceable action.

36.   In 2001, Congress found that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks."  Congress specifically found that "money launderers subvert legitimate financial mechanisms and banking relationships by using them as protective covering for the movement of criminal proceeds and the financing of crime and terrorism..."  Defendants have in this manner subverted financial mechanisms with the intent, or at least the result and callous disregard, of providing such cover for many illegal activities.

37.   As recently as April 13, 2011, the Federal Reserve Board of Governors, the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision and the Federal Housing Finance Agency found "certain deficiencies and unsafe or unsound practices by MERS and MERSCORP that present financial, operational, compliance, legal and reputational risks."  As a result, the various agencies entered into a Consent Cease and Desist Order requiring those practices be audited and corrected.

- 11 -
**COMPLAINT**

38.     As an example only, Plaintiffs Allen Bickerstaff and Rose Bickerstaff have suffered from Defendants conduct.  Defendant Wachovia took away the ability for the Bickerstaffs to send the negatively amortized payment, therefore making this loan unaffordable for them. They had a right under their mortgage contract to have the principal of the loan balance, including negative amortization, go up to an amount of $432,500 throughout the life of their loan.  That ability was taken away from them and they were forced to repay a payment that was principal and interest and that led them to default on their loan.

39.     For nearly three years, the Bickerstaff's have been requesting that their loan contract be honored by Defendant Wells Fargo Bank accepting the negative amortization option payments, but Wells Fargo Bank, through their Wachovia subsidiary, has refused to honor the original contract and accept the lower payments

40.     Plaintiffs Robert Harrick and Geraldine Harrick are an elderly couple who have been asking Defendant Wachovia for help for nearly a year and a half.  Their loan contains negative amortization and Robert and Geraldine are both on fixed incomes.  Plaintiff Robert Harrick was forced to return to work at age 69 to protect his and his wife's home due to Defendants' wrongful actions as alleged herein.  Their home loan has become unaffordable due to Defendants' wrongful actions as described herein, and the Harricks have requested numerous times for the payment to be fixed and that the deferred interest option wrongfully repudiated by Defendants to be restored to their loan.  Wells Fargo has refused to assist the Harricks and has specifically advised them to fall behind on their loan payments in order to get the help this family needs.  Plaintiffs have so far refused to fall into Defendants' trap and have requested assistance from Wells Fargo repeatedly to no avail.

41.     The Harricks' home is currently upside down by close to $50,000.00 and they are being buried into their home.  They cannot sell their home, they cannot refinance their home, and Wells Fargo refuses to modify the loan on their home or allow them to pay the lower payments allowed under their mortgage. Wells Fargo Bank is forcing the Harricks out of their home by slowly stealing every last bit of equity they had left and refusing to assist them in getting out of this predatory loan or modifying it, or even honoring its terms, including lower payments under their disallowed "options" as alleged herein.

- 12 -
**COMPLAINT**

42.     Defendants' wrongful acts continue to this day with hardball tactics and deception that continue to threaten Plaintiffs' rights and financial security, as well as the economic future of the State of California.  Since 2010, these tactics and Defendants' other wrongful acts have finally been revealed as a result of extensive litigation and Government investigations.

**PARTIES**

*Plaintiffs*

43.     Plaintiff LUIS MIRELES is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 10672 Pamela Street, Cypress, California 90630.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

44.     Plaintiff GEORGIA MIRELES is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 10672 Pamela Street, Cypress, California 90630.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

45.     Plaintiff PAULA L. KAZMIERZAK is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 11 San Raphael Place, Pomona, California 91766.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

46.     Plaintiff RAMON ALVAREZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 1100 Wilshire Boulevard, #3109, Los Angeles, California 90017.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

- 13 -
**COMPLAINT**

47.     Plaintiff RUE ANN BARROW is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 35892 Willow Crest Lane, Palm Desert, California 92211.  At all times material hereto, Defendants has acted as Servicer or some other control capacity over processing the loan.

48.     Plaintiff KENNETH W. BASE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 2939 Kelton Avenue, Los Angeles, California 90064.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

49.     Plaintiff KATJA K. BASE is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 2939 Kelton Avenue, Los Angeles, California 90064.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

50.     Plaintiff JOHN BERRIOS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 317 Flittner Circle, Thousand Oaks, California 91360.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

51.     Plaintiff NORA BERRIOS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 317 Flittner Circle, Thousand Oaks, California 91360.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

52.     Plaintiff ALLEN BICKERSTAFF is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 15723 Marlinton

- 14 -
**COMPLAINT**

1 | Drive, Whittier, California 90604.  At all times material hereto, Defendants have acted as Servicer or
2 | some other control capacity over processing the loan.
3 |      53.    Plaintiff ROSE BICKERSTAFF is an individual residing in the State of California, who
4 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
5 | December 31, 2008, secured by a deed of trust on her California real estate located at 15723 Marlinton
6 | Drive, Whittier, California 90604.  At all times material hereto, Defendants have acted as Servicer or
7 | some other control capacity over processing the loan.
8 |      54.    Plaintiff NASRIN CHADORBAF is an individual residing in the State of California, who
9 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
10 | December 31, 2008, secured by a deed of trust on his California real estate located at 1 Del Cambrea,
11 | Irvine, California 92606.  At all times material hereto, Defendants have acted as Servicer or some other
12 | control capacity over processing the loan.
13 |      55.    Plaintiff ROSA COURTNEY is an individual residing in the State of California, who
14 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
15 | December 31, 2008, secured by a deed of trust on her California real estate located at 3407 South Taurus
16 | Lane, Santa Ana, California 92704.  At all times material hereto, Defendants have acted as Servicer or
17 | some other control capacity over processing the loan.
18 |      56.    Plaintiff JEFFREY J. DAIGLE is an individual residing in the State of California, who
19 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
20 | December 31, 2008, secured by a deed of trust on his California real estate located at 4490 West 129th
21 | Street, Hawthorne, California 90250.  At all times material hereto, Defendants have acted as Servicer or
22 | some other control capacity over processing the loan.
23 |      57.    Plaintiff LAURA DANLASKY is an individual residing in the State of California, who
24 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
25 | December 31, 2008, secured by a deed of trust on her California real estate located at 4490 West 129th
26 | Street, Hawthorne, California 90250.  At all times material hereto, Defendants have acted as Servicer or
27 | some other control capacity over processing the loan.
28 |

**COMPLAINT**

1      58.     Plaintiff DAVID CECIL is an individual residing in the State of California, who

2   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

3   December 31, 2008, secured by a deed of trust on his California real estate located at 40624 Sawgrass

4   Drive, Palmdale, California 93551.  At all times material hereto, Defendants have acted as Servicer or

5   some other control capacity over processing the loan.

6      59.     Plaintiff LINDA L. FOSTER is an individual residing in the State of California, who

7   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

8   December 31, 2008, secured by a deed of trust on her California real estate located at 3733 Pine Avenue

9   Long Beach, California 90807.  At all times material hereto, Defendants have acted as Servicer or some

10   other control capacity over processing the loan.

11      60.     Plaintiff TERRY S. KEEFER is an individual residing in the State of California, who

12   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13   December 31, 2008, secured by a deed of trust on his California real estate located at 1893 5th Street, La

14   Verne, California 91750.  At all times material hereto, Defendants have acted as Servicer or some other

15   control capacity over processing the loan.

16      61.     Plaintiff VERONICA PADILLA is an individual residing in the State of California, who

17   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18   December 31, 2008, secured by a deed of trust on her California real estate located at 1893 5th Street, La

19   Verne, California 91750.  At all times material hereto, Defendants have acted as Servicer or some other

20   control capacity over processing the loan.

21      62.     Plaintiff MARIA LOPEZ is an individual residing in the State of California, who

22   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23   December 31, 2008, secured by a deed of trust on her California real estate located at 526 West Houston

24   Avenue, Fullerton, California 92832.  At all times material hereto, Defendants have acted as Servicer or

25   some other control capacity over processing the loan.

26      63.     Plaintiff CHAUNTEE MATHIS is an individual residing in the State of California, who

27   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28   December 31, 2008, secured by a deed of trust on her California real estate located at 23265 Merrygrove

- 16 -

**COMPLAINT**

1  Circle, Moreno Valley, California 92553.  At all times material hereto, Defendants have acted as

2  Servicer or some other control capacity over processing the loan.

3       64.    Plaintiff ZOILA DELCIA MELGAR is an individual residing in the State of California,

4  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

5  December 31, 2008, secured by a deed of trust on his California real estate located at 10228 Monte Vista

6  Avenue, Montclair, California 91763.  At all times material hereto, Defendants have acted as Servicer or

7  some other control capacity over processing the loan.

8       65.    Plaintiff THU HA NONG is an individual residing in the State of California, who

9  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

10  December 31, 2008, secured by a deed of trust on his California real estate located at 16707 Daisy

11  Avenue, Fountain Valley, California 92708.  At all times material hereto, Defendants have acted as

12  Servicer or some other control capacity over processing the loan.

13       66.    Plaintiff ELVIRA R. PALAC is an individual residing in the State of California, who

14  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

15  December 31, 2008, secured by a deed of trust on her California real estate located at 8232 Laurel Ridge

16  Road, Riverside, California 92508.  At all times material hereto, Defendants have acted as Servicer or

17  some other control capacity over processing the loan.

18       67.    Plaintiff WILLIAM R. SCHRANER, JR. is an individual residing in the State of

19  California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1,

20  2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 10147

21  Horsehaven Street, Sun Valley, California 91352.  At all times material hereto, Defendants have acted as

22  Servicer or some other control capacity over processing the loan.

23       68.    Plaintiff JANET SCHRANER is an individual residing in the State of California, who

24  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

25  December 31, 2008, secured by a deed of trust on her California real estate located at 10147 Horsehaven

26  Street, Sun Valley, California 91352.  At all times material hereto, Defendants have acted as Servicer or

27  some other control capacity over processing the loan.

28

**COMPLAINT**

69.     Plaintiff MARIA C. TAMAYO is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 1143 South North Street, Oxnard, California 93033.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

70.     Plaintiff JOAN WADDELL is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 230 East Forest Avenue, Arcadia, California 91006.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

71.     Plaintiff STEVEN M. WEISS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 19409 Kilfinan Street, Northridge, California 91326.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

72.     Plaintiff GARY R. WOOLEVER is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 47-845 Via Jardin, La Quinta, California 92253.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

73.     Plaintiff RICHARD WU is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 809 West Broadway, Anaheim, California 92805.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

74.     Plaintiff IVY WU is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 809 West Broadway, Anaheim,

- 18 -
**COMPLAINT**

California 92805.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

75.     Plaintiff REBECCA SIERRA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 30832 Calle Chueca, San Juan Capistrano, California 92675.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

76.     Plaintiff SAMMIE NOEL is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 1175 Barton Peak Drive, Chula Vista, California 91913.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

77.     Plaintiff CRISTINA MAGANA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 9226 Gainford Street, Downey, California 90240, and 6644 Pine Bluff Drive, Whittier, California 90601.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

78.     Plaintiff AARON M. DOSS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 35416 Saddle Hill Road, Lake Elsinore, California 93532.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

79.     Plaintiff JOSE MARTIN VALDOVINOS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 13331 Highstone Manor Court, Rancho Cucamonga, California 91739.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

- 19 -
**COMPLAINT**

80.     Plaintiff MELANIE VALDOVINOS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 13331 Highstone Manor Court, Rancho Cucamonga, California 91739.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

81.     Plaintiff LORELI WAHL is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 14335 Huston Street, #101, Sherman Oaks, California 91423.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

82.     Plaintiff MAGDALENA LUNA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 2534 Chadwell Avenue, San Diego, California 92154.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

83.     Plaintiff OLGA MORGOUNOVA is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 8841 Evanview Drive, Los Angeles, California 90069.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

84.     Plaintiff FAUSTO CALLEGARINI is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by deeds of trust on his California real estate located at 6640 Withley Terrace, Los Angeles, California 90068, at 1440 North Fairfax Avenue, #102, Los Angeles, California 90046, and at 8562 West Knoll Drive, #1, West Hollywood, California 90069.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

85.     Plaintiff THOMAS BURNS is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

- 20 -
**COMPLAINT**

1  December 31, 2008, secured by a deed of trust on his California real estate located at 545 Engman Road,
2  Pinon Hills, California 92372.  At all times material hereto, Defendants have acted as Servicer or some
3  other control capacity over processing the loan.

4      86.    Plaintiff ROBIN BURNS is an individual residing in the State of California, who
5  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
6  December 31, 2008, secured by a deed of trust on her California real estate located at 545 Engman
7  Road, Pinon Hills, California 92372.  At all times material hereto, Defendants have acted as Servicer or
8  some other control capacity over processing the loan.

9      87.    Plaintiff DAVID NYQUIST is an individual residing in the State of California, who
10  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
11  December 31, 2008, secured by a deed of trust on his California real estate located at 27589 Senna
12  Court, Temecula, California 92591.  At all times material hereto, Defendants have acted as Servicer or
13  some other control capacity over processing the loan.

14      88.    Plaintiff CORINNA NYQUIST is an individual residing in the State of California, who
15  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
16  December 31, 2008, secured by a deed of trust on her California real estate located at 27589 Senna
17  Court, Temecula, California 92591.  At all times material hereto, Defendants have acted as Servicer or
18  some other control capacity over processing the loan.

19      89.    Plaintiff JAMES SALO is an individual residing in the State of California, who borrowed
20  money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31,
21  2008, secured by a deed of trust on his California real estate located at 8432 Portafino Place, Whittier,
22  California 90603.  At all times material hereto, Defendants have acted as Servicer or some other control
23  capacity over processing the loan.

24      90.    Plaintiff CLAIRE SALO is an individual residing in the State of California, who
25  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
26  December 31, 2008, secured by a deed of trust on her California real estate located at 8432 Portafino
27  Place, Whittier, California 90603.  At all times material hereto, Defendants have acted as Servicer or
28  some other control capacity over processing the loan.

- 21 -
**COMPLAINT**

1      91.    Plaintiff MARCY F. KAPLAN is an individual residing in the State of California, who

2  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

3  December 31, 2008, secured by a deed of trust on her California real estate located at 5721 S. Crescent

4  Park West, #205, Los Angeles, California 90094.  At all times material hereto, Defendants have acted as

5  Servicer or some other control capacity over processing the loan.

6      92.    Plaintiff SHERYL E. BREAULT is an individual residing in the State of California, who

7  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

8  December 31, 2008, secured by a deed of trust on her California real estate located at 3111 San

9  Francisco Avenue, Long Beach, California 90806.  At all times material hereto, Defendants have acted

10  as Servicer or some other control capacity over processing the loan.

11      93.    Plaintiff ALLISON J. HERBERT is an individual residing in the State of California, who

12  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13  December 31, 2008, secured by a deed of trust on her California real estate located at 14839 Daisy

14  Meadow Street, Canyon Country, California 91387.  At all times material hereto, Defendants have acted

15  as Servicer or some other control capacity over processing the loan.

16      94.    Plaintiff STIRLING HALE is an individual residing in the State of California, who

17  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18  December 31, 2008, secured by a deed of trust on his California real estate located at 2375 Marsh Drive,

19  Lincoln, California 95648.  At all times material hereto, Defendants have acted as Servicer or some

20  other control capacity over processing the loan.

21      95.    Plaintiff MICHELLE HALE is an individual residing in the State of California, who

22  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23  December 31, 2008, secured by a deed of trust on her California real estate located at 2375 Marsh Drive,

24  Lincoln, California 95648.  At all times material hereto, Defendants have acted as Servicer or some

25  other control capacity over processing the loan.

26      96.    Plaintiff MAMIE Y. THOMAS is an individual residing in the State of California, who

27  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28  December 31, 2008, secured by a deed of trust on her California real estate located at 719 Terra Nova

- 22 -
**COMPLAINT**

Drive, Chula Vista, California 91910.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

97.     Plaintiff ROBERT HARRICK is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 68605 Tachevah Drive, Cathedral City, California 92234.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

98.     Plaintiff GERALDINE HARRICK is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 68605 Tachevah Drive, Cathedral City, California 92234.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

99.     Plaintiff KATHERINE WARD is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 2027 East Shamwood Street, West Covina, California 91791.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

100.    Plaintiff PATRICIA LOPEZ is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 2525 North Bourbon Street, Unit C1, Orange, California 92865.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

101.    Plaintiff ROGER HOUSGARD is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 23751 Vista Ramona Road, Ramona, California 92065.  At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

**COMPLAINT**

1         102.   Plaintiff LENA HOUSGARD is an individual residing in the State of California, who

2    borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

3    December 31, 2008, secured by a deed of trust on her California real estate located at 23751 Vista

4    Ramona Road, Ramona, California 92065. At all times material hereto, Defendants have acted as

5    Servicer or some other control capacity over processing the loan.

6         103.   Plaintiff CHRISTOPHER BITNER is an individual residing in the State of California,

7    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

8    December 31, 2008, secured by a deed of trust on his California real estate located at 1 Tortuga Cay,

9    Aliso Viejo, California 92656. At all times material hereto, Defendants have acted as Servicer or some

10   other control capacity over processing the loan.

11        104.   Plaintiff MARIOLA BITNER is an individual residing in the State of California, who

12   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13   December 31, 2008, secured by a deed of trust on her California real estate located at 1 Tortuga Cay,

14   Aliso Viejo, California 92656. At all times material hereto, Defendants have acted as Servicer or some

15   other control capacity over processing the loan.

16        105.   Plaintiff JOSEPH LABATE is an individual residing in the State of California, who

17   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18   December 31, 2008, secured by a deed of trust on his California real estate located at 1019 Myrtle

19   Avenue, Big Bear City, California 92314. At all times material hereto, Defendants have acted as

20   Servicer or some other control capacity over processing the loan.

21        106.   Plaintiff CHERYL LABATE is an individual residing in the State of California, who

22   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23   December 31, 2008, secured by a deed of trust on her California real estate located at 1019 Myrtle

24   Avenue, Big Bear City, California 92314. At all times material hereto, Defendants have acted as

25   Servicer or some other control capacity over processing the loan.

26        107.   Plaintiff RICHARD ELAM is an individual residing in the State of California, who

27   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28   December 31, 2008, secured by a deed of trust on his California real estate located at 5124 Arlene Court

- 24 -
**COMPLAINT**

1   San Diego, California 92117. At all times material hereto, Defendants have acted as Servicer or some

2   other control capacity over processing the loan.

3          108.    Plaintiff ESTHER MERKI is an individual residing in the State of California, who

4   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

5   December 31, 2008, secured by a deed of trust on her California real estate located at 5124 Arlene

6   Court, San Diego, California 92117. At all times material hereto, Defendants have acted as Servicer or

7   some other control capacity over processing the loan.

8          109.    Plaintiff JOE CHAVEZ is an individual residing in the State of California, who borrowed

9   money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31,

10  2008, secured by a deed of trust on his California real estate located at 7102 Gretna Avenue, Whittier,

11  California 90606. At all times material hereto, Defendants have acted as Servicer or some other control

12  capacity over processing the loan.

13         110.    Plaintiff DAVID ZAMORA is an individual residing in the State of California, who

14  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

15  December 31, 2008, secured by a deed of trust on his California real estate located at 15922 Arbury

16  Street, Hesperia, California 92345. At all times material hereto, Defendants have acted as Servicer or

17  some other control capacity over processing the loan.

18         111.    Plaintiff GAVIELA ZAMORA is an individual residing in the State of California, who

19  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

20  December 31, 2008, secured by a deed of trust on her California real estate located at 15922 Arbury

21  Street, Hesperia, California 92345. At all times material hereto, Defendants have acted as Servicer or

22  some other control capacity over processing the loan.

23         112.    Plaintiff DANIEL SPATACEAN is an individual residing in the State of California, who

24  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

25  December 31, 2008, secured by a deed of trust on his California real estate located at 19761 Ridgewood

26  Place, Yorba Linda, California 92886. At all times material hereto, Defendants have acted as Servicer

27  or some other control capacity over processing the loan.

28

**COMPLAINT**

1    113.    Plaintiff COSMINA R. SPATACEAN is an individual residing in the State of California,

2    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

3    December 31, 2008, secured by a deed of trust on her California real estate located at 19761 Ridgewood

4    Place, Yorba Linda, California 92886.  At all times material hereto, Defendants have acted as Servicer

5    or some other control capacity over processing the loan.

6    114.    Plaintiff PAMELA MEIER is an individual residing in the State of California, who

7    borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

8    December 31, 2008, secured by a deed of trust on her California real estate located at 2108 Orange

9    Avenue, Ramona, California 92065.  At all times material hereto, Defendants have acted as Servicer or

10   some other control capacity over processing the loan.

11   115.    Plaintiff PATRICIA MEIER is an individual residing in the State of California, who

12   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13   December 31, 2008, secured by a deed of trust on her California real estate located at 2108 Orange

14   Avenue, Ramona, California 92065.  At all times material hereto, Defendants have acted as Servicer or

15   some other control capacity over processing the loan.

16   116.    Plaintiff KATHERINE WARD is an individual residing in the State of California, who

17   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18   December 31, 2008, secured by a deed of trust on her California real estate located at 2027 East

19   Shamwood Street, West Covina, California 91791.  At all times material hereto, Defendants have acted

20   as Servicer or some other control capacity over processing the loan.

21   117.    Plaintiff SVEN WALKER is an individual residing in the State of California, who

22   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23   December 31, 2008, secured by a deed of trust on his California real estate located at 166 Wells Drive,

24   Felton, California 95018.  At all times material hereto, Defendants have acted as Servicer or some other

25   control capacity over processing the loan.

26   118.    Plaintiff RICHARD COUTURE is an individual residing in the State of California, who

27   borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28   December 31, 2008, secured by a deed of trust on his California real estate located at 901 Cedarcrest

- 26 -
**COMPLAINT**

1  Drive, Vacaville, California 95687.  At all times material hereto, Defendants have acted as Servicer or
2  some other control capacity over processing the loan.

3       119.    Plaintiff MARCELLA VILLALPANDO is an individual residing in the State of
4  California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1,
5  2003 and December 31, 2008, secured by a deed of trust on her California real estate located at 519
6  Silvery Lane, El Cajon, California 92020.  At all times material hereto, Defendants have acted as
7  Servicer or some other control capacity over processing the loan.

8       120.    Plaintiff RICHARD VILLALPANDO is an individual residing in the State of California,
9  who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
10 December 31, 2008, secured by a deed of trust on his California real estate located at 519 Silvery Lane,
11 El Cajon, California 92020.  At all times material hereto, Defendants have acted as Servicer or some
12 other control capacity over processing the loan.

13      121.    Plaintiff CHOR CHUN NGAN is an individual residing in the State of California, who
14 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
15 December 31, 2008, secured by deeds of trust on his California real estate located at 1117 Hicrest Road,
16 Glendora, California 91741, at 25084 Court Street, Loma Linda, California 92354 and at 25064-25074
17 Court Street, Loma Linda, California 92354.  At all times material hereto, Defendants have acted as
18 Servicer or some other control capacity over processing the loan.

19      122.    Plaintiff PATRICE THOMPSON is an individual residing in the State of California, who
20 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
21 December 31, 2008, secured by a deed of trust on her California real estate located at 1611 Roosevelt
22 Avenue, Richmond, California 94801.  At all times material hereto, Defendants have acted as Servicer
23 or some other control capacity over processing the loan.

24      123.    Plaintiff FAUSTO CALLEGARINI is an individual residing in the State of California,
25 who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and
26 December 31, 2008, secured by deeds of trust on his California real estate located at 6640 Whitley
27 Terrace, Los Angeles, California 90068, at 1144 North Fairfax Avenue, #102, Los Angeles, California
28

1 | 90046, and at 8562 West Knoll Drive, #1, West Hollywood, California 90069. At all times material

2 | hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

3 |     124.    Plaintiff PAUL PEASE is an individual residing in the State of California, who borrowed

4 | money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31,

5 | 2008, secured by a deed of trust on his California real estate located at 2590 West Noble Avenue,

6 | Caruthers, California 93609. At all times material hereto, Defendants have acted as Servicer or some

7 | other control capacity over processing the loan.

8 |     125.    Plaintiff CYNTHIA M. PEASE is an individual residing in the State of California, who

9 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

10 | December 31, 2008, secured by a deed of trust on her California real estate located at 2590 West Noble

11 | Avenue, Caruthers, California 93609. At all times material hereto, Defendants have acted as Servicer or

12 | some other control capacity over processing the loan.

13 |     126.    Plaintiff NORMA GARCIA is an individual residing in the State of California, who

14 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

15 | December 31, 2008, secured by a deed of trust on her California real estate located at 11748 White

16 | Mountain Court, Rancho Cucamonga, California 91737. At all times material hereto, Defendants have

17 | acted as Servicer or some other control capacity over processing the loan.

18 |     127.    Plaintiff TE VAN NGUYEN is an individual residing in the State of California, who

19 | borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

20 | December 31, 2008, secured by a deed of trust on his California real estate located at 33 Lycett Circle,

21 | Daly City, California 94015. At all times material hereto, Defendants have acted as Servicer or some

22 | other control capacity over processing the loan.

23 |     128.    Plaintiff NATIVIDAD TERRAZAS is an individual residing in the State of California,

24 | who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

25 | December 31, 2008, secured by a deed of trust on his California real estate located at 12101 Van Nuys

26 | Boulevard, #47, Sylmar, California 91342. At all times material hereto, Defendants have acted as

27 | Servicer or some other control capacity over processing the loan.

28 |

1        129.   Plaintiff ALEX CALDER is an individual residing in the State of California, who

2 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

3 December 31, 2008, secured by a deed of trust on his California real estate located at 2611 West

4 Verdugo Avenue, Burbank, California 91505.  At all times material hereto, Defendants have acted as

5 Servicer or some other control capacity over processing the loan.

6        130.   Plaintiff DAVID OXLEY is an individual residing in the State of California, who

7 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

8 December 31, 2008, secured by a deed of trust on his California real estate located at 146 North 16th

9 Street, San Jose, California 95112.  At all times material hereto, Defendants have acted as Servicer or

10 some other control capacity over processing the loan.

11        131.   Plaintiff RAMIRO RODRIGUEZ is an individual residing in the State of California, who

12 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13 December 31, 2008, secured by a deed of trust on his California real estate located at 45930 Hopactong

14 Street, Temecula, California 92592.  At all times material hereto, Defendants have acted as Servicer or

15 some other control capacity over processing the loan.

16        132.   Plaintiff ROSELIA RODRIGUEZ is an individual residing in the State of California,

17 who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18 December 31, 2008, secured by a deed of trust on her California real estate located at 45930 Hopactong

19 Street, Temecula, California 92592.  At all times material hereto, Defendants have acted as Servicer or

20 some other control capacity over processing the loan.

21        133.   Plaintiff TONY BEIZAEE is an individual residing in the State of California, who

22 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23 December 31, 2008, secured by a deed of trust on his California real estate located at 136 Lessay, #98,

24 Newport Beach, California 92657.  At all times material hereto, Defendants have acted as Servicer or

25 some other control capacity over processing the loan.

26        134.   Plaintiff ALICE GANZON is an individual residing in the State of California, who

27 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28 December 31, 2008, secured by a deed of trust on her California real estate located at 8 Pierremont,

- 29 -

**COMPLAINT**

1    Aliso Viejo, California 92656. At all times material hereto, Defendants have acted as Servicer or some

2    other control capacity over processing the loan.

3         135.    Plaintiff YASUHARU KUROIWA is an individual residing in the State of California,

4    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

5    December 31, 2008, secured by a deed of trust on his California real estate located at 428 South

6    Rosebud Court, Anaheim, California 92808. At all times material hereto, Defendants have acted as

7    Servicer or some other control capacity over processing the loan.

8         136.    Plaintiff KAYAKO KUROIWA is an individual residing in the State of California, who

9    borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

10    December 31, 2008, secured by a deed of trust on her California real estate located at 428 South

11    Rosebud Court, Anaheim, California 92808. At all times material hereto, Defendants have acted as

12    Servicer or some other control capacity over processing the loan.

13         137.    Plaintiff JOHN CALDERONE is an individual residing in the State of California, who

14    borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

15    December 31, 2008, secured by a deed of trust on his California real estate located at 18095 Yosemite

16    Court, Fountain Valley, California 92708. At all times material hereto, Defendants have acted as

17    Servicer or some other control capacity over processing the loan.

18         138.    Plaintiff VIRGINIA VILLASENOR is an individual residing in the State of California,

19    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

20    December 31, 2008, secured by a deed of trust on her California real estate located at 13981 Katelyn

21    Street, Hesperia, California 92345. At all times material hereto, Defendants have acted as Servicer or

22    some other control capacity over processing the loan.

23         139.    Plaintiff FELIX VILLASENOR, JR. is an individual residing in the State of California,

24    who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

25    December 31, 2008, secured by a deed of trust on his California real estate located at 13981 Katelyn

26    Street, Hesperia, California 92345. At all times material hereto, Defendants have acted as Servicer or

27    some other control capacity over processing the loan.

28

**COMPLAINT**

1      140.   Plaintiff LINDA TRAN is an individual residing in the State of California, who borrowed

2 money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31,

3 2008, secured by a deed of trust on her California real estate located at 2714 South Diamond Street,

4 Santa Ana, California 92704.  At all times material hereto, Defendants have acted as Servicer or some

5 other control capacity over processing the loan.

6      141.   Plaintiff WAYNE WILLIAMS is an individual residing in the State of California, who

7 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

8 December 31, 2008, secured by a deed of trust on his California real estate located at 1330 Crape Myrtle

9 Drive, Azusa, California 91702.  At all times material hereto, Defendants have acted as Servicer or some

10 other control capacity over processing the loan.

11      142.   Plaintiff SUZANNE WILLIAMS is an individual residing in the State of California, who

12 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

13 December 31, 2008, secured by a deed of trust on her California real estate located at 1330 Crape Myrtle

14 Drive, Azusa, California 91702.  At all times material hereto, Defendants have acted as Servicer or some

15 other control capacity over processing the loan.

16      143.   Plaintiff TEERI A. PENKERT is an individual residing in the State of California, who

17 borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

18 December 31, 2008, secured by a deed of trust on his California real estate located at 15 Killini, Laguna

19 Niguel, California 92677.  At all times material hereto, Defendants have acted as Servicer or some other

20 control capacity over processing the loan.

21      144.   Plaintiff RHONDA K. PENKERT is an individual residing in the State of California,

22 who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

23 December 31, 2008, secured by a deed of trust on her California real estate located at 15 Killini, Laguna

24 Niguel, California 92677.  At all times material hereto, Defendants have acted as Servicer or some other

25 control capacity over processing the loan.

26      145.   Plaintiff DOUGLAS FERNANDES is an individual residing in the State of California,

27 who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

28 December 31, 2008, secured by a deed of trust on his California real estate located at 314 Northampton

- 31 -

**COMPLAINT**

1  Way, Newman, California 95360.  At all times material hereto, Defendants have acted as Servicer or

2  some other control capacity over processing the loan.

3      146.    Plaintiff RENAN PULECIO is an individual residing in the State of California, who

4  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

5  December 31, 2008, secured by a deed of trust on his California real estate located at 10 Claremont

6  Lane, Trabuco Canyon, California 92679.  At all times material hereto, Defendants have acted as

7  Servicer or some other control capacity over processing the loan.

8      147.    Plaintiff JEANNETTE PULECIO is an individual residing in the State of California, who

9  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

10  December 31, 2008, secured by a deed of trust on her California real estate located at 10 Claremont

11  Lane, Trabuco Canyon, California 92679.  At all times material hereto, Defendants have acted as

12  Servicer or some other control capacity over processing the loan.

13      148.    Plaintiff ADRIAN FLORES is an individual residing in the State of California, who

14  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

15  December 31, 2008, secured by a deed of trust on his California real estate located at 12081 Henry

16  Evans Drive, Garden Grove, California 92840.  At all times material hereto, Defendants have acted as

17  Servicer or some other control capacity over processing the loan.

18      149.    Plaintiff GABRIELA FLORES is an individual residing in the State of California, who

19  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

20  December 31, 2008, secured by a deed of trust on her California real estate located at 12081 Henry

21  Evans Drive, Garden Grove, California 92840.  At all times material hereto, Defendants have acted as

22  Servicer or some other control capacity over processing the loan.

23      150.    Plaintiff SHELAH SPEIGEL is an individual residing in the State of California, who

24  borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and

25  December 31, 2008, secured by a deed of trust on her California real estate located at 17927 Los Vasos

26  Street, Fountain Valley, California 92708.  At all times material hereto, Defendants have acted as

27  Servicer or some other control capacity over processing the loan.

28

- 32 -
**COMPLAINT**

151.   Plaintiff RUDY MORGAN is an individual residing in the State of California, who borrowed money from Defendants or its subsidiaries or affiliates between January 1, 2003 and December 31, 2008, secured by a deed of trust on his California real estate located at 17927 Los Vasos Street, Fountain Valley, California 92708. At all times material hereto, Defendants have acted as Servicer or some other control capacity over processing the loan.

152.   Additional individuals have contacted counsel or their staffs pertaining to the matters complained of herein. In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall comply with the rules to add such parties to this action.

153.   Based on information now available to them, fewer than 100 plaintiffs are alleging claims in amounts that would, as to them, equal or exceed the jurisdictional amount for federal jurisdiction under 28 U.S.C. § 1332(a).

### *Defendants*

154.   Defendant WELLS FARGO BANK, N.A. ("Wells Fargo"), a national banking association, was chartered in Sioux Falls, South Dakota and, is, among other things, a mortgage lender with its primary headquarters located in San Francisco, California.

155.   Defendant WELLS FARGO HOME MORTGAGE ("WFHM") was and is a national banking association and upon information and belief with its principal place of business in Des Moines, Iowa, and which was and is doing business in the state of California.

156.   Defendant AMERICA'S SERVICING COMPANY ("ASC") was and is a national banking association and upon information and belief with its principal place of business in Des Moines, Iowa, and which was and is doing business in the state of California.

157.   Defendant WACHOVIA MORTGAGE, FSB ("WMFSB") was and is a national banking association and upon information and belief with its principal place of business in Charlotte, North Carolina, and which was and is doing business in the state of California.

**COMPLAINT**

1   158. Defendant WACHOVIA BANK, FSB, f/k/a WORLD SAVINGS BANK, FSB-TX was

2 and is a national banking association and upon information and belief with its principal place of business

3 in Charlotte, North Carolina, and which was and is doing business in the state of California.

4   159. Defendant GOLDEN WEST FINANCIAL CORPORATION ("Golden West") was and is

5 a Delaware corporation and a holding company that has as its principal asset WSB, is based in Oakland,

6 California, and which was and is doing business in the state of California.

7   160. Defendant WORLD SAVINGS BANK, FSB ("WSB") was and is a national banking

8 association which was knowingly and willingly doing business in the state of California.

9   161. Defendant WORLD SAVINGS, INC. ("WSI") was and is a California corporation which

10 was and is doing business in the state of California.

11   162. Defendant CAL-WESTERN RECONVEYANCE CORPORATION was and is a

12 California corporation, with its principal place of business in the State of California, and which was and

13 is doing business in the state of California.

14   163. At all times material hereto, Defendants operated through a common plan and scheme

15 designed to conceal the material facts set forth herein from Plaintiffs, from the California public and

16 from regulators, either directly or as successors-in-interest to other Defendants.

17   164. The concealment was completed, ratified and/or confirmed by each Defendant herein

18 directly or as a successor-in-interest for another Defendant, and each Defendant performed or has sought

19 to benefit from the tortious acts set forth herein for its own monetary gain and as a part of a common

20 plan developed and carried out with the other Defendants, or as a successor-in-interest to a Defendant

21 that did the foregoing.

22   165. Plaintiffs believe and thereon allege that the agents and co-conspirators through which

23 the named Defendants operated included, without limitation, financial institutions and other firms that

24 originated loans on behalf of Defendants.  These institutions acted at the behest and direction of

25 Defendants, or agreed to participate – knowingly or unknowingly - in the fraudulent scheme described

26 herein.

27   166. Those firms originating loans that knowingly participated in the scheme are jointly and

28 severally liable with Defendants for their acts in devising, directing, knowingly benefitting from and

- 34 -

**COMPLAINT**

1   ratifying the wrongful acts of the knowing participants.  Upon learning the true name of such knowing

2   participants, Plaintiffs may seek leave to amend this Complaint to identify such knowing participants as

3   Doe Defendants.

4       167.    For avoidance of doubt, such knowing participants include, without limitation, legal and

5   natural persons owned in whole or in part by Defendants or affiliates thereof; legal and natural persons

6   owning directly or through affiliates financial interests in Defendants; legal and natural persons directly

7   or through affiliates acting pursuant to agreements, understandings and arrangements to share in the

8   benefits of the wrongdoing alleged in this Complaint and knowingly, to at least some degree,

9   committing acts and omissions in support thereof; and legal and natural persons knowingly, to at least

10  some degree, acting in concert with Defendants.

11      168.    As to those legal and natural persons acting in concert without an express legal

12  relationship with Defendants or their affiliates, on information and belief, Defendants knowingly

13  induced and encouraged the parallel acts and omissions, created circumstances permitting and

14  authorizing the parallel acts and omissions, benefited therefrom and ratified the improper behavior,

15  becoming jointly and severally liable therefore.

16      169.    As to those legal and natural persons whose acts and omissions in support of Defendants

17  scheme were unwitting, on information and belief, Defendants knowingly induced and encouraged the

18  acts and omissions, created circumstances permitting and authorizing the parallel acts and omissions,

19  benefited therefrom and ratified the improper behavior, becoming liable therefore.

20      170.    Upon completion of sufficient discovery, if there are Plaintiffs herein whose loans were

21  originated by financial institutions that were not directly or indirectly, knowingly or otherwise a part of

22  Defendants scheme, but rather, in an unrelated transaction, the originating financial institution later

23  assigned servicing rights to Defendants, then those Plaintiffs will withdraw their loan origination claims

24  against Defendants with respect to such mortgages.

25      171.    Conversely, to the extent that certain Plaintiffs herein become aware of information that

26  provides a basis for asserting Defendants herein are liable for the origination of their loans, those

27  Plaintiffs reserve the right to seek leave of this Court to re-assert the appropriate claims herein.

28

- 35 -
**COMPLAINT**

172.   The true names and capacities of Defendants listed herein as DOES 1 through 1,000 are unknown to Plaintiffs who therefore sue these Defendants by such fictitious names. Each of the DOE Defendants was the agent of each of the other Defendants herein, named or unnamed, and thereby participated in all of the wrongdoing set forth herein. On information and belief, each such Defendant is responsible for the acts, events and concealment set forth herein and is sued for that reason. Upon learning the true names and capacities of the DOE Defendants, Plaintiffs may amend this Complaint accordingly.

173.   Plaintiffs are informed and believe, and thereon allege, that: (1) Defendants are liable for all wrongful acts of the companies which Wells Fargo acquired prior to the date thereof as the successor-in-interest to those companies; (2) Wells Fargo directly and through its subsidiaries and other agents sued herein as Does have continued the unlawful practices of the acquired companies since the dates of their acquisition, including, without limitation thereof, writing fraudulent mortgages as set forth above and concealing wrongful acts that occurred in whole or in part prior thereto, and (3) Wells Fargo and its subsidiaries are jointly and severally liable as alter egos and as a single, greater unified whole.

174.   Wells Fargo's public disclosures, as reflected in its filings with the SEC, make clear that Wells Fargo considers itself both a common enterprise operating as a greater whole and without meaningful distinctions as to its operating units. Wells Fargo holds itself out to the public as the successor to ASC, Wachovia, WSB, Golden West and its subsidiaries. As noted in 2010 Annual Report (Wells Fargo 10-K):

> On December 31, 2008, we acquired Wachovia Corporation (Wachovia) in a transaction valued at $12.5 billion to Wachovia common stockholders. Wachovia, based in Charlotte, North Carolina, was one of the nation's largest diversified financial services companies, providing a broad range of retail banking, asset and wealth management, and corporate and investment banking products and services to customers through 3,300 financial centers in 21 states from Connecticut to Florida and west to Texas and California. It also provided nationwide retail brokerage, mortgage lending and auto finance businesses.

175.   On February 28, 2007, Wachovia filed its annual report on Form 10-K for the fiscal year ending December 31, 2006 ("Wachovia 2006 10-K"). The Wachovia 2006 10-K stated "on October 1, 2006, Wachovia completed the acquisition of Golden West Financial Corporation, the parent company

1  of World Savings Bank." Golden West shareholders received 1.051 shares of Wachovia plus $18.6461

2  in cash for each Golden West share.  The total cost of acquisition was $24.3 billion.  The Company

3  reported revenues for the year of $29.95 billion, compared with revenues of $26.11 billion for fiscal year

4  2005.  Diluted earnings per share for the year were $4.63, an 11% increase over diluted earnings per

5  share for the previous year.  The 2006 10-K was the first annual or quarterly report by Wachovia

6  following the October 2006 acquisition of Golden West.

7

8                               **COMMON FACTS**

9        176.    The common facts herein include those facts set forth above in this Complaint.

10       177.    Among other improper behavior alleged herein, Defendants misled Plaintiffs by falsely

11  representing that Wachovia and WSB had strict and selective underwriting and loan origination

12  practices and a conservative lending approach that set it apart from other lenders.  Such reassurances

13  were repeated by Defendants throughout the years from at least 2003 through 2008 in order to

14  artificially support Wachovia's stock price in the midst of a weakening mortgage market.

15       178.    Wachovia is one of the nation's largest financial services providers, servicing retail,

16  brokerage and corporate customers.  Over the past few years, Wachovia enjoyed strong growth that was

17  reflected in its stock price, which peaked at $58.77 per share during the period of this Complaint, giving

18  Wachovia a market capitalization of $112 billion.

19       179.    In 2006, Wachovia acquired Golden West Financial Corp. ("Golden West"), an Oakland,

20  California- based mortgage lender owned and run notoriously by Herbert and Marion Sandler, for more

21  than $24 billion.  Golden West's main mortgage product, the Pick-A-Payment ("Pick-A-Pay")

22  mortgage, allowed borrowers to choose from multiple payment options each month.  The options were:

23  (1) full payment of interest and principal sufficient to pay down the loan in a traditional 30 year term;

24  (2) a higher payment that would pay off the loan in 15 years; (3) an interest-only payment; or (4) a

25  minimum payment that did not cover all the necessary interest, with the unpaid interest added to the loan

26  balance.

27       180.    Under the fourth option, the Pick-A-Pay mortgage resulted in "negative amortization,"

28  meaning that over time the outstanding balance can grow.

- 37 -
**COMPLAINT**

181.    One of the chief characteristics of the Golden West ARM devices was the low teaser rate that ratcheted sharply upward as interest rates increased.  These programs were marketed to unsophisticated home buyers who didn't understand the great financial risk they faced as they tried to outrun the cascade of falling values and rising monthly payments.  These loans were labeled "the Typhoid Mary of the mortgage industry" by the *New York Times*.  The Sandlers have been included in a list of "25 people to blame for the financial crisis" by *Time Magazine*.  *USA Today* described the Sandlers as "ruthless home lenders who helped destroy Wachovia Corp. and contributed to the financial decay that led to the U.S. government's $700 billion rescue plan to buy rotten mortgages."

182.    Wachovia did not merely seek to integrate Golden West operations into its business.  Instead, as noted by *Business Week*, and as confirmed by former employees whom the Plaintiffs have interviewed, "right after Wachovia bought Golden West, executives from [Golden West] took control of all mortgage lending at Wachovia." Wachovia's mortgage portfolio was dominated by Pick-A-Pay mortgages: by the end of 2007, Wachovia held $120 billion of Pick-A-Pay mortgages and $50 billion of "traditional mortgages" (Wachovia's own phrasing).  Moreover, 58% of the $120 billion Pick-A-Pay mortgage portfolio consisted of loans used to purchase properties in California; a further 10% were loans used to purchase properties in Florida.

183.    When Wachovia announced its purchase of Golden West in mid-2006, the housing bubble had already burst and housing prices, which had been appreciating, began to decline.

184.    As a result of the foregoing, investors were understandably concerned with the potential exposure of any residential lender – especially nonprime lenders.

185.    In an attempt to reassure the investing public about the stability and profitability of this huge investment in Golden West and of Wachovia's large mortgage loan portfolio, Wachovia's then-Chief Executive Officer G. Kennedy Thompson ("Thompson") and other Wachovia officers and representatives repeatedly issued reassuring but inaccurate statements about the safety and stability of Golden West's portfolio and of the Pick-A-Pay loans.

186.    Between 2003 and 2009, Defendants touted Golden West's "conservative underwriting standards" and the "superior credit quality of its mortgage portfolio."  Wachovia claimed to have implemented policies that made certain that borrowers could pay their loan obligations.  As subprime

- 38 -
**COMPLAINT**

1 | loan defaults accelerated in early 2007, Defendants claimed that Wachovia "actively managed [its]
2 | business to minimize its exposure to the subprime loan market" to the point where Wachovia did not
3 | "anticipate any meaningful potential impact to earnings with the subprime going forward."

4 |     187.    Plaintiffs believe and therefore allege that Defendants purposely targeted residents of the
5 | State of California and proceeded with callous and reckless disregard of the foreseeable consequences.
6 | Defendants' wrongful conduct was the inevitable and proximate cause in fact of the destruction of
7 | Plaintiffs' and other California residents' property values as illustrated in Business Week's "Map of
8 | Misery" shown below.  The highest concentrations of Defendants' predatory loans were focused up and
9 | down the California coast, representing a significant part of the higher-end real estate in California.
10 | Accordingly, Defendants have destroyed, or been instrumental in destroying, through their callous
11 | disregard for the rights of Plaintiffs and others similarly situated, the value of Plaintiffs' homes.

12 |     188.    As a result of the 125% cap for negative amortization at which point the loans were then
13 | recast, Defendants' Pick-A-Pay loans, effectively destroyed and used up every last bit of equity in the
14 | Plaintiffs' properties.  When these Pick-A-Pay loans were reset prematurely due to the contractual
15 | breaches by Wells Fargo described herein, homeowners, including many of the Plaintiffs, had no way
16 | out of these horrible loans except through foreclosure.  The sooner that these mortgages were foreclosed
17 | by Defendants, the sooner that Defendants could add these properties to the growing inventory of Real
18 | Estate Owned ("REO") properties.  During all relevant years including today, the number of California
19 | REO properties listed by Defendants for sale or lease on their own website is a large multiple of
20 | Defendants' REO properties in Texas, Illinois and New York and twice those in Florida.

21 |     189.    Defendants now seek to capitalize on these losses which Defendants themselves created.
22 | For example, utilizing their rights of first right of refusal at trustee sales, Defendants have purchased the
23 | properties on which they foreclosed and retain these distressed properties at a discount to the detriment
24 | of the homeowner.  These properties are being leased out to the public and are being held for sale in the
25 | Defendants' REO portfolio by their affiliate, Premiere Asset Services, awaiting the market rebound.
26 | Defendants can then avoid flooding the market with cheap fire-sale real estate and further devastate their
27 | own market values that they now wish to recoup, in contrast to the time frame when Defendants caused
28 | these declines in value.

**COMPLAINT**

1      190.    Upon information and belief, when Wells Fargo acquired Wachovia, it took a large

2  "paper loss" on their non-performing loans or mortgages, so that whatever money or benefits they later

3  obtained on these defaulted mortgages, would then be reflected as additional and new profits, like "icing

4  on the cake," and contributed to the "turnaround" in Wells Fargo's balance sheet and profits including a

5  special dividend for the quarter.  The CEO of Wells Fargo was one of the primary beneficiaries of this

6  fiscal rosiness due to his being one of Wells Fargo's largest individual shareholder at that time.



22      191.    The State of California was particularly hard hit by Defendants' fraud, where Golden

23  West did the majority of its business.  Of Wachovia's $120 billion Pick-A-Pay mortgage portfolio, more

24  than $70 billion were California mortgages (i.e., 58% of the entire portfolio).

25      192.    A staff report issued by the NY Federal Reserve Bank in 2008 revealed that Wells Fargo

26  was among the top 10 subprime loan originators and servicers.  Defendants securitized a prodigious

27  volume of subprime loans while misrepresenting the risk profile of the residential mortgage backed

28  bonds they sold to the public with materially flawed credit ratings.

- 40 -

**COMPLAINT**

193.    That same report characterized subprime borrowers as "financially unsophisticated". According to data reported pursuant to the Home Mortgage Disclosure Act, fully one-fifth of all the loans Defendants made to low and moderate income borrowers, including Plaintiffs, were high-cost refinance loans with an average interest rate of 9.8% representing close to $11 billion in lending.  Those loans, upon information and belief, went straight into the mortgage pools, securitized and sold by Defendants at great profit to investors at prices that contained, according to the Director of the enforcement unit of the SEC, "secret excessive markups" or were sold at asset valuations that were "stale" and had already been secretly marked down by Defendants and not disclosed to the purchasers.

194.    As part of the securitization of Plaintiffs' mortgages, Defendants retained for themselves the profitable mortgaging servicing activity that generated regular fees paid by the trust that held the mortgage pool regardless of the status of the loans and, meaningfully, those regular fees were paid before any distributions to investors.  According to the staff report of the NY Federal Reserve Bank, Defendants were among the top 10 subprime mortgage servicers.

195.    Plaintiffs were indispensible pawns, many of whom were "financially unsophisticated", in Defendants' pervasive misconduct in the markets.  Plaintiffs trusted Defendants.  Plaintiffs believed the public statements of Defendants about the soundness of their underwriting standards.  Plaintiffs relied upon those statements and would have acted differently had they known the truth known exclusively by Defendants.  Plaintiffs, in the formation of their contractual relationship with Defendants, would have acted differently had Defendants informed Plaintiffs that Defendants had abrogated their traditional sound underwriting standards and instead knew they were creating a super-heated price bubble they knew would burst, eviscerating the value of Plaintiffs' homes.

196.    Without limiting the foregoing, if they had known the truth, Plaintiffs would have deferred the purchase of their homes, rather than enter into borrowing relationships Defendants expected would destroy the equity invested by Plaintiffs.  Plaintiffs who refinanced with Defendants would have sold their homes to avoid the precipitous decline in value that followed, rather than enter into expensive refinancing relationships.

197.    If they knew the truth, many Plaintiffs would have refused expensive adjustable rate mortgages that would surely force them into liquidation upon reset or handcuffed by prepayment

- 41 -

**COMPLAINT**

1  penalties. Many Plaintiffs would not have accepted 100% loan to inflated-valuation stated-income loans

2  knowing that they were destined to be perpetually underwater once Defendants' fraud on the public

3  markets unraveled.

4     198.    Even financially unsophisticated subprime borrowers would have known to take a

5  different path had Defendants disclosed these material facts known only to Defendants at the time of the

6  formation of the lending relationship.

7     199.    For the substantial majority of the Plaintiffs herein, MERS claims to be the owner of the

8  trust deeds. MERS claims its process eliminates the need to file assignments in the county land records,

9  lowering costs for lenders and consumers by reducing county recording costs from real estate transfers

10  and provides a central source of information and tracking for mortgage loans.

11     200.    On information and belief, during periods relevant to the other acts complained of herein,

12  Defendants and each of them did not and persist in failing to (1) establish due diligence policies,

13  procedures and controls reasonably designed to detect and report instances of money laundering, (2)

14  establish procedures to take reasonable and practicable measures to verify the identity of those applying

15  for an account with the institution and maintain records of the information used to verify a person's

16  identity, including name, address, and other identifying information, (3) determine and report the

17  sources of funds used for the mortgages they originate and service, as well as the sources of funds used

18  to acquire any mortgages, or (4) disclose to Plaintiffs the identities, address and telephone numbers of

19  transferees of their mortgages.

20     201.    Upon completion of sufficient discovery, Plaintiffs will seek leave to amend the

21  complaint to supplement the foregoing allegations with respect to additional violations pertaining to the

22  Plaintiffs and additional patterns supporting Plaintiffs' claims herein including its claim of Unfair

23  Competition, *infra*.

24     202.    Plaintiffs have read the extensive press, litigation and government releases and based

25  thereon Plaintiffs believe and therefore allege that Defendants do not have in their possession, custody

26  or control documents demonstrating that they have an unbroken chain of title proving ownership of

27  Plaintiffs' notes and deeds of trust – or a valid power to enforce Plaintiffs' notes and deeds of trust.

28  Based thereon, Plaintiffs hereby allege that Defendants have made demand for payment on the Plaintiffs

- 42 -
**COMPLAINT**

1   with respect to Plaintiffs' properties at a time when Defendants are incapable of establishing (and do not

2   have any credible knowledge regarding) who owns the promissory notes Defendants are purportedly

3   servicing.

4

5                             ***Deception***

6       203.   Under California Civil Code § 1709 it is unlawful to willfully deceive another with intent

7   to induce him to alter his position to his injury or risk.

8       204.   Under California Civil Code § 1710, it is a "deceit" to do any one or more of the

9   following: (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be

10   true; (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for

11   believing it to be true; (3) the suppression of a fact, by one who is bound to disclose it, or who gives

12   information of other facts which are likely to mislead for want of communication of that fact; or (4) a

13   promise, made without any intention of performing it.

14       205.   Under California Civil Code § 1572, the party to a contract further engages in fraud by

15   committing "any other act fitted to deceive."

16       206.   At the time of entering into the notes and deeds of trust referenced herein with respect to

17   each Plaintiff, Defendants were bound and obligated by a duty to fully and accurately disclose the

18   following and did not do so:

19           a.    Who the true lender and mortgage-holder were:

20           b.    That to induce a Plaintiff to enter into the mortgage, Defendants caused the

21                 appraised value of Plaintiff's home to be overstated;

22           c.    That to disguise the inflated value of Plaintiff's home, Defendants were

23                 orchestrating the over-valuation of homes throughout Plaintiff's community;

24           d.    That to induce a Plaintiff to enter into a mortgage, Defendants disregarded their

25                 underwriting requirements, thereby causing Plaintiff to falsely believe that

26                 Plaintiff was financially capable of performing Plaintiff's obligations under the

27                 mortgage, when Defendants knew that was untrue;

28

e.   That Defendants' underwriting requirements were, in fact, not financially sound as their public statements suggested and that vast numbers of other California borrowers who were otherwise unqualified for mortgage lending, were being actively recruited into receiving loans they could not afford and thereby increasing demand in the housing markets;

f.   That these vast numbers of other California borrowers, supplied with home purchase money by Defendants, were artificially and dangerously inflating a housing price bubble the Defendants expected to burst when unqualified borrowers would inevitably default on their loan obligations;

g.   That Defendants not only had the right to securitize and sell Plaintiff's mortgage to third-party investors, but that they specifically planned and intended to do so as to virtually all mortgages at highly-inflated and unsustainable values;

h.   That it was necessary for Defendants to feed this unstable profit machine by recruiting and inducing yet more borrowers, including Plaintiffs, into loan agreements that could be combined with other such agreements into large pools on which Defendants could continue to sell securities to public investors and receive lucrative fees for providing loan servicing.

i.   That Defendants were inducing purchases of their loan securities by pricing the securities, as later charged by the SEC, with "secret excessive markups" or while failing to disclose that the underlying mortgage assets had been marked down by Defendants but who were making representations of "fair market value" based upon "stale prices";

j.   That there was no control over the sources and provenance of the funds used to buy these securities;

k.   That these funds would be used to fund yet more low quality lending;

l.   That as to the intended sales:

  i.   The sales would include sales to nominees who were not authorized under law at the time to own a mortgage, including, among others, MERS, which

- 44 -

**COMPLAINT**

according to its website was created by mortgage banking industry participants to be only a front or nominee to "streamline" the mortgage re-sale and securitization process;

    ii.    Plaintiff's true financial condition and the true value of Plaintiff's home and mortgage would not be disclosed to investors to whom the note and/or mortgage would be sold or used as collateral;

    iii.    Defendants intended to sell the note and mortgage together with other notes and mortgages as to which they also intended not to disclose the true financial condition of the borrowers or the true value of their homes, notes or mortgages;

    iv.    The consideration to be sought from investors would be greater than the actual value of the said notes and deeds of trust; and

    v.    The consideration to be sought from investors would be greater than the income stream that could be generated from the instruments even assuming a 0% default rate thereon.

    m.    That the notes and mortgages would thereby be used as part of a scheme by which Defendants would bilk investors by selling collateralized mortgage pools at an inflated value That, at the time they did the foregoing, Defendants knew that their conduct would cause and overheat the rapid inflation of the housing price bubble that would inevitably lead to a liquidity crisis as unqualified borrowers began to default;

    n.    That Defendants also knew the foregoing would lead to grave damage to each Plaintiff's property value and thereby result in each Plaintiff's loss of the equity in his or her home, as well as damaging each Plaintiff's credit rating and result in other costs and damages to each Plaintiff, thereby causing Plaintiffs severe financial damage;

    o.    That Defendants knew at the time of making each loan, but did not disclose to Plaintiffs, that, as a result of Defendants' practices, entire communities would

1    become "ghost-town-foreclosure-communities" after a domino effect of
2    foreclosures hit them starting first with unqualified borrowers and then extending
3    well into otherwise qualified borrowers whose ability to stay current were acutely
4    affected by the economic impact of Defendants' misconduct in California;

5    p.    That Defendants would not have documents competent to establish that they are
6          holders in due course of the notes or deeds of trust, or otherwise operating under a
7          valid power of attorney with respect thereto to support the right to enforce the
8          notes and deeds of trust against Plaintiffs property; and

9    q.    That Defendants did not properly source their funds, or report the source of their
10         funds in compliance with all requirements.

11   207.   As a direct and proximate result of Defendants' scheme described herein, Plaintiffs lost
12   their equity in their homes, their credit ratings and histories were damaged or destroyed, and Plaintiffs
13   incurred material other costs and expenses, described herein. At the same time, Defendants took from
14   Plaintiffs and other borrowers billions of dollars in interest payments and fees and generated billions of
15   dollars in profits by selling securities on their loans at inflated values and receiving fees for servicing.
16   Had Defendants met their duty to make the disclosures enumerated herein at the time of entering into the
17   loan contracts, Plaintiffs would have made different choices that would have averted the massive harm
18   caused them by Defendants' failure to disclose such material facts known exclusively to Defendants.

19   208.   Defendants cannot claim that the market would have worked its way out of the fraud,
20   because from at least 2003 they knew their plan would result in a liquidity crisis, and Defendants
21   continued to improperly pump their riskiest mortgage products even after property prices began to
22   decline. The monster had to be fed.

23   209.   Defendants knew they had covertly offered Plaintiffs and other borrowers loans at a loan-
24   to-value ratio that was unsustainable and did so without any requirement of income verification or other
25   indebtedness. Defendants knew, but concealed from Plaintiffs that they knew that Plaintiffs and other
26   borrowers would soon be unable to afford the loans once introductory discount interest rates ended, and
27   variable interest and balloon payments kicked in.

28

- 46 -
**COMPLAINT**

210.    Defendants knew that based upon income levels of Plaintiffs and vast numbers of other borrowers at the inception of their loans, that when interest payments increased and balloon payments became due, if not before, Plaintiffs and others would begin defaulting on their mortgages and would suffer grievous losses from mortgages for which they were not qualified.  Given the negative amortization in many of the loans entered into by Defendants, even without a decline in property values, few Plaintiffs would be able to refinance or sell their homes without suffering a significant loss.

211.    Defendants knew that the scale of the lending in California based on inflated and artificially inflating property values without income verification and in violation of numerous traditionally sound underwriting guidelines would lead to high percentage of defaults that would begin a cascade of widespread declines in property values, thereby putting Plaintiffs and vast numbers of other borrowers into extremis in which they would lose the equity invested in their homes and have no means of refinancing or selling other than at a complete loss, suffer the destruction of their credit worthiness and incur many other costs and damages.  That is precisely what happened to Plaintiffs herein.

212.    As part and parcel of their fraudulent scheme, Defendants also represented to multiple Plaintiffs that they would be assisted by Defendants in securing loan modifications.  As described herein, those representations were false.  Defendants knew those representations to be false when made. Such false and fraudulent representations included but were not limited to the following:

      a.    That Defendants intended to assist Plaintiffs in obtaining loan modifications;

      b.    That Defendants would provide substantial and ongoing assistance to Plaintiffs seeking to obtain loan modifications;

      c.    That it was in Defendants' best interests to assist Plaintiffs in obtaining loan modifications and for Plaintiffs to obtain those loan modification in actuality, when, in fact, it was not;

      d.    That Plaintiffs would benefit from undertaking the time, money, and resources required to undergo the loan modification process though Defendants knew that, in most cases, this was untrue;

      e.    That Defendants expected that many of the Plaintiffs would obtain loan modifications if they completed the process;

- 47 -

**COMPLAINT**

f.    That Defendants believed that many of the Plaintiffs would be successful in
obtaining loan modifications; and

g.    That Defendants were genuinely trying to comply with new laws and
governmental incentives designed to stimulate and require loan modifications.

213.    Because of new laws pertaining to loan modifications and Defendants' insistence that
they had a genuine interest in complying therewith and in keeping borrowers in their homes, Plaintiffs
reasonably relied on the representations.

### *Defendants Misled the Public – Including Plaintiffs*

214.    Defendants concealed and did not accurately or fully disclose to any Plaintiff herein any
of the foregoing facts.  Further, Defendants did not disclose or explain their scheme to Plaintiffs at any
time.  They did the foregoing with the intent to deceive Plaintiffs and the investing public.  Plaintiffs did
not know the massive scheme Defendants had devised, nor could they have known.

215.    To the contrary, Defendants affirmatively misrepresented its underwriting processes, the
value of its mortgage assets and the fundamental nature of its business model in its press releases, annual
report and securities filings, all of which were widely distributed to the public, including Plaintiffs.
Defendants intended that the public, including Plaintiffs, rely upon its misrepresentations, and they made
those misrepresentations to create false confidence in Defendants in the perpetuation of its fraud on
investors and, as a result, an additional separate fraud on Plaintiffs.

216.    Many Plaintiffs would never have done business with Defendants if Defendants had
disclosed their scheme.  Many Plaintiffs would have made different economic decisions.  Had the
Plaintiffs known the facts concealed from them by Defendants, Plaintiffs would have never entered into
bogus and predatory transactions with Defendants designed only to feed an insatiable beast of a profit
machine that would fill the coffers of Defendants and line the pockets of their executives with the
proceeds of exploiting Plaintiffs' equity investments in their primary residences.

217.    If the Plaintiffs had later learned the truth, each Plaintiff would have either: (1) not
entered into the loan transaction, (2) avoided loans with features that compounded the harm, such as
adjusted rate mortgages or mortgages with negative amortization, (3) rescinded the loan transaction

- 48 -

**COMPLAINT**

1   under applicable law, (4) refinanced the loan transaction with a reputable institution; or (5) sold their

2   properties prior to the precipitous decline in mortgage values.  Instead, each Plaintiff reasonably and

3   detrimentally relied on the deceptions of Defendants in originating their loans and forbearing from

4   exercising their rights to rescind or refinance their loans or selling their properties.

5       218.   After entering into the transactions with each Plaintiff herein as alleged herein,

6   Defendants sold the notes and deeds of trust pertaining to Plaintiffs' properties.  The sales:

7           a.   Included sales to nominees who were not authorized under law at the time to own

8               a mortgage, including, among others, MERS;

9           b.   Involved misrepresentations by Defendants to investors and concealment from

10              investors of Plaintiff's true financial condition and the true value of Plaintiff's

11              home and mortgage;

12          c.   Involved misrepresentations by Defendants to investors and concealment from

13              investors of the true financial condition of other borrowers and the true value of

14              their homes and mortgages also included in the pools;

15          d.   Were for consideration greater than the actual value of the said notes and deeds of

16              trust;

17          e.   Were for consideration greater than the income stream that could be generated

18              from the instruments even assuming a 0% default rate thereon; and

19      219.   Defendants hid from Plaintiffs that Defendants were engaged in an effort to increase

20   market share and sustain revenue generation through unprecedented expansions of its underwriting

21   guidelines, taking on ever-increasing credit risk.

22      220.   At the time Defendants induced Plaintiffs to enter into mortgages, they knew their

23   scheme would lead to a liquidity crisis and grave damage to each Plaintiff's property value and thereby

24   result in each Plaintiff's loss of the equity such Plaintiff invested in his or her house, as well as

25   damaging that Plaintiff's credit rating, thereby causing the Plaintiff additional severe financial damage

26   consisting of the foregoing damages and damages described elsewhere in this Complaint.  Defendants

27   concealed the foregoing from Plaintiffs, and California consumers and regulators.

28

- 49 -
**COMPLAINT**

221.   Based upon Defendants' positions as leading trusted financial institutions and the misleading or only partially correct public statements made by Defendants, including in their securities filings, the Plaintiffs reasonably and detrimentally relied upon the statements made by the foregoing and reasonably relied that no material information necessary to their decisions would be withheld or incompletely, inaccurately or otherwise improperly disclosed.  In so relying, the Plaintiffs were gravely damaged as described herein.  Defendants acted willfully with the intention to conceal and deceive in order to benefit therefrom at the expense of Plaintiffs.

222.   At all relevant times, Defendants falsely assured the public, including Plaintiffs, that they were primarily prime quality mortgage lenders who had avoided the excesses of their competitors.  To the contrary, affirmative misrepresentations and material omissions permeated Defendants' websites, customer and investor materials, and required securities filings and presentations.

223.   Defendants concealed and did not accurately or fully disclose to any Plaintiff herein any of the foregoing facts.  Defendants neither disclosed nor explained their schemes to Plaintiffs at any time.  They did the foregoing with the intent to deceive Plaintiffs, vast numbers of other borrowers, the investing public and regulatory agencies.

224.   Defendants affirmatively misrepresented their underwriting processes, the value of its mortgages and the fundamental nature of its business model to their investors and to Plaintiffs in their press releases, annual reports and securities filings, all of which were widely distributed to the public, including Plaintiffs.

225.   On October 1, 2006, Wachovia completed the acquisition of Golden West Financial Corporation, the parent company of WSB.  In connection therewith, Wachovia made repeated public representations about the strict standards with which Golden West had underwritten its loans, and asserted that Wachovia and Golden West had little or no exposure to subprime instruments.

226.   Defendants fraudulently classified their "liar loans" as prime loans.  Upon information and belief Plaintiff alleges that Defendants' personnel who objected to the "liar loans" were reprimanded or fired.

- 50 -

**COMPLAINT**

1    227.    Defendants made their loans through independent mortgage brokers.  Often, there were

2  no background checks, not even criminal background checks, as to either the borrowers or the mortgage

3  brokers.  Payment was by loan volume, not by loan quality.

4

5              ***Enforcement Actions Taken Against Defendants Tell the Tale***

6    228.    Some of Defendants have already been investigated and sued by various governmental

7  agencies and private parties for wrongdoing similar to the wrongful acts alleged in this Complaint.

8    229.    Wells Fargo's 2010 annual report 10-K cites ongoing actions and pending investigations:

9    **MORTGAGE FORECLOSURE DOCUMENT LITIGATION** Seven
10   purported class actions and several individual borrower actions related to
     foreclosure document practices were filed in late 2010 and in early 2011 against
11   Wells Fargo Bank, N.A. in its status as mortgage servicer.  The cases have been
     brought in state and federal courts.  Of the individual borrower cases, the majority
12   are filed in state courts in California and Ohio.  Two other class actions were filed
13   against Wells Fargo Bank, but Wells Fargo is named as a defendant as corporate
     trustee of the mortgage trust and not as a mortgage servicer.  The actions
14   generally claim that Wells Fargo submitted "fraudulent" or "untruthful" affidavits
15   or other foreclosure documents to courts to support foreclosures filed in the state.
     Specifically, plaintiffs allege that Wells Fargo signers did not have personal
16   knowledge of the facts alleged in the documents and did not verify the
     information in the documents ultimately filed with courts to foreclose.  Plaintiffs
17   attempt to state legal claims ranging from wrongful foreclosure to deceptive
     practices to fraud and seek relief ranging from cancellation of notes and
18   mortgages to money damages

19   **MORTGAGE RELATED REGULATORY INVESTIGATIONS** Several
20   government agencies are conducting investigations or examinations of various
     mortgage related practices of Wells Fargo Bank.  The investigations relate to two
21   main topics, (1) whether Wells Fargo may have violated fair lending or other laws
     and regulations relating to mortgage origination practices; and (2) whether Wells
22   Fargo's practices and procedures relating to mortgage foreclosure affidavits and
23   documents relating to the chain of title to notes and mortgage documents are
     adequate.  With regard to the investigations into foreclosure practices, it is likely
24   that one or more of the government agencies will initiate some type of
     enforcement action against Wells Fargo, which may include civil money
25   penalties.  Wells Fargo continues to provide information requested by the various
26   agencies.

27   230.    On December 21, 2010, Wells Fargo settled a lawsuit with the Attorney General of the

28  State of California over predatory lending violations stemming from WSB & Wachovia's "Pick-A-Pay"

- 51 -
**COMPLAINT**

1  loan product.  The bank agreed to $2 billion of loan modifications.  This settlement followed Pick-A-Pay

2  settlements Wells Fargo entered into with attorney generals in Arizona, Colorado, Florida, Illinois,

3  Nevada, New Jersey, Texas and Washington.

4      231.   In early 2011, Wells Fargo agreed to make $600 million of loan modifications and fund a

5  $50 million settlement fund to end a lawsuit against Wachovia Corp's mortgage unit WSB that alleged

6  misleading practices regarding the bank's adjustable-rate mortgages.

7      232.   On April 5, 2011, Wells Fargo settled charges filed by the SEC relating to many

8  allegations in herein concerning misrepresentations to investors associated with selling mortgage backed

9  securities.

10     233.   On April 13, 2011, the Comptroller of the Currency along with the Board of Governors

11  of the Federal Reserve System, the Federal Deposit Insurance Corporation, The Office of Thrift

12  Supervision and the Federal Housing Finance Agency executed a Stipulation and Consent to the

13  Issuance of a Consent Order ("Order") which resulted in a Cease and Desist Order being issued by those

14  agencies requiring that MERS and its corporate parent, MERSCORP, take "all necessary and

15  appropriate steps to remedy the deficiencies and unsafe or unsound practices" that were identified as

16  findings by the respective agencies during a systematic and in-depth review that "present financial,

17  operational, compliance, legal and reputational risks" to MERS and MERSCORP as well as to those

18  members such as Defendants who use the MERS services.

19     234.   Among the findings reported in the Cease and Desist Order were that MERS has "failed

20  to exercise appropriate oversight, management supervision and corporate governance" in order to

21  "ensure proper administration and delivery of services."  Moreover, the Order reports that the review

22  revealed that MERS has "failed to establish and maintain adequate internal controls, policies and

23  procedures, compliance risk management, and internal audit and reporting" in connection with its

24  services to Defendants.

25     235.   The 22 page Order sets out detailed action plans on a specified time-line with reporting

26  requirements intended to ensure that "at a minimum" MERS is operated "in a safe and sound manner in

27  accordance with applicable laws."

28

236.    The Order is a strong validation of this Complaint.  It reports failures of management; compliance; inadequate training, skills, abilities and experience of personnel; failures of supervision by the board of directors and senior management; and process deficiencies such as registration and tracking systems as well as data integrity.  Recognizing the liability issues such as those raised by Plaintiffs herein, the Order also insists that MERS undertake a review and make regular reports on "outstanding legal issues and pending litigation that affect the interests of MERS, MERSCORP, and Examined Members with respect to MERSCORP and MERS, and provides analysis and recommendations concerning litigation contingency reserves."

237.    Also on April 13, 2011. Defendant Wells Fargo entered into a Consent Cease and Desist Order with the Office of Comptroller of the Currency ("OCC Order").  The OCC Order recites that an examination of Wells Fargo Bank N.A. undertaken by the Board of Governors of the Federal Reserve System, FDIC, OCC, OTS and Federal Reserve found "unsafe or unsound practices" with respect to the manner in which the Bank handled various foreclosure and related activities, including that Defendant Wells Fargo Bank:

> filed or caused to be filed in state and federal courts numerous affidavits executed by its employees or employees of third-party service providers making various assertions, such as ownership of the mortgage note and mortgage, the amount of the principal and interest due, and the fees and expenses chargeable to the borrower, in which the affiant represented that the assertions in the affidavit were made based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such personal knowledge or review of the relevant books and records;

238.    Pursuant to the OCC Order, Wells Fargo Bank agreed to submit a comprehensive plan within 60 days to encompass its residential mortgage loan servicing business.  Audits will be undertaken to determine whether homeowners were improperly foreclosed upon.

239.    OCC ordered Wells Fargo Bank to reimburse homeowners who had been improperly foreclosed upon within 45 days after submission of a required action plan.

- 53 -
**COMPLAINT**

240.    Article VII of the OCC Order requires a plan, acceptable to the OCC to "remediate all financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies identified" in the required action plan.

241.    The OCC Order resulted from an extensive interagency examination undertaken by the Federal Reserve System, FDIC, OCC and OTS, dated April 2011 (the "Interagency Review").  The Interagency Review found many of the deficiencies alleged by Plaintiffs herein, including insufficient foreclosure governance processes, inadequate controls "covering all aspects of the foreclosure process," lack of sufficient audit trails "to show how information set out in . . . affidavits . . . was linked to the servicers' internal records" and, among other weaknesses, "inadequate quality control and audit reviews to ensure compliance with legal requirements."

242.    Pursuant to Article IV of the OCC Order entitled Compliance Program, Wells Fargo Bank agreed to immediately correct its procedures, including 17 specific remediations that speak directly to the issues herein, including:

> (b) processes to ensure that all factual assertions made in pleadings, declarations, affidavits, or other sworn statements filed by or on behalf of [Wells Fargo] are accurate, complete, and reliable; and that affidavits and declarations are based on personal knowledge or a review of the [Wells Fargo]'s books and records when the affidavit or declaration so states;
>
> . . .
>
> (e) processes to ensure that [Wells Fargo] has properly documented ownership of the promissory note and mortgage (or deed of trust) under applicable state law, or is otherwise a proper party to the action (as a result of agency or other similar status) at all stages of foreclosure and bankruptcy litigation, including appropriate transfer and delivery of endorsed notes and assigned mortgages or deeds of trust at the formation of a residential mortgage-backed security, and lawful and verifiable endorsement and successive assignment of the note and mortgage or deed of trust to reflect all changes of ownership;
>
> . . .
>
> (i) processes to ensure that [Wells Fargo] has the ability to locate and secure all documents, including the original promissory notes if required, necessary to perform mortgage servicing, foreclosure and Loss Mitigation, or loan modification functions. . . .

- 54 -

**COMPLAINT**

243.   The OCC also found that Wells Fargo Bank had "litigated foreclosure proceeding and initiated non-judicial foreclosure proceedings" without properly endorsed or assigned documents or in the "possession of the appropriate party at the appropriate time".

244.   Echoing all of the claims and assertions of Plaintiffs herein, the OCC' concluded in the Consent Decree that Defendant Wells Fargo Bank "engaged in unsafe or unsound banking practices."

245.   In the Order, Defendant Wells Fargo Bank has been made subject to over 20 pages of severe proscriptions and requirements by the OCC, including a requirement that within 45 days, Defendant Wells Fargo Bank must:

> "[S]ubmit to the Regional Director an acceptable plan to remediate all financial injury to borrowers caused by any errors, misrepresentations, or other deficiencies identified in the Foreclosure Report, by:
>
> (a) reimbursing or otherwise appropriately remediating borrowers for impermissible or excessive penalties, fees or expenses, or for other financial injury identified in accordance with this Order; and
>
> (b) taking appropriate steps to remediate any foreclosure sale identified in the Foreclosure Report where the foreclosure was not authorized as described in this Order."

246.   The MERS Order, OCC Order and Interagency Review underscore the grave weaknesses in Wells Fargo Bank's processes and procedures, the regulators' serious concerns with the sworn statements of the employees of Wells Fargo Bank and the employees of third party service providers and the regulators' belief that pervasive failures are leading to wrongful foreclosures.

247.   Continuing governmental investigations, and settlements arising from such investigation, are constantly providing additional facts and evidence regarding the Defendants' activities. For example, as recently as on or about July 20, 2011, an article appeared in the HuffPost Business edition, appearing at www.huffingtonpost.com, entitled "Wells Fargo Illegally Pushed Borrowers Into Subprime Mortgages, Falsified Loan Documents, Fed Says," which stated that Wells Fargo had agreed to pay $ 85 million to settle civil claims, while concurrently making a $3.9 billion profit for that quarter alone. "Perhaps more than 10,000 Wells Fargo borrowers were inappropriately steered into more expensive subprime mortgages or had their loan documents falsified by bank personnel, the Federal Reserve said..." The Federal Reserve said this is the "the first formal enforcement action taken by a federal bank

1  regulator against allegations that banks steered borrowers into high-cost, subprime loans." Id.

2  "Confidential audits by the Department of Housing and Urban Development's inspector general accuse

3  the bank of defrauding taxpayers in their handling of foreclosures on homes purchased with

4  government-backed loans." Further, "in a multi-year investigation, regulators found that Wells Fargo

5  employees altered or falsified borrowers' loan documents, inflating their incomes in order to qualify

6  them for loans," and that "[t]he banks internal accountability measures were inadequate to detect and

7  prevent such abuses...". Id. The Federal Reserve describes in detail how Wells Fargo employees were

8  motivated to engage in fraudulent and illegal steering practices of this nature in order to hit their loan

9  targets and receive bonuses. "Borrowers who otherwise would have qualified for lower-interest

10  mortgages weren't told so, nor were they told that it was 'generally more advantageous for the

11  salesperson to sell a nonprime, rather than a prime, loan' the Fed said." "Such practices broke federal

12  consumer protection rules, as well as numerous state laws governing fraud and unfair or deceptive trade

13  practices, the Fed said." Id.

14       248.    Based upon the foregoing, Plaintiffs believe and thereon allege the same facts as set forth

15  in the foregoing Orders, Interagency Review and Federal Reserve investigations and findings, and in the

16  results of other investigations and audits.

17

18       ***Defendants Enforce Notes and Mortgages without Evidence of a Right to Do So***

19       249.    Securitizing a loan generally entails the sale of a loan to private investors, or what

20  Defendants call a variable interest entity together with other loans, in a "pool" of loans.  Indeed, as

21  typically executed, a securitization process may result in up to three successive sales of the loan or

22  interests in the loan.  These interests in the same loan are sold in tranches that can be found in many

23  collateralized debt obligation securities.  As a result, the ultimate note holders are many, disparate and

24  unrelated entities, no one of which can lawfully enforce the note without the participation of all the other

25  interest holders, unless such rights have clearly been vested in an attorney-in-fact.

26       250.    Defendants continue to demand payment and to foreclose and threaten to foreclose on

27  Plaintiffs, despite the facts that:

28

- 56 -
**COMPLAINT**

a.     Defendants have no proof that they own the notes and deeds of trust they seek to enforce;

b.     There is considerable evidence that Defendants do not own the notes and deeds of trust they enforce and seek to enforce and based thereon, Plaintiffs allege that they do not; and

c.     Whether or not they can demonstrate ownership of the requisite notes and deeds of trust, Defendants lack the legal right to enforce the foregoing because they have not complied with disclosure requirements intended to assure mortgages are funded with monies obtained lawfully.

251.     Plaintiffs believe and thereon allege that Defendants have made demand for payment on the Plaintiffs with respect to Plaintiffs' properties at a time when Defendants are incapable of establishing (and do not have any credible knowledge regarding) who owns the promissory notes Defendants are purportedly servicing. Plaintiffs believe and thereon allege that because Defendants are not the holders of Plaintiffs' notes and deeds of trust and are not operating under a valid power from the current holders of the notes and deeds of trust, Defendants may not enforce the notes or deeds of trust.

### *MERS Improperly Separates the Note and Deed of Trust*

252.     MERS is a Delaware corporation formed in 1993 by several large participants in the real estate mortgage industry. MERS has one shareholder, MERSCORP, Inc. As alleged above, MERS has not been permitted to do business in California since 2002 and all of its acts since that date are void.

253.     MERS operates an electronic registry designed to track servicing rights and the ownership of mortgages. MERS is named as the "nominee" for lenders and acts as a document custodian. When a loan is transferred among MERS members, MERS simplifies the process by avoiding the requirement to re-record liens and pay county recorder filing fees.

254.     MERS claims to be the owner of the security interest indicated by the mortgages transferred by lenders, investors and their loan servicers in the county land records. MERS claims its process eliminates the need to file assignments in the county land records which lowers costs for lenders

- 57 -
**COMPLAINT**

1  and consumers by reducing county recording revenues from real estate transfers and provides a central

2  source of information and tracking for mortgage loans.

3      255.   MERS' principal place of business is in Vienna, Virginia. Its national data center is

4  located in Plano, Texas. At present, MERS appears to serve as nominee for more than 65 million

5  mortgages based on published reports.

6      256.   Based upon published reports, including the MERS website, Plaintiffs believe and

7  thereon allege that MERS does not: (1) take applications for, underwrite or negotiate mortgage loans; (2)

8  make or originate mortgage loans to consumers; (3) extend credit to consumers; (4) service mortgage

9  loans; or (5) invest in mortgage loans.

10     257.   Nationwide, there are courts requiring banks that claim to have transferred mortgages to

11 MERS to forfeit their claim to repayment of such mortgages.

12     258.   MERS' operations undermine and eviscerate long-standing principles of real property

13 law, such as the requirement that any person who seeks to foreclose upon a parcel of real property: (1)

14 be in possession of the original note and mortgage; and (2) possess a written assignment giving it rights

15 to the payments due from the borrower pursuant to the mortgage and note.

16     259.   Many of the mortgages issued by Defendants include intentionally ambiguous provisions

17 pertaining to MERS. These standardized mortgages are crafted to allow Defendants to situationally

18 modify their positions, as demonstrated by the following language from some of the underlying

19 documents used in mortgages involving MERS:

20          a.    MERS is Mortgage Electronic Registration Systems, Inc.; (2) MERS is a separate

21               corporation that is acting solely as a nominee for Lender and Lender's successors

22               and assigns; (3) MERS is the mortgagee under this security instrument; (4) MERS

23               is organized and existing under the laws of Delaware, and has an address and

24               telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

25          b.    TRANSFER OF RIGHTS IN THE PROPERTY: This Security Instrument

26               secures to Lender: (1) the repayment of the Loan, and all renewals, extensions and

27               modifications of the Note; and (2) the performance of Borrower's covenants. For

28               this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely

- 58 -
**COMPLAINT**

1     as nominee for Lender and Lender's successors and assigns) and to the successors

2     and assigns of MERS, the following described property in the County [Type of

3     Recording Jurisdiction] of [Name of Recording Jurisdiction].

4     260.   This text cannot reconcile that the borrower simultaneously "conveys" the property: (1)

5 to MERS as nominee for Lender and Lender's successors and assigns; and (2) to MERS' own successors

6 and assigns.

7     261.   Defendants did not want to pay the fees associated with recording mortgages and they did

8 not want to be bothered with the trouble of keeping track of the originals. That is the significance of the

9 word 'Electronic' in Mortgage Electronic Registration Systems, Inc. Defendants, through this

10 sophisticated legerdemain, made over and abrogated the judicial system's long-honored requirements for

11 mortgages and foreclosures. They undermined long-established rights and sabotaged the judicial

12 process, eliminating "troublesome" documentation requirements. While conversion to electronic loan

13 documentation may eventually be implemented, it will ultimately be brought about only through duly

14 enacted legislation which includes appropriate safeguards and counterchecks.

15     262.   Upon information and belief:

16          a.   MERS is not the original lender for any of the Plaintiffs' loans;

17          b.   MERS is not the creditor, beneficiary of the underlying debt or an assignee under

18               the terms of any the Plaintiffs' promissory notes;

19          c.   MERS does not hold the original of any Plaintiff's promissory note, nor has it

20               ever held the originals of any such promissory note; and

21          d.   At all material times, MERS was unregistered and unlicensed to conduct

22               mortgage lending or any other type of real estate or loan business in the State of

23               California and has been and continues to knowingly and intentionally improperly

24               record mortgages and conduct business in California and elsewhere on a

25               systematic basis for the benefit of Defendants and other lenders;

26     263.   Following a crescendo of rulings that MERS lacks the authority to foreclose, on February

27 16, 2010, MERS issued an Announcement to "All MERS Members" advising them:

28

- 59 -
**COMPLAINT**

> MERS is planning to shortly announce a proposed amendment to Membership Rule 8. The proposed amendment will require Members to not foreclose in MERS' name. Consistent with the Membership Rules there will be a 90-day comment period on the proposed Rule. During this period we request that Members do not commence foreclosures in MERS' name.

264.   The Announcement also instructed MERS' members to cease executing assignments and other documents, except pursuant to new procedures being developed.

265.   The sale or transfer of the note is not to be confused with the granting of servicing rights, which is simply the right to collect payments on the note for a nominal servicing fee. Servicing rights may only be granted by the holder of a note or by a prior holder of the note if and to the extent that a subsequent sale of the note was made subject to the prior grant of servicing rights.

266.   Based upon published reports, other litigation and the investigations of Plaintiffs' counsel, Plaintiffs believe and thereon allege that MERS has been used by Defendants to facilitate the unlawful transfers of mortgages, unlawful pooling of mortgages and the injection into the United States banking industry of improper off-shore funds.

### *Defendants Do Not Comply with the Patriot Act*

267.   Enacted in 2001, the USA Patriot Act (Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("*Patriot Act*") is comprised of nine principal titles, including Title III: International Money Laundering Abatement and Financial Anti-Terrorism Act of 2001.

268.   In the Patriot Act, Congress found that "money laundering, and the defects in financial transparency on which money launderers rely, are critical to the financing of global terrorism and the provision of funds for terrorist attacks." Congress specifically found that "money launderers subvert legitimate financial mechanisms and banking relationships by using them as protective covering for the movement of criminal proceeds and the financing of crime and terrorism…" Title III, § 302.

269.   Congress also noted that correspondent accounts involving off-shore persons were particularly vulnerable to improper use. Title III, § 302 (8).

270.   Title III of the Patriot Act requires each financial institution that establishes, maintains, administers, or manages accounts in the United States for an individual or representative of a non-United

- 60 -
**COMPLAINT**

1 States person to establish due diligence policies, procedures and controls reasonably designed to detect

2 and report instances of money laundering through those accounts. Title III, § 312.

3     271.   Section 327 makes it more difficult for banks to merge if they lack a good track record in

4 combating money laundering. Sections 312, 213, 219 and 325 provide for forfeitures in specified

5 circumstances pertaining to terrorism and money laundering.

6     272.   Section 326 requires financial institutions to establish procedures to take reasonable and

7 practicable measures to verify the identity of those applying for an account with the institution (31

8 U.S.C. § 5318(I)(2)(A)) and maintain records of the information used to verify a person's identity,

9 including name, address, and other identifying information (31 U.S.C. § 5318(I)(2)(B)).

10     273.   These enhanced due diligence policies, procedures, and controls require that each

11 financial institution ascertain the identity of any foreign bank and the nature and extent of the ownership

12 interest of each such owner, conduct enhanced scrutiny to guard against money laundering and report

13 any suspicious transactions, and ascertain whether such foreign bank provides correspondent accounts to

14 other foreign banks. Title 3, § 312. The Patriot Act, therefore, places an affirmative burden on United

15 States banks to ascertain the identity and nature of the individuals and the sources of the monies it

16 receives from foreign banks or individuals.

17     274.   Plaintiffs are informed and believe that a significant number of Defendants' mortgages

18 were transferred to foreign banks.

19     275.   To comply with the Patriot Act, Defendants must determine and report the sources of

20 funds used for the mortgages they originate and service, as well as the source of funds used to acquire

21 any mortgages. Wells Fargo's acquisition of Wachovia Bank also was subject to the Patriot Act.

22     276.   Defendants bundled and resold Plaintiffs' mortgages, without any accountability or

23 notices, as well as the transfer off-shore of records pertaining to the foregoing. This scenario is

24 precisely what Congress sought to prevent in enacting the Patriot Act. Anonymous owners may have

25 used these multiple transactions to launder money, further criminal activity, or even fund terrorist

26 operations.

27     277.   Defendants perpetrated their massive fraud knowing it would result in a crash, including

28 a wave of foreclosures. To the extent non U.S. persons have acquired the mortgages (and can be

identified), Plaintiffs' homes could be foreclosed upon by transferees, including persons engaged in activities intended to be quarantined by the Patriot Act.

278.　Pursuant to Title III, §319, when an act or omission of a bank results in property being transferred, sold to, or deposited with a third party or placed beyond jurisdiction of the Court, such property is subject to forfeiture.

279.　On information and belief, contrary to the Patriot Act, Defendants did not: (1) establish due diligence policies, procedures and controls reasonably designed to detect and report instances of money laundering, (2) establish procedures to take reasonable and practicable measures to verify the identity of those applying for an account and maintain records of the information used to verify a person's identity, including name, address, and other identifying information, (3) determine and report the sources of funds used for the mortgages they originate and service, as well as the source of funds used to acquire any mortgages, or (4) disclose to Plaintiffs the identities, address and telephone numbers of transferees of their mortgages.

280.　As a consequence of the foregoing, Defendants may be liable for a forfeiture of any loans or interests in Plaintiffs' homes, and/or other appropriate relief.

281.　This Complaint does not allege a cause of action for breach of the Patriot Act.  Rather, Defendants actions and omissions are relevant to the causes of action alleged herein for the following reasons: (1) such actions and omissions and the potential consequences thereof were concealed from Plaintiffs, (2) such actions and omissions are relevant to determining the availability of punitive damages, and (3) such actions and omissions are relevant to assessing whether there is liability under the California Unfair Competition Law which is the basis for the seventh cause of action herein.

### ***Defendants Do Not Comply with TILA***

282.　Effective May 20, 2009, pursuant to an amendment to the Federal Truth in Lending Act ("TILA"), transferors of mortgage loans must disclose to the mortgagee the identify of any transferees. The notice must include the identity, address and telephone number of the new creditor; the date of the transfer; how to reach an agent or party having authority to act on behalf of the new creditor; the

1  location of the place where transfer of ownership of the debt is recorded; and any other relevant

2  information regarding the new creditor.

3       283.    Section 404. of TILA, NOTIFICATION OF SALE OR TRANSFER OF MORTGAGE

4  LOANS, provides:

5      (a) IN GENERAL.—Section 131 of the Truth in Lending Act (15 U.S.C. 1641) is
6      amended by adding at the end the following:

7      (g) NOTICE OF NEW CREDITOR.—

8      (1) IN GENERAL.—In addition to other disclosures required by this title, not later than
    30 days after the date on which a mortgage loan is sold or otherwise transferred or
9      assigned to a third party, the creditor that is the new owner or assignee of the debt shall
    notify the borrower in writing of such transfer, including—

10      (A) the identity, address, telephone number of the new creditor;

11      (B) the date of transfer;

12      (C) how to reach an agent or party having authority to act on behalf of the new creditor;

13      (D) the location of the place where transfer of ownership of the debt is recorded; and

14      (E) any other relevant information regarding the new creditor.

15      (2) DEFINITION.—As used in this subsection, the term 'mortgage loan' means any
    consumer credit transaction that is secured by the principal dwelling of a consumer.''.

16      (b) PRIVATE RIGHT OF ACTION.—Section 130(a) of the Truth in Lending Act (15
17      U.S.C. 1640(a)) is amended by inserting ''subsection (f) or (g) of section 131,'' after
    ''section 125,''.

18      284.    The amendment above was signed into law as part of the Helping Families Save Their
19  Homes Act of 2009, with immediate effect from the President's signature.

20      285.    The purpose of the amendment is to ensure that homeowners know who owns their
21  mortgages and to prevent lenders from standing behind nominees.  The requirement for "any other
22  relevant information" is particularly strong, underscoring the strong Congressional intent for complete
23  disclosure.  Using MERS to foreclose may in and of itself violate 15 U.S.C. § 1641.

24      286.    The Board of Governors of the Federal Reserve System (the "Board") promulgated an
25  interim final rule (the "Interim Final Rule"). The Interim Final Rule amends Regulation Z by
26  implementing Section 131(g) of TILA.  With respect to the content of the notices, the Interim Final Rule
27  provides, among other things:

28

**COMPLAINT**

a.   The party identified as the owner of a mortgage loan must be the actual owner, regardless of whether another person has been appointed as agent or servicer of the owner;

b.   If there are multiple "covered persons" with respect to a mortgage loan, identifying information must be provided for each covered person; however, only one notice is to be given, and the covered persons must determine among themselves which one of them will deliver the notices ("covered persons" means, generally, creditors);

c.   The date of acquisition of a mortgage loan is the date of acquisition recognized in the books and records of the covered person;

d.   The notice must identify the persons who are authorized to receive legal notices on behalf of the covered person and to resolve issues concerning the mortgagor's payments on the mortgage loan; if there are multiple agents performing these functions, the scope of authority for each agent must be specified.

287.   Remedies for TILA violations include rescission, damages and equitable relief.  15 U.S.C. §§ 1635 – 1640.

288.   This Complaint does not allege a cause of action for breach of TILA. Rather, Defendants actions and omissions are relevant to the causes of action alleged herein for the following reasons: (1) such actions and omissions and the potential consequences thereof were concealed from Plaintiffs, (2) such actions and omissions are relevant to determining the availability of punitive damages, and (3) such actions and omissions are relevant to assessing whether there is liability under the California Unfair Competition Law which is the basis for the seventh cause of action herein.

289.   For avoidance of any doubt, this Complaint asserts no causes of action under Federal law. All references to Federal laws violated by Defendants are set forth either for informational purposes or as predicate violations with respect to the Fourth Cause of Action and then only to the extent that such assertion does not give rise to a federal question sufficient to permit removal.  Any allegation herein that might permit removal to federal court shall be deemed stricken or otherwise modified such that it does not permit removal to federal court.

- 64 -

**COMPLAINT**

## FIRST CAUSE OF ACTION

**(By All Plaintiffs – Fraudulent Concealment, Violation of Civ. Code §§ 1572, 1709 and 1710 – Against All Defendants)**

290.    The preceding paragraphs and subsequent causes of action are hereby incorporated by reference as though fully set forth herein.

291.    Defendants had exclusive knowledge, not accessible to Plaintiffs, of material facts pertaining to Defendants' mortgage lending activities that it did not disclose to Plaintiffs at the time they were entering into contracts with Plaintiffs. As a result of entering into contracts with Plaintiffs and as a result of the partial disclosure of some facts and the suppression of other material facts, Defendants owed Plaintiffs a duty to disclose such material facts that bore upon the relationship. Moreover, such material facts were exclusively known by Defendants and could not have been known by Plaintiffs. As more fully alleged herein, these facts included false appraisals that artificially inflated housing values, departures from Defendants' publicly stated underwriting guidelines, their intent to sell Plaintiffs' mortgages above their actual values to bilk investors, Defendants' need to write ever-increasing volumes of loans to expanding categories of unqualified borrowers in order to feed them into their mortgage pools for sale and their knowledge that the scheme would precipitously inflate housing prices which would ultimately result in a liquidity crisis caused by waves of predictable defaults that would gravely damage Plaintiffs.

292.    Further, in connection with entering into contracts with Plaintiffs, Defendants made partial (though materially misleading) statements and other disclosures as to their prominence and underwriting standards in the public releases, on their web site, in their literature and at their branch offices. However, Defendants suppressed material facts relating thereto as set forth above. Defendants knew that the mortgages would be pooled, and securitized for sale.

293.    Defendants also knew that within a foreseeable period, their investors would discover that their borrowers could not afford their loans and the result would be foreclosures and economic devastation. It was the movie *The Sting* in real life, with real lives and with people, including Plaintiffs, whose homes were often their only asset.

**COMPLAINT**

294.    Defendants expected that the deteriorating quality of the loans that Defendants were writing, and the poor performance over time of those loans, would ultimately curtail Defendants ability to sell those loans in the secondary mortgage market. Despite their awareness of and concerns about the increasing risk Defendants were undertaking and the virtual certainty of the outcome, they hid these risks and the outcome from Plaintiffs, other borrowers, potential borrowers, and investors.

295.    Defendants misled the Plaintiffs, borrowers, potential borrowers and investors by failing to disclose substantial negative information regarding Defendants' loan products, including:

a.    The increasingly lax underwriting guidelines used by Defendants in originating loans;

b.    Defendants' pursuit of a matching strategy in which it matched the terms of any loan being offered in the market, even loans offered by primarily subprime originators;

c.    The high percentage of loans it originated that were outside its own already widened underwriting guidelines due to loans made as exceptions to guidelines;

d.    Defendants' definition of "prime" loans included loans made to borrowers with FICO scores well below any industry standard definition of prime credit quality;

e.    The high percentage of Defendants' subprime originations that had a loan to value ratio of 100%;

f.    Defendants' subprime loans had significant additional risk factors, beyond the subprime credit history of the borrower, associated with increased default rates, including reduced documentation, stated income, piggyback second liens, and LTVs in excess of 95%.; and

g.    Defendants' expectation that a very large percentage of borrowers categorized as subprime would default upon the reset of their interest rates in the adjustable rate loan products.

296.    Defendants knew this negative information from numerous reports they regularly received from and prepared for regulators as well as presentations prepared by Defendants' risk

- 66 -
**COMPLAINT**

1   assessment officers.  Defendants nevertheless concealed this negative information from the public,

2   including Plaintiffs to whom Defendants had a duty to disclose it.

3        297.   Defendants did not just make misrepresentations and conceal material facts from

4   investors.  First, each of the foregoing misrepresentations was made in public documents or forums

5   given wide communication to the public, including Plaintiffs herein.  Second, the identical affirmative

6   misrepresentations and concealment pertained to the Plaintiffs, and other borrowers.  Defendants had to

7   perpetuate their lies by affirmative misrepresentations and by concealing the truth from Plaintiffs and

8   other borrowers because to do otherwise would mean: (1) immediate wash-back into their investor fraud

9   since Plaintiffs and other borrowers are part of the investor public receiving all other investor

10  communications, and (2) decapitation of the source of the supply of mortgages needed for the scheme.

11       298.   The concealment from borrowers was absolutely essential because Defendants knew they

12  would soon be delivering Plaintiffs' notes and deeds of trust to investors and their representatives at

13  intentionally inflated values as assets in Defendants' fraudulent securities.

14       299.   Plaintiffs did not know the concealed facts.

15       300.   Defendants intended to deceive Plaintiffs.  As described herein, that deception was

16  essential to their overall plan to bilk investors.  Defendants were among the nation's leading providers of

17  mortgages.  They were highly regarded and by dint of their campaign of deception through securities

18  filings, press releases, web site and branch offices, Defendants had acquired a reputation for

19  performance and quality underwriting.  As a result, Plaintiffs reasonably relied upon the deception of

20  Defendants.

21       301.   As a proximate result of the foregoing concealment by Defendants as fully described

22  herein, California property values have precipitously declined and continue to decline, gravely damaging

23  Plaintiffs by materially reducing the value of their primary residences, depriving them of access to

24  equity lines, second mortgages and other financings previously available based upon ownership of a

25  primary residence in California, in numerous instances leading to payments in excess of the value of

26  their properties, thereby resulting in payments with no consideration and often subjecting them to

27  reduced credit scores (increasing credit card and other borrowing costs) and reduced credit availability.

28  Had Defendants made the requisite disclosures, Plaintiffs would have taken different steps, made

- 67 -
**COMPLAINT**

1   alternate financial decisions and protected themselves from harm caused by Defendants' wrongful

2   conduct.

3       302.    Without limiting the damages as described elsewhere in this Complaint, Plaintiffs

4   damages arising from this Cause of Action also include loss of equity in their houses, costs and expenses

5   related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit,

6   reduced availability of goods and services tied to credit ratings, increased costs of those services, as well

7   as fees and costs, including, without limitation, attorneys' fees and costs.

8       303.    By not disclosing the truth of their Pick-A-Pay loans, lax lending standards, deficient

9   loan portfolio, shaky secondary market collateralized securities, and overall scheme to its borrowers,

10   Defendants not only made them unwitting accomplices, but put them into a no-win situation in which

11   the price of taking a mortgage from Defendants would be -- and has been -- cascading defaults and

12   foreclosures that have wiped out billions of dollars in equity value, including the equity invested in their

13   homes by Plaintiffs. Cascading foreclosures in entire cities and counties in California has led to

14   unemployment and economic turmoil. As a result of the foregoing, Plaintiffs' damages herein are

15   exacerbated by a continuing decline in residential property values and further erosion of their credit

16   worthiness.

17       304.    All Plaintiffs have been damaged by the foregoing. Defendants' concealments are

18   substantial factors in causing the harm to Plaintiffs described in this Complaint.

19       305.    Defendants acted outrageously and persistently with actual malice in performing the acts

20   alleged herein and continue to do so. Accordingly, Plaintiffs are entitled to exemplary and punitive

21   damages in a sum according to proof and to such other relief as is set forth below in the section

22   captioned Prayer for Relief which is by this reference incorporated herein.

23

24   **SECOND CAUSE OF ACTION**

25   *(By All Plaintiffs – Intentional Misrepresentation, Violation of Civ. Code §§ 1572, 1709 and 1710 –*

26   *Against All Defendants)*

27       306.    The preceding paragraphs and subsequent causes of action are hereby incorporated by

28   reference as though fully set forth herein.

- 68 -
**COMPLAINT**

307. From 2003 through 2008, Defendants misled the public, including Plaintiffs, including by falsely assuring them that Defendants were primarily a prime quality mortgage lender which had avoided the excesses of its competitors. Affirmative misrepresentations and material omissions permeated Defendants' website, customer and investor materials, required securities filings and presentations.

308. Defendants pursued unprecedented expansion by, among other things, aggressively making loans which were unsupported by documentation, pushed through impotent loan committees, and taken by unworthy borrowers who were destined to be unable to repay the loans at the time the loans were made, as Defendants, but not Plaintiffs, were aware.

309. Defendants never made any disclosures to Plaintiffs about the unprecedented expansion of its underwriting guidelines. Instead, Defendants made public statements from 2003 through 2008 that were intended to mislead Plaintiffs about the increasingly aggressive underwriting at Defendants and the financial consequences of those widened underwriting guidelines.

310. Defendants undertook and saddled Plaintiffs with increasing amounts of credit risk, such as (1) reduced and/or no documentation loans; (2) stated income loans; or (3) loans with loan to value or combined loan to value ratios of 95% and higher. Finally, Defendants did not disclose that their riskiest loan product, the Pick-A-Pay ARM, was falsely classified as a prime loan.

311. Defendants repeatedly – and falsely – emphasized the quality of their residential mortgage quality in public statements from 2003 through 2008. The 2005 Golden West Annual Report misleadingly asserted:

> "Golden West's 2005 story also includes several other significant accomplishments. Loan Quality measures continued to be excellent: The ratio of non-performing assets and troubled debt restructured to total assets fell to a nominal .31%, down from an already low .33% at December 31, 2004, and we recoded virtually no losses for the eighth year in a row."

312. The foregoing misrepresentations were made with the intention that Plaintiffs rely thereon. It was important to Defendants that Plaintiffs rely on their misrepresentations so that Plaintiffs would come to a false understanding as to the nature of Defendants' business.

**COMPLAINT**

313.    The foregoing misrepresentations were specifically intended to convince Plaintiffs to take mortgages from Defendants.

314.    The campaign of misinformation succeeded.  Plaintiffs relied upon the misrepresentations and entered into mortgages with Defendants.

315.    By reason of the prominence of Defendants, the campaign of deception as to its business plans and the relationship of trust developed between Defendants and each of the Plaintiffs, Plaintiffs were justified in relying upon Defendants' representations.

316.    As a result of relying upon the foregoing misrepresentations, each Plaintiff entered into a loan contract and deed of trust with Defendants.

317.    In fact, the Plaintiffs were set up to fail.  Defendants did not utilize quality underwriting processes.  Defendants' financial condition was not sound, but was a house of cards ready to collapse, as Defendants well knew, but Plaintiffs did not.  Further, Plaintiffs' mortgages were not refinanced with fixed rate mortgages and Defendants never intended that they would be, despite assurances to Plaintiffs that they could and would be refinanced later.

318.    As a result of the scheme described herein, Plaintiffs could not afford the mortgages when the variable rate features and/or balloon payments kicked in.

319.    Further, as a result of the scheme, Plaintiffs could not refinance or sell their residence without suffering a loss of their equity investments.

320.    As a result of the foregoing, Plaintiffs have lost all or a substantial portion of the equity invested in their houses and suffered reduced credit ratings and increased borrowing costs, among other damages described herein.

321.    Defendants seek to enforce the loans and mortgages irrespective of this massive fraud.

322.    Defendants can have no more rights to enforce the loans and deeds of trust than their predecessors.

323.    Plaintiffs' reliance on the misrepresentations of Defendants and appraisers, directed and ratified by Defendants, was a substantial factor in causing Plaintiffs' harm.

324.    By Defendants' tactics, including falsely offering loan modifications which they never intended to approve, and otherwise delaying Plaintiffs from pursuing their rights and by increasing

- 70 -
**COMPLAINT**

1  Plaintiffs' costs and the continuing erosion of each Plaintiff's credit rating, each Plaintiff's reliance

2  harmed that Plaintiff, further eroding home values.

3       325.   Without limiting the damages as described elsewhere in this Complaint, Plaintiffs

4  damages arising from the matters complained of in this Cause of Action also include loss of equity in

5  their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of

6  credit, increased costs of credit, reduced availability of goods and services tied to credit ratings,

7  increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees

8  and costs.

9       326.   Plaintiffs' reliance on the representations made by Defendants was a substantial factor in

10  causing Plaintiffs' harm.

11       327.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further

12  relief as is set forth below in the section captioned Prayer for Relief which is by this reference

13  incorporated herein.

14

15  **THIRD CAUSE OF ACTION**

16  *(By All Plaintiffs – Negligent Misrepresentation, Violation of Civ. Code §§ 1572, 1709 and 1710 –*

17  *Against All Defendants)*

18       328.   The preceding paragraphs and subsequent causes of action are hereby incorporated by

19  reference as though fully set forth herein.

20       329.   Although Defendants, in the alternative to knowing their representations to be false, may

21  have reasonably believed that some or all of the representations they made, described in this Complaint,

22  were true, none of them had reasonable grounds for believing such representations to be true at the time:

23  (1) the representations were instructed to be made, as to those Defendants instructing others to make

24  representations, or (2) at the time the representations were made, as to those Defendants making

25  representations and those Defendants instructing others to make the representations, or (3) at the time

26  the representations were otherwise ratified by Defendants.

27       330.   Such representations, fully set forth in the Second Cause of Action and previous sections

28  of this Complaint, were not true.

- 71 -

**COMPLAINT**

1    331.   Defendants intended that Plaintiffs rely upon those misrepresentations.

2    332.   As described herein, Plaintiffs reasonably relied on those representations.

3    333.   By reason of the prominence of Defendants and the campaign of deception as to its

4  business plans and the relationship of trust developed between Defendants and Plaintiffs, Plaintiffs were

5  justified in relying upon Defendants' representations.

6    334.   As a result of relying upon the foregoing misrepresentations, each Plaintiff entered into a

7  mortgage contract with Defendants.

8    335.   As a result of the scheme described herein, each Plaintiff could not afford his or her

9  mortgage when its variable rate features and/or balloon payments kicked in.  Further, as a result of

10  Defendants' continuing scheme, each Plaintiff could not refinance or sell his or her residence without

11  suffering a loss of Plaintiff's equity.

12    336.   Without limiting the damages as described elsewhere in this Complaint, Plaintiffs

13  damages as a result of the foregoing also include loss of equity in their houses, costs and expenses

14  related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit,

15  reduced availability of goods and services tied to credit ratings, increased costs of those services, as well

16  as fees and costs, including, without limitation, attorneys' fees and costs.

17    337.   Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further

18  relief as is set forth below in the section captioned Prayer for Relief which is by this reference

19  incorporated herein.

20

21                              **FOURTH CAUSE OF ACTION**

22    *(By All Plaintiffs – Unfair Competition, Violation of Bus. & Prof. Code § 17200 et seq. – Against All*

23                              *Bank Defendants)*

24    338.   The preceding paragraphs and subsequent causes of action are hereby incorporated by

25  reference as though fully set forth herein.

26    339.   Defendants' actions in implementing and perpetrating their fraudulent scheme of

27  inducing Plaintiffs to accept mortgages for which they were not qualified based on inflated property

28  valuations and undisclosed disregard of their own underwriting standards and the sale of overpriced

- 72 -
**COMPLAINT**

1  collateralized mortgage pools, all the while knowing that the plan would crash and burn, taking the

2  Plaintiffs down and costing them the equity in their homes and other damages, violates numerous

3  statutes and common law protections enacted for consumer protection, privacy, trade disclosure, and fair

4  trade and commerce.

5      340.    Defendants perpetrated their fraudulent scheme of selling off overpriced loans by making

6  willful and inaccurate credit disclosures regarding Defendants' borrowers, including Plaintiffs, to third

7  parties.  This false credit disclosure was critical to the success of Defendants' continued sales of their

8  securities on massive pools of mortgage loans including those of Plaintiffs necessary to perpetuate the

9  scheme.  Defendants were aware that if the true credit profiles of the borrowers and the values of their

10  real estate were accurately disclosed, the massive fraudulent scheme would end.  As a result, Defendants

11  repeated, reinforced and embellished their false disclosures.

12      341.    Defendants knew the borrowers' credit was inadequate to support continued loan

13  payments, absent unsustainable inflation of property values.  These pervasive false credit disclosures to

14  third parties (including purchasers of bundled mortgage pools created by Defendants) constituted false

15  credit reports in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* and these

16  pervasive false disclosures permitted Defendants to continue their scheme and victimize the Plaintiffs

17

18      342.    These pervasive false disclosures also caused the bubble to burst. Once it became known

19  that some of the information provided by Defendants was false, the market for the sale of bundled loans

20  dried up. Defendants began to issue foreclosure notices, property values began dropping, and then, under

21  the weight of *deflation* in a market that requires *inflation*, the equity investments made by Plaintiffs and

22  others in their homes was lost . . . and then Plaintiffs were lost in the greatest economic recession since

23  the 1930s.

24      343.    As alleged by the SEC, this fraud also violated Federal law, including, without limitation,

25  the antifraud provisions and insider provisions of the Securities Act of 1933 ("*Securities Act*") and the

26  Securities Exchange Act of 1935 ("*Exchange Act*"), including, without limitation:

27

28

**COMPLAINT**

a.   Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), by engaging conduct which acted as a fraud on the purchaser of securities based on collateralized mortgage pools;

b.   Section 10(b) of the Securities Act and Rule 10b-5 thereunder, 15 U.S.C. § 78j(b) and 17 C.F.R. 240.10b-5, by making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading and/or otherwise engaging in acts, practices, or courses of business which operated as a fraud or deceit upon purchasers of securities based on collateralized mortgage pools; and

c.   Section 13(a) of the Securities Exchange Act and Rules 12b-20, 13a-1 and 13a-3 thereunder, 15 U.S.C. § 78t(e) by filing with the SEC false information for the fiscal years 2005 through 2007.

344.   The foregoing violations were in furtherance of the fraud perpetrated on Plaintiffs.  In fact, Defendants could not have told the truth in their public filings without that truth becoming known to Plaintiffs.  Conversely, the false filings gave additional credence and support to omissions, concealment, promises and inducements.

345.   Defendants violated Cal. Civil Code § 2924 et seq. by wrongfully foreclosing on certain Plaintiffs.

346.   Defendants violated the Patriot Act by failing to:

a.   Adequately identify the source of funds used to fund mortgages and fund the securitization pools that purchased mortgages.

b.   Adopt procedures required thereunder as to the sources of funds and record-keeping pertaining thereto.

c.   Timely and accurately provide the disclosures required under the Patriot Act pertaining to its sources of funds, thereby depriving Plaintiffs and others of information pertaining possibly money laundering.

- 74 -
**COMPLAINT**

347.   In furtherance of these activities, Defendants published advertising that false conveyed that Defendants were issuing prime loans, were financially sound and were acting in the best interests of borrowers, when in fact their mortgage program was based upon the creation of product for fraudulent sale in collateralized mortgage pools.

348.   The forgoing fraudulent concealment, material misstatements, and the intentional violations of state and federal statutes cited herein, and the other wrongful acts of Defendants as described herein, constitute unlawful, unfair and fraudulent business acts or practices and so constitute unfair business practices within the meaning of the California Unfair Practices Act.  Cal. Bus. & Prof. Code §§ 17200, 17500.Sections 17200 *et seq.* of the California Business & Professions Code provides, in the disjunctive, for liability in the event of any such "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

349.   The violations described herein satisfy each and every prong of the Unfair Practices Act, even though violation of just one prong would be sufficient to find a violation.

350.   Defendants acts are unlawful in that they violate, among other statutory and common law, Cal. Civil Code §§ 1798.80-84, the Rosenthal Fair Debt Collection Practices Act, Cal. Civil Code §§ 1788 *et seq.*, the Fair Credit Reporting Act, the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*,the Gramm-Leach-Bliley Act, the HAMP Act, and federal laws prohibiting false and deceptive advertising, including but not limited to the Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

351.   Defendants further violated TILA by failing to provide to Plaintiffs timely and accurate notifications regarding the owners of their mortgages.

352.   Defendants violated California common law by pursuing foreclosures through mere nominees, such as MERS, and without proof that Defendants owned the notes and deeds of trust underlying their foreclosure actions.

353.   The actions described herein are unfair and patently fraudulent in that they were conducted for the sole purpose of perpetuating an unlawful and unsustainable investment scheme.

**COMPLAINT**

354.   The actions also included deceptive, untrue and misleading advertising and described herein.

355.   As a result of the actions, concealment and deceit described herein, each of the Plaintiffs has suffered material financial injury in fact, including as described elsewhere in this Complaint, but not limited to: loss of equity in their houses, costs and expenses related to protecting themselves, reduced credit scores, unavailability of credit, increased costs of credit, reduced availability of goods and services tied to credit ratings, increased costs of those services, as well as fees and costs, including, without limitation, attorneys' fees and costs.

356.   As a further result of the actions, concealment and deceit described herein, each of the Plaintiffs has lost money or property as a result of such unfair competition.

357.   California Civil Code § 2923.5 requires that each mortgagee, trustee, beneficiary, or authorized agent may not file a notice of default pursuant to California Civil Code § 2924 until 30 days after initial contact is made as required therein, or 30 days after satisfying the due diligence requirements to contact the mortgage described therein.  Defendants violated the foregoing law by causing a notice of default to be filed against certain Plaintiffs without the mandatory notice.  Defendants did not diligently endeavor to contact those Plaintiffs as required by § 2923.5(g) and Defendants thereby also violated California Civil Code §§ 2923.5 and 2924.

358.   As a result of the foregoing unlawful conduct, said Plaintiffs suffered further injury in fact by the filing of notices of default and as such the Plaintiffs suffered monetary and property loss. Such injuries and loss included diminished credit scores with a concomitant increase in borrowing costs and diminished access to credit, fees and costs, including, without limitation, attorneys' fees and costs with respect to wrongful notices of default and loss of some or all of the benefits appurtenant to the ownership and possession of real property.

359.   The foregoing unlawful activities were pervasive and violate Business and Professions Code § 17200 et seq.

360.   As a result of Defendants' unfair competition, Plaintiffs are entitled to restitution for all sums received by Defendants with respect thereto, including, without limitation, interest payments made

- 76 -
**COMPLAINT**

by Plaintiffs, fees paid to Defendants, including, without limitation, the excessive fees paid at Defendants' direction as alleged by the FTC, and premiums received upon selling the mortgages at an inflated value.

361.    Plaintiffs are also entitled to the issuance of a temporary restraining order, a preliminary injunction, and a permanent injunction restraining and enjoining Defendants from any further concealment with respect to the sale of notes and mortgages, any further violation of § 2923.5, any further violation of Article I, § 1 of the California Constitution, the California Financial Information Privacy Act, Cal. Civil Code § 1798.82, the Fair Credit Reporting Act, and the Gramm-Leach-Bliley Act, and any further disclosure or use of the Private Information, other than as intended by the Plaintiffs.

362.    Plaintiffs are entitled to such relief as is set forth in this Cause of Action and such further relief as is set forth below in the section captioned Prayer for Relief which is by this reference incorporated herein.

## FIFTH CAUSE OF ACTION

*(By Plaintiffs Cristina Magana, Rosa Courtney, Ramon Alvarez, Thomas Burns, Robin Burns, Sammie Noel, Katherine Ward, Chor Chun Ngan, Alex Calder, Ramiro Rodriguez, and Roselia Rodriguez - Wrongful Foreclosure, Violation of Cal. Civil Code § 2924 – Against All Defendants)*

363.    The preceding paragraphs and subsequent causes of action are hereby incorporated by reference as though fully set forth herein.

364.    Defendants foreclosed upon the following properties owned by the following Plaintiffs:

Cristina Magana
9226 Gainford Street
Downey, California 90240
T.S. #: 1297832-02

Rosa Courtney
3407 S. Taurus Lane
Santa Ana, CA 92704
T.S. #: 2009-9070810622

- 77 -
**COMPLAINT**

Ramon Alvarez
1100 Wilshire Blvd., #3109
Los Angeles, CA 90017
T.S. #: 2010-0169811918

Thomas & Robin Burns
545 Engman Road
Pinon Hills, CA 92372
T.S. #: 2010-0169810873

Sammie Noel
1175 Barton Peak Road
Chula Vista, CA 91913
T.S. #: 2010-0169812307

Katherine Ward
2027 Shamwood Street
West Covina, CA 91791
T.S. #: 2011-0159900562

Chor Chun Ngan
1117 Hilcrest Road
Glendora, CA 91741
T.S. #: 2009-9070802154

Alex Calder
2611 West Verdugo Avenue
Burbank, CA 91505
T.S. #: 2009-9070803397

Ramiro & Roselia Rodriguez
45930 Hopactong Street
Temecula, CA 92592
T.S. #: 2009-9070815309

365.    Because Defendants are not the holders of the notes and deeds of trust and are not operating under a valid power from the current holders of the notes and deeds of trust, Defendants did not have the right to proceed with the foregoing foreclosure.

366.    The burden of proving an assignment falls upon the party asserting rights thereunder. In an action by an assignee to enforce an assigned right the evidence must not only be sufficient to establish the fact of assignment when that fact is in issue, but the measure of sufficiency requires that the evidence of assignment be clear and positive to protect an obligor from any further claim by the primary

- 78 -

**COMPLAINT**

1  obligee.  Defendants failed to do so and improperly foreclosed by reason of lack of proof that they had

2  the right to proceed.

3      367.    Under the California Uniform Commercial Code, a negotiable instrument, such as a

4  promissory note secured by a mortgage, may only be enforced by the holder or a person with the rights

5  of a holder.  Com. Code § 3-301.  For instruments payable to an identified person, such as a lender, a

6  holder is generally recognized as the payee or one to whom the negotiable instrument has been

7  negotiated.  This requires transfer of possession and endorsement by the prior holder.  Com. Code § 3-

8  201.  Unless the parties otherwise provide, the mortgage follows the note.  Civ. Code § 2936.

9      368.    Though in California, the assignment of a note generally carries with it an assignment of

10  the mortgage (Civ. Code § 2936), it is still required in California that the <u>holder</u> of the note or a person

11  operating with authority from that holder be the foreclosing party and that the mortgage not have been

12  assigned away from that note.

13      369.    Because Defendants are not the holders of the notes and deeds of trust and are not

14  operating under a valid power from the current holders of the notes and deeds of trust, Defendants did

15  not have the right to proceed with the foregoing foreclosure.  Indeed, Defendants do not know the basis

16  upon which they obtained their alleged rights to collect money from Plaintiffs thereunder.

17      370.    Once separated from the note, the trust deed is unenforceable and of no legal value.  For

18  negotiable instruments payable to an identified person, such as a lender, a holder is generally recognized

19  as the payee or one to whom the negotiable instrument has been negotiated.  This requires transfer of

20  possession and endorsement by the prior holder.  (Com. Code § 3-201).  Unless the parties otherwise

21  provide, the mortgage follows the note.  (Civ. Code § 2936; see also *Carpenter v. Longan*, 83 U.S. 271,

22  275, (1872)).

23      371.    Civil Code § 2936 provides: "the assignment of a debt secured by mortgage carries with

24  it the security."  Defendants have no evidence that they own the notes or have any power to enforce

25  them from the rightful owners.

26      372.    As described above, there is compelling evidence that Defendants are violating TILA and

27  the Patriot Act by failing to provide required information as to the owners of the notes and deeds of trust

28

- 79 -
**COMPLAINT**

1  and the sources of funds used to provide their mortgages and/or acquire their mortgages.

2       373.    Foreclosure was wrongful for each of the following reasons, independent of any of the

3  other following reasons: (1) because Plaintiff's mortgage was obtained through concealment and/or

4  misrepresentation; (2) because Defendants do not own the note and do not have a power of attorney with

5  respect to the note; (3) because the note and deed of trust have become separated; (4) because

6  Defendants do not own the deed of trust and do not have a power of attorney with respect to the deed of

7  trust; (5) because Defendants cannot surmount their burden of demonstrating they own the note or have

8  a power of attorney with respect thereto; and (6) because Defendants cannot surmount their burden of

9  demonstrating they own the deed of trust or have a power of attorney with respect thereto.

10       374.    As a result of the foreclosure, the foreclosure sales were void because, inter alia, the

11  foreclosing party did not have the power or right to foreclosure, not just due to irregularities in the way

12  any sales were actually conducted.  Plaintiffs were dispossessed of their property and put to the expense

13  of relocating and securing an alternative place to live.  Plaintiffs were further dispossessed of the value

14  of Plaintiffs' homes and the potential appreciation thereof, and suffered other damages, including but not

15  limited to damage to their credit and reputation as a result of the wrongful foreclosures, attorneys' fees

16  and costs to set aside the wrongful foreclosures and/or seek damages resulting therefrom, moving and/or

17  storage expenses, the costs of obtaining new residences, and higher financing or rental costs due to the

18  wrongful foreclosure.

19       375.    Defendants acted outrageously and persistently with actual malice in performing the acts

20  alleged in this cause of action.  Accordingly, Plaintiff is entitled to exemplary and punitive damages in a

21  sum according to proof and to such other relief as is set forth below in the section captioned Prayer for

22  Relief which is by this reference incorporated herein.

23  

24  //

25  //

26  //

27  //

28  //

- 80 -
**COMPLAINT**

## SIXTH CAUSE OF ACTION

*(By Plaintiffs Allen Bickerstaff, Rose Bickerstaff, Stirling Hale, Michelle Hale, Robert Harrick, Geraldine Harrick, Cristina Magana, William Schraner, and Janet Schraner – Breach of Contract, Mortgage Loans (Pick-A-Pay) – Against All Defendants)*

376.    The preceding paragraphs are incorporated by reference as though fully set forth herein.

377.    Defendant WACHOVIA offered Plaintiffs a mortgage loan as purchase money for a property located in the State of California, pursuant to Plaintiffs' real estate financing contracts with defendant Wachovia.

378.    This type of loan was known as a "Pick-A-Pay" loan, because borrowers were given several options to choose from in making their monthly mortgage payments.  The options generally ranged from a below interest only payment (negative amortization) to an interest plus principal payment. But for the different options offered when the contract was entered into with each Plaintiff, Plaintiffs either would not have accepted the loan offered, or would have negotiated other terms, gone to a different lender, or paid significantly less money, including any "points" and a lower interest rate.  In fact, the flexibility to make significantly lower payments under some of the contractual options, was a primary reason why these Plaintiffs accepted this mortgage, as otherwise they could not have afforded the higher monthly payments offered under the other options.

379.    Pursuant to the terms of the mortgage loan offered to the above said Plaintiffs, Defendant WACHOVIA offered four separate "Pick-A-Pay" options to choose from when deciding what amount to pay on a monthly basis.  These options were stated to be available until the negatively amortized amount of the loan, together with the principal, reached 125% of the original loan amount.

380.    On or about the dates set forth above, Plaintiffs accepted the above offered mortgage loan, including but not limited to by executing and notarizing the mortgage loan agreement, a representative sample of which contract is attached hereto as **Exhibit "A,"** thereby creating a contract with the Defendants Wachovia (and defendant Golden West), which contract was eventually taken over by defendant Wells Fargo Bank when it acquired the other Defendants, including the obligations and duties of the original lenders.

- 81 -
**COMPLAINT**

381.   At a later date, Defendants Wachovia and Wells Fargo Bank committed a material breach of the Plaintiffs' contracts by, inter alia, failing and refusing to allow these Plaintiffs or any other borrowers to pick one of four of the specific payment options which were a material inducement for Plaintiffs to enter into the contract, and which were a material term of the contracts.  Instead, defendants Wachovia and Wells Fargo Bank notified these Plaintiffs, and made it known publicly, that those Defendants would not allow Plaintiffs to exercise at least two of the four payment options. Defendants eliminated these options, which allowed for lower payments by said Plaintiffs, even though the negatively amortized amount of the loans had not yet reached 125% of the original loan amount, which threshold was the contractual requirement before any such options for lower payments could be eliminated.

382.   When Plaintiffs selected or tried to select the disallowed payment options under their contracts, Defendants breached the contracts by refusing to permit them to do so.

383.   In fact, these Plaintiffs could only afford to make their mortgage payments by using the disallowed options which required significantly lower mortgage payments than the options which these Defendants did not disallow, which constituted a significant detriment to Plaintiffs and a significant benefit to said Defendants.

384.   Said Defendants contractual breaches caused damages to Plaintiffs as a direct and proximate result of said breaches, including by not limited to:

    a.   Taking away Plaintiffs' ability to continue to make minimum payments that included negative-amortization.

    b.   Eliminating a contractual and material benefit to Plaintiffs which was an important element in Plaintiffs' decisions to enter into these mortgage contracts.

    c.   Causing Plaintiffs' properties to enter into the foreclosure process or to be foreclosed, with the consequent loss of their equity in their properties, and substantial additional fees and costs which were added to their mortgage balances which would not otherwise have occurred, and attorneys' fees and costs to Plaintiffs due to the commencement of the foreclosure process and/or foreclosure of Plaintiffs' properties.

**COMPLAINT**

d.   Forcing Plaintiffs to make significantly higher payments, including up-front "points" or other costs, and higher interest payments for the life of the loans, than Plaintiffs would have had if the later disallowed options had been not part of the contracts and mortgage terms at the very beginning.

e.   Causing Plaintiffs to lose the ability to make the necessary payments on their loans by eliminating the options that allowed for lower payments that Plaintiffs could have afforded.

f.   Causing significant damage to Plaintiffs' credit ratings due to their inability to make the higher payments necessitated by said Defendants' breaches, thereby increasing Plaintiffs' costs of borrowings and depriving them of financing alternatives.

g.   As to any Plaintiffs who have already been foreclosed or who are foreclosed during the pendency of this lawsuit, causing further damages including moving expense, costs of disconnecting and obtaining new utility accounts, loss of reputation in the community in which they lived as a result of the public foreclosures of their residences, loss of income from the resulting disruption of their lives, and the costs incurred in connection with any replacement residences they were forced to obtain.

385.   At the time of said Defendants breaches, Plaintiffs had performed each and every condition required under the mortgage loan agreement, and substantially performed upon all promises except those excused by Defendants' breach.

386.   The reduction of payment options caused Plaintiffs loans to become unaffordable and was the proximate cause of their defaults on their mortgage payments, which in turn resulted in Defendants foreclosing upon Plaintiffs' properties or commencing the foreclosure process.

387.   This specific material breach of the original mortgage contract has devastated the said Plaintiffs' ability to pay for their mortgage loans, and has also led to thousands of foreclosures all over the country.

- 83 -
**COMPLAINT**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.      General and special damages according to proof under the First, Second, Third, Fourth, and Sixth, Causes of Action, and any other causes of action for which such relief may be available;

2.      Exemplary damages according to proof under the First, Second,  Third and Fifth Causes of Action, and any other causes of action for which such relief may be available;

3.      Statutory relief according to proof under the Fourth and Fifth Causes of Action and any other causes of action for which such relief may be available;

4.      Restitution under the Fourth Cause of Action and any other causes of action for which such relief may be available;

5.      Temporary, preliminary, and permanent injunctive relief under the Fourth Cause of Action and any other causes of action for which such relief may be available;

6.      On all causes of action, for costs of suit herein;

7.      On all causes of action, for pre- and post-judgment interest, to the fullest extent allowed by law for such causes of action;

8.      On all causes of action for which attorneys' fees may be awarded pursuant to the governing contract, by statute or otherwise, an award of reasonable attorneys' fees; and

9.      On all causes of action, for such other and further relied as this Court may deem just and proper, provided that this Complaint, including, without limitation, this prayer for relief shall be conformed to effect the Plaintiffs' averment and intention that fewer than 100 plaintiffs are alleging claims or amounts in controversy that would, as to them equal or exceed the jurisdictional amount for federal jurisdiction under 28 U.S.C. § 1332(a) and that no relief of any kind is sought under any federal statute or rule.

Dated: July 29, 2011

Respectfully submitted,
**BROOKSTONE LAW, PC**

By: _____
Vito Torchia, Jr.
Attorneys for Plaintiffs

- 84 -
**COMPLAINT**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **EXHIBIT A**

COMPLAINT

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.

LOAN NUMBER: ██████9311                    DATE: February 23, 2007

BORROWER(S): ALLEN BICKERSTAFF AND ROSE BICKERSTAFF, HUSBAND AND WIFE  sometimes called "Borrower" and sometimes simply "I" or "me."

PROPERTY ADDRESS: 15723 MARLINTON DR, WHITTIER, CA  90604-3404

**1.  BORROWER'S PROMISE TO PAY**
     In return for a loan that I have received, I promise to pay U.S. $██████, called "Principal," plus interest, to the order of the Lender. The Lender is WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES, or anyone to whom this Note is transferred.

**2.  INTEREST**
     **(A)  Interest Rate**
     Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Initially, I will pay interest at the yearly rate of 6.990%. The interest rate I will pay may change as described in this Section 2. Interest will be charged on the basis of a twelve month year and a thirty day month.

     The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

     **(B)  Interest Change Dates**
     The interest rate I will pay may change on the **15th** day of **April, 2007** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

     **(C)  Interest Rate Limit**
     My lifetime maximum interest rate limit is **11.950%**, called "Lifetime Rate Cap."

SD205A (2004-03-1)          ADJUSTABLE NOTE-ARM          CA
                                Page 1

LENDER'S USE ONLY

Exhibit A - Page 1

█████9311

**(D)   Index**
Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally-insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliate. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an Index is substituted as described in Section 2(F) of this Note, the alternative Index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)   Calculation of Interest Rate Changes**
Lender will calculate my new interest rate by adding 2.300 percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)   Alternative Index**
The Lender may choose an alternative Index to be the Index if the Index is no longer available. For purposes of this Section 2(F), the Index is not "available" if: (a) the Index is for any reason no longer published; or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative Index shall be at Lender's sole discretion. The alternative Index may be a national or regional index or another type of Index approved by the Lender's primary regulator. The Lender will give me notice of the alternative Index.

**3.  PAYMENTS .**

**(A)   Time and Place of Payments**
I will pay Principal and Interest by making payments every month.

I will make my monthly payments on the 15th day of each month beginning on **April 15, 2007 .** I will make these payments every month until I have paid (i) all the Principal and Interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **March 15, 2047,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612,** or at a different place if required by notice from the Lender.

**(B)   Amount of My Initial Monthly Payments**

Initially, each of my monthly payments will be in the amount of U.S. $ **2,147.64 .** This amount will change.

**(C)   Payment Change Dates**
My monthly payment will change as required by Section 3(D) below beginning on the 15th day of **April, 2008,** and on that day every twelfth month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**
On the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the Maturity Date. However, the amount by which my payment can be changed will not be more or less than 7-1/2% of the then existing Principal and Interest payment. This 7-1/2% limitation is called the "Payment Cap." Furthermore, my payment cannot be decreased on any Payment Change Date if there is any unpaid deferred interest. The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**(E)   Deferred Interest; Additions to My Unpaid Principal**
Because of the Payment Cap, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

9311

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed 125% of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred Interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment Is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then In effect, In substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the 5th Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mall to me a notice of any changes In the amount of my monthly payment, called "Payment Change Notice," before each Change Date. The Payment Change Notice will include Information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender falls to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as If they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due, If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred Interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (I) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (II) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be 6.000% of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

I will be in default if (I) I do not pay the full amount of each monthly payment on the date it is due; or (II) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (III) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

SD206C (2004-03-1)                      ADJUSTABLE NOTE-ARM                      CA
                                            Page 3

Exhibit A - Page 3

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **15723 MARLINTON DR, WHITTIER, CA  90604-3404**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number designated number provided on my billing statement.  I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph 26:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

<u>Acceleration of Payment of Sums Secured.</u> Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

Exhibit A - Page 4

█████9311

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii)   Lender approves the creditworthiness of the transferee in writing;

(iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

**12. GOVERNING LAW; SEVERABILITY**

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

**13. CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

**14. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.

SD205E (2004-03-1)                          ADJUSTABLE NOTE-ARM                                      CA
                                                    Page 6

Exhibit A - Page 5

SIGNATURE PAGE

9311

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)

ALLEN BICKERSTAFF

_____ (Seal)

ROSE BICKERSTAFF

6D205 (2004-03-1)          [W14 (2004-03-01)]          Page 6 of 6          CA

# COPY

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)
CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 16 2011

John A. Clarke, Executive Officer/Clerk
BY _____ Deputy
Mary Flores

**NOTICE TO DEFENDANT:**
(AVISO AL DEMANDADO): Wells Fargo Bank, N.A.;
See Attachment

**YOU ARE BEING SUED BY PLAINTIFF:**
(LO ESTÁ DEMANDANDO EL DEMANDANTE): Luis mireles,
See Attachment  an individual;

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.
   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.
   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
   *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*
   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*
   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>(El nombre y dirección de la corte es): Los Angeles Superior Court<br>111 North Hill Street, Los Angeles, California 90012<br>Stanley Mosk Courthouse | CASE NUMBER:<br>(Número del Caso): **BC 467652** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Vito Torchia Jr-Brookstone Law PC-4000 MacArthur Blvd., Ste 1110-Newport Beach CA 92660 8009468655

| | | | |
|---|---|---|---|
| DATE:<br>(Fecha) AUG 16 2011 | JOHN A. CLARKE Clerk, by<br>(Secretario) Mary Flores | , Deputy<br>(Adjunto) |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):
3. ☑ on behalf of (specify): Wells Fargo Bank, N.A., a national banking association

   under: ☑ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br> Mireles et al. v. Wells Fargo Bank, N.A., et al | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

WELLS FARGO BANK, N.A., a national banking association; WELLS FARGO HOME MORTGAGE, a national banking association; AMERICA'S SERVICING COMPANY, a national banking association; WACHOVIA MORTGAGE, FSB, a national banking association; WACHOVIA BANK, FSB, f/k/a WORLD SAVINGS BANK, FSB-TX, a national banking association; GOLDEN WEST FINANCIAL CORPORATION, a Delaware corporation; WORLD SAVINGS BANK, FSB, a national banking association; WORLD SAVINGS, INC., a California corporation; CAL-WESTERN RECONVEYANCE CORPORATION, a California corporation; and DOES 1 through 1000, inclusive,

Page __1__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-200(A) [Rev, January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mireles et al. v. Wells Fargo Bank, N.A., et al | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties (Check only one box. Use a separate page for each type of party.):

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

LUIS MIRELES, an individual; GEORGIA MIRELES, an individual; PAULA L. KAZMIERZAK, an individual; RAMON ALVAREZ, an individual; RUE ANN BARROW, an individual; KENNETH W. BASE, an individual; KATJA K. BASE, an individual; JOHN BERRIOS, an individual; NORA BERRIOS, an individual; ALLEN BICKERSTAFF, an individual; ROSE BICKERSTAFF, an individual; NASRIN CHADORBAF, an individual; ROSA COURTNEY, an individual; JEFFREY J. DAIGLE, an individual; LAURA DANLASKY, an individual; DAVID CECIL, an individual; LINDA L. FOSTER, an individual; TERRY S. KEEFER, an individual; VERONICA PADILLA, an individual; MARIA LOPEZ, an individual; CHAUNTEE MATHIS, an individual; ZOILA DELCIA MELGAR, an individual; THU HA NONG, an individual; ELVIRA R. PALAC, an individual; WILLIAM R. SCHRANER, JR., an individual; JANET SCHRANER, an individual; MARIA C. TAMAYO, an individual; JOAN WADDELL, an individual; STEVEN M. WEISS, an individual; GARY R. WOOLEVER, an individual; RICHARD WU, an individual; IVY WU, an individual; REBECCA SIERRA, an individual; SAMMIE NOEL, an individual; CRISTINA MAGANA, an individual; AARON M. DOSS, an individual; JOSE MARTIN VALDOVINOS, an individual; MELANIE VALDOVINOS, an individual; LORELI WAHL, an individual; MAGDALENA LUNA, an individual; OLGA ORGOUNOVA, an individual; FAUSTO CALLEGARINI, an individual; THOMAS BURNS, an individual; ROBIN BURNS, an individual; DAVID NYQUIST, an individual; CORINNA NYQUIST, an individual; JAMES SALO, an individual; CLAIRE SALO, an individual; MARCY F. KAPLAN, an individual; SHERYL E. BREAULT, an individual; ALLISON J. HERBERT, an individual; STIRLING HALE, an individual; MICHELLE HALE, an individual; MAMIE Y. THOMAS, an individual; ROBERT HARRICK, an individual; GERALDINE HARRICK, an individual; KATHERINE WARD, an individual; PATRICIA LOPEZ, an individual; ROGER HOUSGARD, an individual; LENA HOUSGARD, an individual; CHRISTOPHER BITNER, an individual; MARIOLA BITNER, an individual; JOSEPH LABATE, an individual; CHERYL LABATE, an individual; RICHARD ELAM, an individual; ESTHER MERKI, an individual; JOE CHAVEZ, an individual; DAVID ZAMORA, an individual; GAVIELA ZAMORA, an individual; DANIEL SPATACEAN, an individual; COSMINA R. SPATACEAN, an individual; PAMELA MEIER, an individual; PATRICIA MEIER, an individual; KATHERINE WARD, an individual; SVEN WALKER, an individual; RICHARD COUTURE, an individual; MARCELLA VILLALPANDO, an individual; RICHARD VILLALPANDO, an individual; CHOR CHUN NGAN, an individual; PATRICE THOMPSON, an individual; FAUSTO CALLEGARINI, an individual; PAUL PEASE, an individual; CYNTHIA M. PEASE, an individual; NORMA GARCIA, an individual; TE VAN NGUYEN, an individual; NATIVIDAD TERRAZAS, an individual; ALEX CALDER, an individual; DAVID OXLEY, an individual; RAMIRO RODRIGUEZ, an individual; ROSELIA RODRIGUEZ, an individual; TONY BEIZAEE, an individual; ALICE GANZON, an individual; YASUHARU KUROIWA, an individual; KAYAKO KUROIWA, an individual; JOHN CALDERONE, an individual; VIRGINIA VILLASENOR, an individual; FELIX VILLASENOR, JR. , an individual; LINDA TRAN, an individual; WAYNE WILLIAMS, an individual; SUZANNE WILLIAMS, an individual;

Page  2  of  3

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Mireles et al. v. Wells Fargo Bank, N.A., et al | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

TEERI A. PENKERT, an individual; RHONDA K. PENKERT, an individual; DOUGLAS FERNANDES, an individual; RENAN PULECIO, an individual; JEANNETTE PULECIO, an individual; ADRIAN FLORES, an individual; GABRIELA FLORES, an individual; SHELAH SPEIGEL, and individual; RUDY MORGAN, an individual,

Page 3 of 3

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**



**CORPORATION SERVICE COMPANY**

## Notice of Service of Process

S1C / ALL
**Transmittal Number: 9032453**
**Date Processed: 08/20/2011**

| | |
|---|---|
| Primary Contact: | WF West - WF Bank<br>Corporation Service Company- Wilmington, DELAWARE<br>2711 Centerville Road<br>Suite 400<br>Wilmington, DE 19808 |

| | |
|---|---|
| Entity: | Wells Fargo Bank, National Association<br>Entity ID Number  2013649 |
| Entity Served: | Wells Fargo Bank, N.A. |
| Title of Action: | Luis Mireles vs. Wells Fargo Bank, N.A. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | Los Angeles County Superior Court, California |
| Case/Reference No: | BC467652 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 08/19/2011 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Vito Torchia, Jr.<br>800-946-8655 |
| Client Requested Information: | Matter Management User Groups: [LITIGATION - GOLDBERG, MIKE] |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808  (888) 690-2882  |  sop@cscinfo.com

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State* ~~mber, and address):~~ | | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State* mber, and address):
Vito Torchia, Jr. (SBN244687)
BROOKSTONE LAW, PC
4000 MacArthur Blvd., Suite 1110
Newport Beach, California 92660

COPY

TELEPHONE NO: (800) 946-8655   FAX NO: (866) 257-6172
ATTORNEY FOR *(Name):* Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, California 90012
BRANCH NAME: Stanley Mosk Courthouse

FOR COURT USE ONLY

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

AUG 16 2011

John A. Clarke, Executive Officer/Clerk
BY _____, Deputy
Mary Flores

CASE NAME:
Mireles et al. v. Wells Fargo Bank, N.A. et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [✓] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | BC 467652 |
| | | | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [✓] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [✓] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [✓] nonmonetary; declaratory or injunctive relief   c. [✓] punitive

4. Number of causes of action *(specify):* 6: Fraudulent Concealment, Intentional Misrepresentation, etc.

5. This case [ ] is [✓] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 12, 2011

Vito Torchia, Jr.
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

INSTRUC. JNS ON HOW TO COMPLETE THE COV. SHEET                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
      or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**

COPY

| SHORT TITLE: Mireles et al. v. Wells Fargo Bank, N.A. et al. | CASE NUMBER: BC467652 |

## CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 7-10 ☐ HOURS/ ☑ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – if you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons See Step 3 Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/Property Damage/Wrongful Death Tort** Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

| SHORT TITLE: Mireles et al. v. Wells Fargo Bank, N.A. et al. | CASE NUMBER |
|---|---|

| | A<br>(Civil Case Cover Sheet<br>Category No.) | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

| SHORT TITLE: Mireles et al. v. Wells Fargo Bank, N.A. et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons<br>See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus<br>☐ A6152  Writ - Mandamus on Limited Court Case Matter<br>☐ A6153  Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☑ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment<br>☐ A6160  Abstract of Judgment<br>☐ A6107  Confession of Judgment (non-domestic relations)<br>☐ A6140  Administrative Agency Award (not unpaid taxes)<br>☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112  Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only<br>☐ A6040  Injunctive Relief Only (not domestic/harassment)<br>☐ A6011  Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment<br>☐ A6123  Workplace Harassment<br>☐ A6124  Elder/Dependent Adult Abuse Case<br>☐ A6190  Election Contest<br>☐ A6110  Petition for Change of Name<br>☐ A6170  Petition for Relief from Late Claim Law<br>☐ A6100  Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Mireles et al. v. Wells Fargo Bank, N.A. et al. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☑2. ☐3. ☐4. ☐5. ☐6. ☐7. ☑8. ☐9. ☐10. | ADDRESS: |
|---|---|
| CITY: | STATE: | ZIP CODE: |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: __August 12, 2011__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 4 of 4

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE
Case Number _____

BC 467652

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 7.3(c)). There is additional information on the reverse side of this for

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Carolyn B. Kuhl | 1 | 534 | Hon. Holly E. Kendig | 42 | 416 |
| Hon. J. Stephen Czuleger | 3 | 224 | Hon. Mel Red Recana | 45 | 529 |
| Hon. Luis A. Lavin | 13 | 630 | Hon. Debre Katz Weintraub | 47 | 507 |
| Hon. Terry A. Green | 14 | 300 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Richard Fruin | 15 | 307 | Hon. Deirde Hill | 49 | 509 |
| Hon. Rita Miller | 16 | 306 | Hon. John Shepard Wiley Jr. | 50 | 508 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Abraham Khan | 51 | 511 |
| Hon. Rex Heeseman | 19 | 311 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Kevin C. Brazile | 20 | 310 | Hon. Steven J. Kleifield | 53 | 513 |
| Hon. Zaven V. Sinanian | 23 | 315 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Mary Ann Murphy | 25 | 317 | Hon. Michael Johnson | 56 | 514 |
| Hon. James R. Dunn | 26 | 316 | Hon. Ralph W. Dau | 57 | 517 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Rolf M. Treu | 58 | 516 |
| Hon. Barbara Scheper | 30 | 400 | Hon. David L. Minning | 61 | 632 |
| Hon. Alan S. Rosenfield | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Mary H. Strobel | 32 | 406 | Hon. Kenneth R. Freeman | 64 | 601 |
| Hon. Charles F. Palmer | 33 | 409 | Hon. Mark Mooney | 68 | 617 |
| Hon. Amy D. Hogue | 34 | 408 | Hon. Ramona See | 69 | 621 |
| Hon. Daniel Buckley | 35 | 411 | Hon. Soussan G. Bruguera | 71 | 729 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Joanne O'Donnell | 37 | 413 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. William F. Fahey | 78 | 730 |
| Hon. Michael C. Solner | 39 | 415 | Hon. Emilie H. Elias* | 324 | CCW |
| Hon. Michelle R. Rosenblatt | 40 | 414 | Other | | |
| Hon. Ronald M. Sohigian | 41 | 417 | | | |

*Class Actions
All class actions are initially assigned to Judge Emilie H. Elias in Department 324 of the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005). This assignment is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the class action case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____     JOHN A. CLARKE, Executive Officer/Clerk

By _____, Deputy Clerk

NOTICE OF CASE ASSIGNMENT –
UNLIMITED CIVIL CASE

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Seven Rules, as applicable in the Central District, are summarized for your assistance.

## APPLICATION

The Chapter Seven Rules were effective January 1, 1994. They apply to all general civil cases.

## PRIORITY OVER OTHER RULES

The Chapter Seven Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

## CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

## TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

## FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

## SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Seven Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Seven Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Seven Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE
[CRC 3.221 Information about Alternative Dispute Resolution]
For additional ADR Information and forms visit the Court ADR web application at www.lasuperiorcourt.org (click on ADR).

The plaintiff shall serve a copy of this Information Package on each defendant along with the complaint (Civil only).

**What Is ADR:**
Alternative Dispute Resolution (ADR) is the term used to describe all the other options available for settling a dispute which once had to be settled in court. ADR processes, such as arbitration, mediation, neutral evaluation (NE), and settlement conferences, are less formal than a court process and provide opportunities for parties to reach an agreement using a problem-solving approach.

There are many different kinds of ADR. All of them utilize a "neutral", an impartial person, to decide the case or help the parties reach an agreement.

**Mediation:**
In mediation, a neutral person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute. The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves. Mediation leaves control of the outcome with the parties.

**Cases for Which Mediation May Be Appropriate**
Mediation may be particularly useful when parties have a dispute between or among family members, neighbors, or business partners. Mediation is also effective when emotions are getting in the way of resolution. An effective mediator can hear the parties out and help them communicate with each other in an effective and nondestructive manner.

**Cases for Which Mediation May Not Be Appropriate**
Mediation may not be effective if one of the parties is unwilling to cooperate or compromise. Mediation also may not be effective if one of the parties has a significant advantage in power over the other. Therefore, it may not be a good choice if the parties have a history of abuse or victimization.

**Arbitration:**
In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute. Arbitration is less formal than a trial, and the rules of evidence are often relaxed. Arbitration may be either "binding" or "nonbinding." Binding arbitration means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final. Nonbinding arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

**Cases for Which Arbitration May Be Appropriate**
Arbitration is best for cases where the parties want another person to decide the outcome of their dispute for them but would like to avoid the formality, time, and expense of a trial. It may also be appropriate for complex matters where the parties want a decision-maker who has training or experience in the subject matter of the dispute.

**Cases for Which Arbitration May Not Be Appropriate**
If parties want to retain control over how their dispute is resolved, arbitration, particularly binding arbitration, is not appropriate. In binding arbitration, the parties generally cannot appeal the arbitrator's award, even if it is not supported by the evidence or the law. Even in nonbinding arbitration, if a party requests a trial and does not receive a more favorable result at trial than in arbitration, there may be penalties.

**Neutral Evaluation:**
In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator." The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved. The evaluator is often an expert in the subject matter of the dispute. Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

**Cases for Which Neutral Evaluation May Be Appropriate**
Neutral evaluation may be most appropriate in cases in which there are technical issues that require special expertise to resolve or the only significant issue in the case is the amount of damages.

**Cases for Which Neutral Evaluation May Not Be Appropriate**
Neutral evaluation may not be appropriate when there are significant personal or emotional barriers to resolving the dispute.

**Settlement Conferences:**
Settlement conferences may be either mandatory or voluntary. In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute. The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. Settlement conferences are appropriate in any case where settlement is an option. Mandatory settlement conferences are often held close to the date a case is set for trial.

LAADR 005 (Rev. 05/09)
LASC Approved 10-03

## LOS ANGELES SUPERIOR COURT ADR PROGRAMS

**CIVIL:**
- Civil Action Mediation (Governed by Code of Civil Procedure (CCP) sections 1775-1775.15, California Rules of Court, rules 3.850-3.868 and 3.870-3.878, Evidence Code sections 1115-1128, and Los Angeles Superior Court Rules, chapter 12.)
- Retired Judge Settlement Conference
- Neutral Evaluation (Governed by Los Angeles Superior Court Rules, chapter 12.)
- Judicial Arbitration (Governed by Code of Civil Procedure sections 1141.10-1141.31, California Rules of Court, rules 3.810-3.830, and Los Angeles Superior Court Rules, chapter 12.)
- Eminent Domain Mediation (Governed by Code of Civil Procedure section 1250.420.)
- Civil Harassment Mediation
- Small Claims Mediation

**FAMILY LAW (non-custody):**
- Mediation
- Forensic Certified Public Accountant (CPA) Settlement Conference
- Settlement Conference
- Nonbinding Arbitration (Governed by Family Code section 2554.)

**PROBATE:**
- Mediation
- Settlement Conference

### NEUTRAL SELECTION

Parties may select a mediator, neutral evaluator, or arbitrator from the Court Party Select Panel or may hire someone privately, at their discretion. If the parties utilize the Random Select Mediation or Arbitration Panel, the parties will be assigned on a random basis the name of one neutral who meets the case criteria entered on the court's website.

### COURT ADR PANELS

| | |
|---|---|
| **Party Select Panel** | The Party Select Panel consists of mediators, neutral evaluators, and arbitrators who have achieved a specified level of experience in court-connected cases. The parties (collectively) may be charged $150.00 per hour for the first three hours of hearing time. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Random Select Panel** | The Random Select Panel consists of trained mediators, neutral evaluators, and arbitrators who have not yet gained the experience to qualify for the Party Select Panel, as well as experienced neutrals who make themselves available pro bono as a way of supporting the judicial system. It is the policy of the Court that all Random Select Panel volunteer mediators, neutral evaluators, and arbitrators provide three hours hearing time per case. Thereafter, the parties may be charged for additional hearing time on an hourly basis at rates established by the neutral if the parties consent in writing. |
| **Private Neutral** | The market rate for private neutrals can range from $300-$1,000 per hour. |

### ADR ASSISTANCE

For assistance regarding ADR, please contact the ADR clerk at the courthouse in which your case was filed.

| COURTHOUSE | ADDRESS | ROOM | CITY | PHONE | FAX |
|---|---|---|---|---|---|
| Antonovich | 42011 4th St. West | None | Lancaster, CA 93534 | (661)974-7275 | (661)974-7060 |
| Chatsworth | 9425 Penfield Ave. | 1200 | Chatsworth, CA 91311 | (818)576-8565 | (818)576-8687 |
| Compton | 200 W. Compton Blvd. | 1002 | Compton, CA 90220 | (310)603-3072 | (310)223-0337 |
| Glendale | 600 E. Broadway | 273 | Glendale, CA 91206 | (818)500-3160 | (818)548-5470 |
| Long Beach | 415 W. Ocean Blvd. | 316 | Long Beach, CA 90802 | (562)491-6272 | (562)437-3802 |
| Norwalk | 12720 Norwalk Blvd. | 308 | Norwalk, CA 90650 | (562)807-7243 | (562)462-9019 |
| Pasadena | 300 E. Walnut St. | 109 | Pasadena, CA 91101 | (626)356-5685 | (626)666-1774 |
| Pomona | 400 Civic Center Plaza | 106 | Pomona, CA 91766 | (909)620-3183 | (909)629-6283 |
| San Pedro | 505 S. Centre | 209 | San Pedro, CA 90731 | (310)519-5151 | (310)514-0314 |
| Santa Monica | 1725 Main St. | 203 | Santa Monica, CA 90401 | (310)260-1829 | (310)319-6130 |
| Stanley Mosk | 111 N. Hill St. | 113 | Los Angeles, CA 90012 | (213)974-5425 | (213)633-5115 |
| Torrance | 825 Maple Ave. | 100 | Torrance, CA 90503 | (310)222-1701 | (310)782-7326 |
| Van Nuys | 6230 Sylmar Ave. | 418 | Van Nuys, CA 91401 | (818)374-2337 | (818)902-2440 |

Partially Funded by the Los Angeles County Dispute Resolution Program
A complete list of the County Dispute Resolution Programs is available online and upon request in the Clerk's Office

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**

**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:  FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lasuperiorcourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
        (INSERT DATE)                                          (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.  The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR PLAINTIFF)

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR DEFENDANT)

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR DEFENDANT)

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR DEFENDANT)

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR _____)

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR _____)

Date: _____

_____        ➢        _____
        (TYPE OR PRINT NAME)                                          (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| LACIV 036 (new) | | |
|---|---|---|
| LASC Approved 04/11 | **STIPULATION – DISCOVERY RESOLUTION** | Page 1 of 3 |

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

    iii.   Be filed within two (2) court days of receipt of the Request; and

    iv.  Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| | | |

TELEPHONE NO.:  
E-MAIL ADDRESS (Optional):  FAX NO. (Optional):  
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

Date: _____

_____
(TYPE OR PRINT NAME)

➤ _____
(ATTORNEY FOR _____)

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                                        FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:
   ☐    Request for Informal Discovery Conference.
   ☐    Answer to Request for Informal Discovery Conference
2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).
3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).
4. **For a Request for Informal Discovery Conference, _briefly_ describe the nature of the discovery dispute, including the facts and legal arguments at issue.  For an Answer to Request for Informal Discovery Conference, _briefly_ describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

47

NOTICE SENT TO:

Torchia, Vito, Jr.
Brookstone Law, PC
4000 MacArthur Blvd., Suite 1110
Newport Beach       CA   92660

**FILED**
LOS ANGELES SUPERIOR COURT
FILE STAMP

AUG 1 9 2011

JOHN A. CLARKE, CLERK
*Aracei Rodriguez*
BY ARACELI RODRIGUEZ, DEPUTY

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| LUIS MIRELES ET AL | CASE NUMBER |
| Plaintiff(s), | BC467652 |
| VS. | |
| WELLS FARGO BANK N A ET AL | **NOTICE OF CASE** |
| Defendant(s). | **MANAGEMENT CONFERENCE** |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/ attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled for December 8, 2011 at 8:30 am in Dept. 47 at 111 North Hill Street, Los Angeles, California 90012.

**NOTICE TO DEFENDANT:**   **THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.**

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least **15 calendar days** prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, section 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions pursuant to LASC Local Rule 7.13, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code Section 68608 (b), and California Rules of Court 2.2 et seq.

Date: August 19, 2011

Judicial Officer   *Weintraub*

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named above:

[X] by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown above with postage thereon fully prepaid.

[ ] by personally giving the party notice upon filing the complaint.
Date: August 19, 2011

John A. Clarke, Executive Officer/Clerk

by   *Araceli Rodriguez*   , Deputy Clerk

LACIV 132 (Rev. 09/07)
LASC Approved 10-03

Cal. Rules of Court, rule 3.720-3.730
LASC Local Rules, Chapter Seven

00/00/2011   16:10:27 FAX 2132499990        NATIONWIDE LEGAL

COPY

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

SEP 0 2 2011

John A. Clarke, Executive Officer/Clerk

By _____, Dep.
      RAUL SANCHEZ

BY FAX

1   WRIGHT, FINLAY & ZAK, LLP
    Robin Prema Wright, Esq., SBN 150984
2   Nicole K. Neff, Esq., SBN 257964
3   4665 MacArthur Court, Suite 280
    Newport Beach, CA 92660 *(Mireles, Luis et al/Declaration of Non-Monetary Status)*
4   Tel. (949) 477-5050; Fax (949) 477-9200
5   rwright@wrightlegal.net

6   Attorneys for Defendant,
    CAL-WESTERN RECONVEYANCE CORPORATION

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9            COUNTY OF LOS ANGELES-STANLEY MOSK COURTHOUSE

10

11  LUIS MIRELES, an individual, GEORGE          Case No.: BC467652
12  MIRELES, an individual; et al;
                                                 DECLARATION OF NON-MONETARY
13                    Plaintiffs,                STATUS BY DEFENDANT CAL-
                                                 WESTERN RECONVEYANCE
14         vs.                                   CORPORATION

15  WELLS FARGO BANK, N.A., a national           *[Civil Code 2924l]*
    banking association; WELLS FARGO HOME
16  MORTGAGE, a national banking association;
    AMERICA'S SERVICING COMPANY, a
17  national banking association; WACHOVIA
18  MORTGAGE, FSB, a national banking
    association; WACHOVIA BANK, FSB, f/k/a
19  WORLD SAVINGS BANK, FSB-TX, a
    national banking association; GOLDEN
20  WEST FINANCIAL CORPORATION, a
21  Delaware corporation; WORLD SAVINGS
    BANK, FSB, a national banking association;
22  WORLD SAVINGS, INC., a California
    corporation; CAL-WESTERN
23  RECONVEYANCE CORPORATION, a
24  California corporation; and DOES 1 through
    1000, inclusive,
25
26         Defendants.

27

28         I, Yvonne J. Wheeler, declare and state as follows:

                                  -1-

              DECLARATION OF NON-MONETARY STATUS

1.     I am Asst. Vice President for Defendant, Cal-Western Reconveyance Corp., ("Cal-Western" or "Defendant") in the above-referenced action.  I have personal knowledge of the facts set forth herein, and if called upon to do so, I would and could competently testify thereto.

2.     On August 16, 2011, Plaintiffs, ("Plaintiffs"), filed a Complaint ("Complaint") in the Marin Superior Court for Fraudulent Concealment [Violation of Civ. Code §§ 1572, 1709 and 1710]; Intentional Misrepresentation [Violation of Civ. Code §§1572, 1709 and 1710]; Negligent Misrepresentation [Violation of Civ. Code §§1572, 1709 and 1710]; Unfair Competition [Violation of Bus. & Prof. Code Civ. Code § 17200 et seq]; Wrongful Foreclosure [Violation of Civ. Code Civ. Code § 2924]; and Breach of Contract – Mortgage Loans (Pick-A-Pay).  The Complaint arises out of a loan involving the borrower and the lender.  Cal-Western is simply the foreclosure trustee ("Trustee"), with the power to foreclose on the property that arises from the Deed of Trust securing the loan.

3.     Based on my review of Plaintiff's Complaint, it is my reasonable belief that Cal-Western has been named in this action solely in its capacity as Trustee, and not arising out of any wrongful acts or omissions on its part in the performance of its duties as Trustee. The basis for my reasonable knowledge or belief set forth above is that Cal-Western has not been involved in any way with the property which is the subject of this lawsuit outside of its capacity as Trustee, and has no interest in the property, except to be named as the Trustee under the deed of trust encumbering the property by way of Substitution of Trustee.  The trustee's conduct, including the recording of the substitution of trustee and foreclosure notices, is *privileged* pursuant to *Civil Code* §§47 and 2924(d).

4.     I am not aware of any evidence produced to date by Plaintiffs or the remaining Defendants, or of any facts, documents, or testimony tending to suggest that Cal-Western engaged in any misconduct in connection with the performance of its duties as Trustee. Pursuant to *Civil Code* §2924(b) the foreclosure trustee incurs no liability for reliance in good faith on information provided in good faith by the beneficiary regarding the nature and amount of the default under the secured obligation.  *Civil Code* §2924 et seq., does not

-2-

DECLARATION OF NON-MONETARY STATUS

1  require the trustee to verify that the foreclosing lender holds the original Note.  Further,

2  pursuant to *Civil Code* §2924(b), foreclosure trustees are not subject to the California

3  Rosenthal Act.

4          5.      The Complaint makes no credible allegations that Cal-Western failed to

5  perform any of its duties as a Trustee, and a review of Cal-Western's file confirms that Cal

6  Western complied with the applicable foreclosure statutes.  Cal-Western was not involved in

7  the due diligence aspects of *Civil Code* §2923.5 and was entitled to rely on the compliance

8  information provided to Cal-Western on behalf of the Defendant lenders.  None of the

9  remaining Defendants filed a Cross-Complaint against Cal-Western alleging any defect in the

10 performance of its duties as trustee, either under the Deed of Trust, or the applicable statutes

11 set forth in *Civil Code* §2924, et seq.

12         6.      Given the foregoing facts, Cal-Western hereby agrees to be bound by

13 whatever non-monetary Order or Judgment that this Court issues with regard to the Deed of

14 Trust which is the subject of this lawsuit.

15

16         I declare under penalty of perjury under the laws of the State of California that the

17 foregoing is true and correct.

18 Executed this 2nd day of September, 2011, at El Cajon, California.

19

20                                              Yvonne J. Wheeler, Declarant

21

22

23

24

25

26

27

28

-3-

DECLARATION OF NON-MONETARY STATUS

## PROOF OF SERVICE

I, Tina Flores, declare as follows:

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action.  My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.  I am readily familiar with the practices of Wright, Finlay & Zak, LLP, for collection and processing of correspondence for mailing with the United States Postal Service.  Such correspondence is deposited with the United States Postal Service the same day in the ordinary course of business.

On September 2, 2011, I served the within **DECLARATION OF NON-MONETARY STATUS BY DEFENDANT CAL-WESTERN RECONVEYANCE CORPORATION** on all interested parties in this action as follows:

[X]   by placing [ ] the original [X] a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Vito Torchia, Jr.
Joshua Shelton
BROOKSTONE LAW, PC
4000 MacArthur Blvd., Suite 1110
Newport Beach, CA  92660
T:  800-946-8655
F:  866-257-6172
MirelessvWellsFargo@Brookstone Law.com
*Attorney for Plaintiffs*

[X]   (BY MAIL SERVICE) I placed such envelope(s) for collection to be mailed on this date following ordinary business practices.

[ ]   (BY PERSONAL SERVICE) I caused to be delivered such envelope by hand delivered to the office of the addressee.

[ ]   (BY FACSIMILE) The facsimile machine I used, with telephone no. (949) 477-9200, complied with California Rules of Court, Rule 2003, and no error was reported by the machine.  Pursuant to California Rules of Court, Rule 2006(d), I caused the machine to print a transmission record of the transmission, a copy of which is attached to the original Proof of Service.

[]   (BY FEDERAL EXPRESS - NEXT DAY DELIVERY) I placed true and correct copies of thereof enclosed in a package designated by Federal Express with the delivery fees provided for.

-1-

[X]   (State) I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Executed on September 2, 2011, at Newport Beach, California.

Tina Flores

# EXHIBIT B

1  Neal R. Marder (SBN: 126879)
   Drew A. Robertson (SBN: 266317)
2  WINSTON & STRAWN LLP
   333 S. Grand Avenue
3  Los Angeles, CA 90071-1543
   Telephone:    (213) 615-1700
4  Facsimile:    (213) 615-1750

5  ATTORNEYS FOR DEFENDANTS
   WELLS FARGO BANK, N.A.;
6  WELLS FARGO HOME MORTGAGE;
   AMERICA'S SERVICING COMPANY;
7  and WACHOVIA BANK, FSB, f/k/a
   WORLD SAVINGS BANK, FSB (Texas) and
8  n/k/a WELLS FARGO BANK SOUTH
   CENTRAL, N.A.

9

10                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                      **FOR THE COUNTY OF LOS ANGELES**

12

13  LUIS MIRELES, *et al.*,                    | Case No. BC467652

14                 Plaintiffs,                  | **[Assigned to the Hon. Debre Katz Weintraub, Dept. 47]**

15         v.

16  WELLS FARGO BANK, N.A., *et al.*,          | **NOTICE TO CLERK AND PLAINTIFFS OF REMOVAL**

17                 Defendants.

18

19                                              | Complaint Filed:   August 16, 2011

20

21

22         **TO THE HONORABLE DEBRE KATZ WEINTRAUB AND COUNSEL FOR ALL**

23  **PARTIES OF RECORD:**

24         PLEASE TAKE NOTICE that on September 16, 2011, Defendant Wells Fargo Bank, N.A.

25  ("Wells Fargo") removed this action from the Superior Court for the County of Los Angeles to the

26  United States District Court for the Central District of California, pursuant to 28 U.S.C. §§ 1332,

27  1441, and 1453.

28         The Notice of Removal is attached hereto as Exhibit "A."  Wells Fargo's removal of this

*(Sidebar, left margin)* Winston & Strawn LLP · 333 S. Grand Avenue · Los Angeles, CA 90071-1543

1  matter is based on the grounds set forth in the Notice of Removal, which, along with this Notice, is

2  being concurrently served on Plaintiffs and filed with the Clerk of the Superior Court for the State of

3  California for the County of Los Angeles, in compliance with 28 U.S.C. § 1446(d).

4

5

6  Dated:  September ___, 2011                    WINSTON & STRAWN LLP

7

8                                             By:  _____

9                                                   Neal R. Marder
                                                    Drew A. Robertson
10                                                  Attorneys for Defendants
                                                    WELLS FARGO BANK, N.A.;
11                                                  WELLS FARGO HOME
                                                    MORTGAGE; AMERICA'S
12                                                  SERVICING COMPANY;
                                                    and WACHOVIA BANK, FSB, f/k/a
13                                                  WORLD SAVINGS BANK, FSB
                                                    (Texas) and n/k/a WELLS FARGO
14                                                  BANK SOUTH CENTRAL, N.A.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

2

NOTICE TO CLERK AND PLAINTIFFS OF REMOVAL

1

2

## CERTIFICATE OF SERVICE BY FIRST-CLASS MAIL

3

4     I am over the age of 18 and not a party to the within action.  I am employed in the County of

5  Los Angeles, State of California, by Winston & Strawn LLP.  My business address is 333 S. Grand

6  Avenue, Los Angeles, CA 90071-1543.

7     On September 16, 2011, in the County of Los Angeles, California, I served the foregoing

8  document entitled **NOTICE OF REMOVAL** by placing a true and correct copy thereof in an

9  envelope addressed as follows:

10
                    **BROOKSTONE LAW, PC**
11                  Attention:  Vito Torchia, Jr.
                    Attention:  Joshua Shelton
12              4000 MacArthur Boulevard, Suite 1110
                    Newport Beach, CA 92660
13

14

15     Lura La Cour

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**DECLARATION OF DREW A. ROBERTSON IN SUPPORT OF NOTICE OF REMOVAL**

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
See Attachment I.

**DEFENDANTS**
See Attachment I.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

WINSTON & STRAWN LLP
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071

Attorneys (If Known)

BROOKSTONE LAW, PC
4000 MacArthur Blvd., Suite 1110

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No        ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. 1332(d)(11)(B)(i) mass action; 28 U.S.C. 1332 diversity jurisdiction over state claims

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☒ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | ☐ 462 Naturalization Application | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 465 Other Immigration Actions | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

CV11 - 07720

**FOR OFFICE USE ONLY:**   Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

COPY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All plaintiffs are citizens of California.  Defendants do not know their counties of residence. | All plaintiffs are citizens of California.  Defendants do not know their counties of residence. |

(b)  List the County in this District; California County outside of this District; State, if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| N/A | See Attachment IX(b). |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Defendants are currently unaware of the county in which each claim arose. | Defendants are currently unaware of the county in which each claim arose. |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _~~signature~~_    Date   September 16, 2011

**Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969.  (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

**ATTACHMENT I**

**PLAINTIFFS**

    LUIS MIRELES, an individual; GEORGIA MIRELES, an individual; PAULA L. KAZMIERZAK, an individual; RAMON ALVAREZ, an individual; RUE ANN BARROW, an individual; KENNETH W. BASE, an individual; KATJA K. BASE, an individual; JOHN BERRIOS, an individual; NORA BERRIOS, an individual; ALLEN BICKERSTAFF, an individual; ROSE BICKERSTAFF, a n individual; NASRIN CHADORBAF, an individual; ROSA COURTNEY, an individual; JEFFREY J. DAIGLE, an individual; LAURA DANLASKY, an individual; DAVID CECIL, an individual; LINDA L. FOSTER, an individual; TERRY S. KEEFER, an individual; VERONICA PADILLA, an individual; MARIA LOPEZ, an individual; CHAUNTEE MATHIS, an individual; ZOILA DELCIA MELGAR, an individual; THU HA NONG, an individual; ELVIRA R. P ALAC, an individual; WILLIAM R. SCHRANER, JR., an individual; JANET SCHRANER, an individual; MARIA C. TAMAYO, an individual; JOAN WADDELL, an individual; STEVEN M. WEISS, an individual; GARY R. WOOLEVER, an individual; RICHARD WU, an individual; IVY WU, an individual; REBECCA SIERRA, an individual; SAMMIE NOEL, an individual; CRISTINA MAGANA, an individual; AARON M. DOSS, an individual; JOSE MARTIN VALDOVINOS, an individual; MELANIE VALDOVINOS, an individual; LORELI WAHL, an individual; MAGDALENA LUNA, an individual; OLGA ORGOUNOVA, an individual; FAUSTO CALLEGARINI, an individual; THOMAS BURNS, an individual; ROBIN BURNS, an individual; DAVID NYQUIST, an individual; CORINNA NYQUIST, an individual; JAMES SALO, an individual; CLAIRE SALO, an individual; MARCY F. KAPLAN, an individual; SHERYL E. BREAULT, an individual; ALLISON J. HERBERT, an individual; STIRLING HALE, an individual; MICHELLE HALE, an individual; MAMIE Y. THOMAS, an individual; ROBERT HARRICK, an individual; GERALDINE HARRICK, an individual; KATHERINE WARD, an individual; PATRICIA LOPEZ, an individual; ROGER HOUSGARD, an individual; LENA HOUSGARD, an individual; CHRISTOPHER BITNER, an individual; MARIOLA BITNER, an individual; JOSEPH LABATE, an individual; CHERYL LABATE, an individual; RICHARD ELAM, an individual;

1

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1   ESTHER MERKI, an individual; JOE CHAVEZ, an individual; DAVID ZAMORA, an individual;

2   GAVIELA ZAMORA, an individual; DANIEL SPATACEAN, an individual; COSMINA R.

3   SPATACEAN, an individual; PAMELA MEIER, an individual; PATRICIA MEIER, an individual;

4   KATHERINE WARD, an individual; SVEN WALKER, an individual; RICHARD COUTURE, an

5   individual; MARCELLA VILLALPANDO, an individual; RICHARD VILLALPANDO, an

6   individual; CHOR CHUN NGAN, an individual; PATRICE THOMPSON, an individual; FAUSTO

7   CALLEGARINI, an individual; PAUL PEASE, an individual; CYNTHIA M. PEASE, an individual;

8   NORMA GARCIA, an individual; TE VAN NGUYEN, an individual; NATIVIDAD TERRAZAS,

9   an individual; ALEX CALDER, an individual; DAVID OXLEY, an individual; RAMIRO

10  RODRIGUEZ, an individual; ROSELIA RODRIGUEZ, an individual; TONY BEIZAEE, an

11  individual; ALICE GANZON, an individual; YASUHARU KUROIWA, an individual; KAYAKO

12  KUROIWA, an individual; JOHN CALDERONE, an individual; VIRGINIA VILLASENOR, an

13  individual; FELIX VILLASENOR, JR. , an individual; LINDA TRAN, an individual; WAYNE

14  WILLIAMS, an individual; SUZANNE WILLIAMS, an individual; TEERI A. PENKERT, an

15  individual; RHONDA K. PENKERT, an individual; DOUGLAS FERNANDES, an individual;

16  RENAN PULECIO, an individual; JEANNETTE PULECIO, an individual; ADRIAN FLORES, an

17  individual; GABRIELA FLORES, an individual; SHELAH SPEIGEL, and individual; RUDY

18  MORGAN, an individual.

19  **DEFENDANTS**

20  WELLS FARGO BANK, N.A., a national banking association; WELLS FARGO HOME

21  MORTGAGE, a national banking association; AMERICA'S SERVICING COMPANY, a national

22  banking association; WACHOVIA MORTGAGE, FSB, a national banking association;

23  WACHOVIA BANK, FSB, f/k/a WORLD SAVINGS BANK, FSB-TX, a national banking

24  association; GOLDEN WEST FINANCIAL CORPORATION, a Delaware corporation; WORLD

25  SAVINGS BANK, FSB, a national banking association; WORLD SAVINGS, INC., a California

26  corporation; CAL-WESTERN RECONVEYANCE CORPORATION, a California corporation; and

27  DOES 1 through 1000, inclusive

28

1

**ATTACHMENT IX(b)**

2  WELLS FARGO BANK, N.A.:  South Dakota

3  WELLS FARGO HOME MORTGAGE:  South Dakota

4  AMERICA'S SERVICING COMPANY:  South Dakota

5  WACHOVIA MORTGAGE, FSB:  No longer exists

6  WACHOVIA BANK, FSB f/k/a WORLD SAVINGS BANK, FSB-TX:  Texas

7  GOLDEN WEST FINANCIAL CORPORATION:  No longer exists

8  WORLD SAVINGS BANK, FSB:  No longer exists

9  WORLD SAVINGS, INC.:  No longer exists

10  CAL-WESTERN RECONVEYANCE CORPORATION:  California (fraudulently joined)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA 90071-1543

1

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV11- 7720 MMM (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=============================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [_] Southern Division | [_] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY